IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Northern Division*

| | |
|---|---|
| HAWTHORNE INDUSTRIAL PRODUCTS INC. FOR ITS OWN ACCOUNT AS CONSIGNEE OF CERTAIN CARGO, AND AS AUTHORIZED AGENT FOR GENESIS PRODUCTS INC., GREAT LAKES LAMINATION, GREAT LAKES FOREST PRODUCTS, AND FUSION WOOD PRODUCTS,<br><br>            Plaintiffs<br>v.<br><br>M/V TAC IMOLA, IMO No. 9932103 her engines, boilers, tackle, etc., *in rem*,<br>RATU SHIPPING CO. SA,<br>NISSHIN SHIPPING CO LTD, and<br>FLEET MANAGEMENT LTD-HKG,<br>*in personam*,<br><br>            Defendants | CIVIL NO. |

## VERIFIED COMPLAINT

Plaintiffs Hawthorne Industrial Products Inc. ("Hawthorne"), for its own account as consignee of certain cargo and as authorized agent for Genesis Products Inc. ("Genesis"), Great Lakes Lamination ("GLL"), Great Lakes Forest Products ("GLFP"), and Fusion Wood Products ("Fusion"), by and through their undersigned attorneys, respectfully submit this *Verified Complaint* against defendants M/V TAC IMOLA, her engines, boilers, tackle, etc., *in rem* (the "Vessel"), Ratu Shipping Co SA ("Ratu"), Nissin Shipping Co Ltd ("Nissin"), and Fleet Management Ltd-HKG, *in personam* ("Fleet Management" and, together with the Vessel, the "Defendants"), and alleges upon information and belief as follows:

1.      This is a claim within this Honorable Court's admiralty and maritime jurisdiction, 28 U.S.C. § 1333, and this is also an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

2.      Venue is proper in this District because the Vessel is located within this District.

## THE PARTIES

3.      Plaintiff Hawthorne is a corporation organized and existing pursuant to the laws of the state of Florida and with a principal place of business located at 10694-B South US Highway 1, Port St. Lucie, Florida 34952, and at all times relevant hereto was engaged in the business of importing wood products from overseas as consignee, including the "Cargo" described more fully described in *Exhibit A* – the "Bills of Lading" numbered HSLM01QINBAL001-HSLM01QINBAL008 and HSLM01QINBAL167.

4.      Plaintiffs Genesis, GLL, GLFP, and Fusion are the beneficial owners of the Cargo described in the Bills of Lading.

5.      Plaintiff Hawthorne brings this action for its own account as consignee of the Cargo and as authorized agent for plaintiffs GLL, GLFP, and Fusion as well as any and all other entities who may be or might become interested in the Cargo, as each of their respective interests may appear, and Plaintiffs are entitled to maintain this action.

6.      Upon information and belief, the defendant Vessel was a newbuilt bulk ship registered in Panama, and it is presently located within this District.

7.      Upon information and belief, at all times relevant hereto, the Vessel was owned by defendant Ratu, with a principal place of business located on the 19th floor, Nihonbashi, I-chome Building, 4-1, Nihonbashi 1-chome, Chaso-ku, Tokyo, 103-0027, Japan, co-managed by defendant Nissin, with a principal place of business located at the same address at Ratu, and co-

managed by and Fleet Management, with a principal place of business located on 27th floor, South Island Place, 8, Wong Chunk Hang Road, Southern Hong Kong, China.

8. Upon information and belief, at all times relevant hereto, the Vessel was time chartered by non-party Transatlantica Commodities Pte Ltd ("Transatlantica") and sub-time chartered by non-party Hanwin Shipping Limited ("Hanwin").

## THE FACTS

9. On or about November 24-25, 2021 at the load port in Qingdao, China, approximately 9,667 pallets of MDF Panels, Pinus Sylvestris Plywood, and Plywood (*i.e.*, the Cargo) were loaded aboard the Vessel for carriage to Baltimore, Maryland.

10. While the Bills of Lading fail to identify the "Carrier" in the masthead, they are all signed at the bottom-right in Chinese and English, including by "LI SONG OF THE M/V TAC IMOLA" as "AGENT FOR AND ON BEHALF OF THE MASTER."

11. Under the signature appears the words "AS AGENT FOR THE CARRIER OF B/L (BILL OF LADING) TITLE".

12. All of the Bills of Lading are "clean" meaning that no exceptions were taken by the Master, the Vessel's Owner, and/or the Carrier as to the good order and condition of the Cargo at the time it was loaded on the Vessel in China.

13. Upon information and belief, on top of the cargo of Cargo in hold numbers 2 and 4, there were container(s) of computer equipment which was stowed and secured by unknown means and methods.

14. Upon information and belief, the Vessel and the Carrier were responsible for stowing and securing the Cargo on board the Vessel.

15. Upon information and belief, on or about December 5, 2021, the Vessel's crew observed smoke coming from and fire within its cargo holds number 2 and 4.

16. Upon information and belief, the Vessel's crew tried to extinguish the fire in hold number 4 by using CO2—however, there was either no CO2 or insufficient CO2 to extinguish the fire in hold number 2 and, therefore, the crew flooded hold number 2 with sea water.

17. Upon information and belief, the Vessel deviated its course several times—all without consent of the Plaintiffs—to unscheduled ports in South Korea, China, Japan, and/or Canada.

18. At no time during the incident did the Defendants or charterers advise Hawthorne that the Cargo was exposed to fire, smoke, high temperatures, CO2, and sea water.

19. Although the incident is believed to have occurred around December 5, 2022, Hawthorne was not notified of the incident until February of 2022—*i.e.*, about three months later.

20. Moreover, the information provided to Hawthorne at the time of notification was at least in part inaccurate; Plaintiff was told:

> ALTHOUGH IT WAS A VERY HOT FIRE IT LOOKS LIKE THE FIRE WAS CONTAINED TO ONE CONTAINER ON DECK.
>
> IN PUTTING THE FIRE OUT, IT CAUSED TROUBLES MAINLY CONTAINED TO HOLD 4 AND IT CAUSED TROUBLES TO ONE OTHER HOLD.
>
> SOME WATER USED IN PUTTING OUT THE FIRE LEAKED INTO TWO HOLDS ALSO.

21. As a consequence of the late notice, Plaintiffs were unable to inspect the nature of the damage, assess the extent of the damage, and investigate the cause or source of the damage when the Vessel deviated to South Korea, China, Japan, and/or Canada.

22. Instead, the Plaintiffs were forced to wait until the ship ultimately called at a salvage terminal near Albany, New York, in May of 2022—*i.e.*, about six months later.

23. By that time, the cargo continued to decompose and lose value, and it was a constructive total loss on discharge at the salvage terminal.

24. Meanwhile, upon information and belief, surveyors and experts for the Defendants and charterers had already accessed the Vessel and disturbed the evidence several months earlier in South Korea, China, Japan, and/or Canada, and when it subsequently discharged the containerized cargo of computer parts at Newark, New Jersey, all without notice to Plaintiff and without an invitation to join in surveys, inspections, and investigations.

### AS AND FOR A FIRST CAUSE OF ACTION BY PLAINTIFF, HAWTHORNE, ACTING FOR ITS OWN ACCOUNT AS CONSIGNEE OF THE SUBJECT BILLS OF LADING AGAINST ALL NAMED DEFENDANTS FOR LOSSES AND DAMAGES WHICH WHERE INCURRED OUT OF POCKET.

25. Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1-24 above.

26. Plaintiff Hawthorne is the named "consignee" on each and every Bill of Lading attached as Exhibit A to this *Verified Complaint*.

27. The Cargo described in the Bills of Lading was in good order and condition when tendered to the Vessel at the load port, but it was not discharged and delivered in the same good order and condition at the salvage terminal; instead, the Cargo was damaged, charred, exposed to heat, warped, decayed, and decomposed to the point where it had no value, was at least a constructive total loss, and had to be destroyed.

28. Moreover, the Defendants and/or the charterers refused to pay for the costs of handling, stowing, and disposing of the lost and damaged Cargo at the salvage terminal.

29. Defendants have failed to provide any documents to Plaintiff from the Vessel to explain the cause of the incident which resulted in the loss and damage of the cargo which had been within the control and custody of the Defendants.

30. Defendants, individually or collectively, have refused to pay for the costs of discharge of the damaged cargo from the ship, the handling of the cargo on the terminal, and the storage of the cargo on the terminal, but instead have threatened to hold up the delivery of the Defendants cargo, both damaged and sound cargo.

31. The Defendants, individually or collectively, have not shared any of the survey reports that they have commissioned at ports before the salvage port near Albany, New York, allowing Defendants to have an unfair advantage as to information and details concerning the nature and extent of the incident which caused damage to the Cargo onboard the Vessel.

32. By virtue of Defendants' (individually or collectively) tortious conduct, breach of contract, including but not limited to breach of the bills of lading, failure to exercise due diligence to make the Vessel seaworthy, improper loading and securing of the cargo, geographical deviations (including towards Canada), failure to exercise due care for the custody of the cargo, unreasonable delay in delivery and geographical deviation, inadequate firefighting system, training and equipment, conversion, misinformation, and reckless and gross negligence, Plaintiff, Hawthorne, has incurred out-of-pocket costs and expenses which now are as best estimated to exceed $3,000,000 and continue to accrue, none of which has been paid or reimbursed by Defendants, nor are such cost or expenses recoverable under the terms of Plaintiff's insurance policy.

### AS AND FOR A SECOND CAUSE OF ACTION BY PLAINTIFF, ACTING AS AUTHORIZED AGENT FOR THE LOSS OF VALUE OF THEIR CARGOS AND EXPENSES

33. Plaintiff repeats and realleges each of the allegations contained in paragraphs 1-32 above.

34.     Plaintiff, Hawthorne, has been authorized to represent each of the other Plaintiffs set forth in this *Verified Complaint* who were the beneficial owners of the Cargo having pre-paid in full for the subject cargo. *See* Exhibit B – Letters of Authorization.

35.     The Cargo was not discharged and delivered to Plaintiff (s) in the same sound and good order and condition at the alternate port of discharge, but instead the cargo was damaged, charred, exposed to heat, warped, decayed, decomposed and otherwise damage to the point where it had no value, was a constructive total loss, and had to be destroyed.

36.     The Defendants, individually or collectively, have failed to provide any documents to Plaintiff(s) from the vessel to explain the cause or the occurrence of the incident which resulted in the condition of the cargo in the control and custody of the Defendants.

37.     By virtue of the (individually and collectively) tortious conduct and breach of contract, including the breach of the bills of lading, failure to exercise due diligence to make the vessel seaworthy, geographical deviations, failure to exercise due care for the custody of the cargo, inadequate firefighting system, training and equipment, unreasonable deviation and delay, conversion, misinformation, and reckless and gross negligence, Plaintiffs are entitled to the sound market value of the cargo at the intended port of discharge, Baltimore, had the goods arrived in the same sound and good quality condition as when loaded.

38.     At this time, Plaintiffs best estimate this value to be $21,000,000, although this estimate may require further amendment due to the fact that there is still damaged cargo aboard the Vessel which has not yet been unloaded or surveyed, and other damages continue to accrue.

39.     Plaintiffs have a maritime lien against the Vessel for the full amount of damages claimed and for those damages yet unassessed.

40.     Consequently, Plaintiff in its own capacity and as agent for the Plaintiffs and Cargo's beneficial owners is entitled to a judgment against said Vessel and the Defendants, *in personam*, in the amount of the specified claims, with interest and costs.

**WHEREFORE**, Plaintiffs respectfully pray:

A.      That this Honorable Court issue an order directing the clerk to issue a warrant for the arrest of the Defendant-Vessel pursuant to Rule C of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions;

B.      That any security thereafter fixed by this Honorable Court be conditioned for the maximum amount permitted by Rule E(5), which permits up to twice the amount of Plaintiffs' claim;

C.      That the claims of Plaintiff, Hawthorne Industrial Products, Inc., and that of the Plaintiffs', be adjudged to be a maritime lien on the M/V TAC IMOLA, her engines, tackle, appurtenances, etc., and that a judgment be entered in favor of Hawthorne Industrial Products, Inc., for its own account and as agent against the M/V TAC IMOLA, her engines, tackle, equipment, appurtenances, etc., for the amount of $28,000,000, subject to increase or decrease as the situation warrants, with interest, costs, and attorneys' fees;

D.      That the M/V TAC IMOLA, her engines, tackle, equipment and other appurtenances be condemned and sold to pay the judgment entered in favor of Hawthorne Industrial Products, Inc and the Plaintiffs.;

E.      That this Honorable Court issue judgment against the Defendant-Vessel, in an amount in excess of $24,000,000 plus fees, interest, attorneys fees and costs;

F.      The Plaintiff be entitled to judgement in the aforementioned amounts against the Defendants, *in personam*, RATU SHIPPING CO. SA., NISSIN SHIPPING CO., LTD., and

FLEET MANAGEMENT LTD-HKG, jointly and severally, for the allegations of breach of contract, tort, bailment, conversion, and as otherwise specified in this Complaint, together with interest, costs and legal fees, and;

G.  That this Honorable Court grant such other and further relief as it deems just and proper.

Dated: June 6, 2022
      Baltimore, Maryland

                                                /s/
                            James W. Bartlett, III, Esquire
                            Federal Bar Number 00017
                            Imran O. Shaukat, Esquire
                            Federal Bar Number 30134
                            Semmes, Bowen & Semmes
                            25 S. Charles Street, Suite 1400
                            Baltimore, Maryland 21201
                            Phone: (410) 539-5040
                            Facsimile: (410) 539-5223
                            jbartlett@semmes.com
                            ishaukat@semmes.com

                            *Attorneys for Plaintiff*
                            HAWTHORNE INDUSTRIAL PRODUCTS, INC.

Of Counsel:

Robert E. O'Connor
Vincent M. DeOrchis
Alfred Kuffler
Wook Chung
Montgomery McCracken Walker & Rhoads LLP
437 Madison Avenue
New York, NY 10022
Tel: 212-551-7732
Fax: 212-201-1939

2791274.docx

## VERIFICATION OF COMPLAINT

BEFORE ME, the undersigned authority, personally came and appeared Russell Stadelman, who deposed and said that he is the President of HAWTHORNE INDUSTRIAL PRODUCTS, INC., that he has read the above and foregoing Complaint and knows the contents thereof and that the same are true and correct based upon his personal knowledge, documents that have become available to him, and upon information and belief, and that he is authorized to verify the Complaint filed herein.

*[signature: Russell Stadelman]*

Subscribed and sworn to before me this 1st day of June 2022.

*[signature]*
Notary Public

My commission expires:

06/27/2025

JOSEPH B RIVERA
Notary Public - State of Florida
Commission # HH 146015
My Comm. Expires Jun 27, 2025
Bonded through National Notary Assn.