IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Northern Division*

| | |
|---|---|
| HAWTHORNE INDUSTRIAL PRODUCTS INC. FOR ITS OWN ACCOUNT AS CONSIGNEE OF CERTAIN CARGO, AND AS AUTHORIZED AGENT FOR GENESIS PRODUCTS INC., GREAT LAKES LAMINATION, GREAT LAKES FOREST PRODUCTS, AND FUSION WOOD PRODUCTS,<br><br>                              Plaintiffs,<br>   v.<br><br>M/V TAC IMOLA, IMO No. 9932103 her engines, boilers, tackle, etc.,<br>*in rem*,<br>RATU SHIPPING CO. SA,<br>NISSHIN SHIPPING CO LTD, and<br>FLEET MANAGEMENT LTD-HKG,<br>  *in personam*,<br>                              Defendants. | 22-cv-1376-RDB |

**VESSEL INTERESTS' MEMORANDUM OF LAW
<u>IN SUPPORT OF MOTION TO STAY IN FAVOR OF ARBITRATION</u>**

**Jack R. Daley (**jdaley@bakerdonelson.com)
**Geoffrey S. Tobias (gtobias@bakerdonelson.com)**
**Constantine Themelis (gthemelis@bakerdonelson.com)**
Baker, Donelson
100 Light Street
Baltimore, MD  21202
Tel:  (410) 685-1120
Fax: (410) 547-0699

*Of Counsel*
Don P. Murnane, Jr. (murnane@freehill.com)
Michael Fernandez (fernandez@freehill.com)
J. Tanner Honea (honea@freehill.com)
Michael J. Dehart (dehart@freehill.com)
Freehill Hogan & Mahar, LLP
80 Pine Street, 25th Floor

1

New York, NY 10005
Tel: 212-425-1900 | 212-425-1901

**TABLE OF CONTENTS**

**FACTUAL BACKGROUND**

    **I.     The Vessel, its Ownership, and Hawthorne's Claims.** ................................................................. 4

    **II.    The Bills of Lading.** ........................................................................................................ 5

    **III.   The Letter of Undertaking.** ........................................................................................... 6

**LEGAL DISCUSSION**

    **I.     The Bills of Lading Incorporate the Hong Kong Arbitration Clause** ........................................ 7

    **II.    The *In Rem* Claims are Covered by the Arbitration Clause.** ..................................... 10

    **III.   A Stay is Warranted Pursuant to Section 3 of the FAA.** ........................................... 11

**CONCLUSION** ........................................................................................................................... 12

**TABLE OF AUTHORITIES**

**Cases** **Pages**

*All Pacific Trading, Inc. v. Vessel M/ V Hanjin Yosu*, 7 F.3d 1427, 1432 (9th Cir. 1993)..............7

*Commercial Metals Co. v. Compania Espanola de Laminacion S.L.*, Civil Action No. 2:09-cv-451, 2011 U.S. Dist. LEXIS 168827, at *17 (E.D. Va. Apr. 29, 2011) .......................................7

*Cont'l Ins. Co. v. Polish S.S. Co.*, 346 F.3d 281, 284 (2d Cir. 2003) .............................................5

*Diana Co. Maritima, S.A. v. Subfreights of S.S. Admiralty Flyer*, 280 F. Supp. 607, 615-16 (S.D.N.Y. 1968) .........................................................................................................................8

*F.D. Imp. & Exp. Corp. v. M/V Reefer Sun*, 248 F. Supp. 2d 240, 248-49 (S.D.N.Y. 2002)..........7

*Hawkspere Shipping Co., Ltd. v. Intamex, S.A.*, 330 F.3d 225, 234 (4th Cir. 2003) .......................4

*Nat'l Material Trading v. M/V Kaptan Cebi*, C.A. No. 2:95-3673-23, 1997 U.S. Dist. LEXIS 24027, at *10 (D.S.C. Mar. 13, 1997).....................................................................................4, 6

*Noe v. City Nat'l Bank*, 828 F. App'x 163, 165 (4th Cir. 2020).......................................................9

*Oriental Commercial & Shipping Co. v. Rosseel, N.V.*, 609 F. Supp. 75 (S.D.N.Y. 1985) ............8

*Salim Oleochemicals v. M/V Shropshire*, 169 F. Supp. 2d 194, 198 (S.D.N.Y. 2001) ...............4, 7

*Thyssen, Inc. v. M/V Markos N*, 1999 US Dist. LEXIS 12578, at *9 (S.D.N.Y. 1999) ..............6, 8

*Union Carbide Corp. v. M/ T Monte Carmelo*, 2002 US Dist. LEXIS 23925, at *5 (S.D.N.Y. 2002)...........................................................................................................................................5

*United States v. Bankers Ins. Co.*, 245 F.3d 315, 319 (4th Cir. 2001)............................................9

*Usinor Steel Corp. v. M/V Koningsborg*, 2004 U.S. Dist. LEXIS 1615, at *3-5 (S.D.N.Y. Feb. 4, 2004)..........................................................................................................................................7

**Statutes**

9 U.S.C. § 3.....................................................................................................................................8

Ratu Shipping Co. S.A. ("Ratu" or "Owners"), having filed its restricted appearance pursuant to Supplemental Admiralty Rule E(8) and Verified Statement of Right or Interest pursuant to Supplemental Admiralty Rule C(6) with respect to the *in rem* vessel defendant M/V *Tac Imola* (the "Vessel"), files its Motion to Stay in Favor of Arbitration (the "Motion to Stay") against Plaintiff Hawthorne Industrial Products, Inc. ("Hawthorne") pursuant to Section 3 of the Federal Arbitration Act (the "FAA"), 9 U.S.C. § 3. As will be explained below, Hawthorne's claims against the Vessel are all subject to arbitration in Hong Kong under English Law, and the *in rem* claims against the Vessel should thus be stayed in favor of arbitration. In turn, because such claims are subject to arbitration, Section 3 of the FAA mandates that the Court issue an Order staying this matter in favor of such arbitration.

## FACTUAL BACKGROUND

**I.     The Vessel, its Ownership, and Hawthorne's Claims.**

The Vessel is owned by Ratu, which is a vessel-owning company based in Panama at World Trade Centre, 53rd Street, Marbella, 5th Floor, Suite 502, Panama. (Daley Declaration at ¶ 2). Defendant Nisshin Shipping Co., Ltd. ("Nisshin") is the commercial manager of the Vessel, and Defendant Fleet Management Ltd. – HKG ("Fleet") is the Vessel's safety/technical manager. Neither Ratu, Nisshin, nor Fleet has been properly served in this matter, but Ratu has entered a restricted appearance pursuant to Supplemental Admiralty Rule E(8) and is filing the instant motion in this limited capacity. [1]

---

[1] Ratu, Nisshin, and Fleet have been improperly sued and included in the Verified Complaint. The Verified Complaint facially fails to state a cognizable claim against any of the three entities. Moreover, none of the three entities is subject to the personal jurisdiction of this court. This motion does not address those affirmative defenses, which are expressly preserved, but any such claims would in any event subject to arbitration on the same bases set forth herein as to the *in rem* claim.

Hawthorne alleges that certain cargo carried onboard the Vessel was damaged during a voyage from China to Baltimore. (Dkt. 1, the Complaint at ¶¶ 9-24). In an effort to recover for this alleged loss, Hawthorne has advanced two causes of action. The first cause of action seeks recovery against "all Defendants" for out of pocket expenses allegedly incurred by Hawthorne to in the estimated amount of $3 million. *Id*. at ¶¶ 25-32. Likewise, the second cause of action also seeks recovery against "all Defendants" for loss/damage to the cargo in the estimated amount of $21 million. *Id*. at ¶¶ 33-40.

**II.     The Bills of Lading.**

Hawthorne has filed suit in its capacity as "Consignee" under nine bills of lading nos. HSLMO1QINBAL001 – HSLMO1QINBAL008 and HSLMO1QINBAL167 (collectively, the "Bills of Lading"). (Dkt. 1, the Complaint at ¶ 5, explaining that "Plaintiff Hawthorne brings this action for its own account as consignee of the Cargo;" and ¶ 26, stating that "Plaintiff Hawthorne is the named 'consignee' on each and every Bill of Lading attached as Exhibit A to this Verified Complaint").   Although the Bills of Lading are referred to as "Exhibit A" in the Verified Complaint, Hawthorne apparently did not actually submit them to the Court. (Dkt. 1, the Complaint at ¶ 3).

On each of the Bills of Lading, LIANYUNGANG YUANTAI INTERNATIONAL TRADE CO., LTD. ("LYIT") is listed as the "Shipper." (Ex. O1, the Bills of Lading).[2] Each Bill of Lading is drafted on the well-known industry standard CONGENBILL EDITION 1994 b/l form (the "CONGENBILL 1994"), as evidenced by text in the very top left corner of each Bill of Lading stating "CODE NAME: 'CONGENBILL'. EDITION 1994." *Id*.  Page 1 of the CONGENBILL 1994 contains various "Conditions of Carriage." (Ex. O2, the CONGENBILL 1994 form). The

---

[2] All exhibits referenced herein are annexed to the accompanying Declaration of Attorney Jack R. Daley (the "Daley Dec.") that has been submitted along with this motion.

5

existence of such "Conditions of Carriage" is expressly stated on Page 2 of the Bills of Lading, which state in all capital letters "FOR CONDITIONS OF CARRIAGE SEE OVERLEAF." (Ex. O1, the Bills of Lading). At the top of page 1 of CONGENBILL 1994, the very first "Condition of Carriage" specifies that "All terms and conditions, liberties and exceptions of the Charter Party, dated as overleaf, **including the Law and Arbitration Clause**, are herewith incorporated." (emphasis added). *Id*.

In this regard, each Bill of Lading overleaf contains printed text in the top right corner stating:

> "TO BE USED WITH CHARTER-PARTIES
> Reference No. HWS20211013J DATED 13TH OCT 2021"

Document No. HWS20211013J DATED 13TH OCT 2021 is a so-called "Booking Note" entered between LYIT, as "Charterer", and Hanwin Shipping Limited ("Hanwin"), as "Owners" (Ex. O3, the "Booking Note").[3] Clause 20 of the Booking Note provides for "Arbitration in Hongkong, with English law to be applied." *Id*. at Cl. 20. Clause 22 of the Booking Note further states that it is to be governed "Otherwise per Gencon C/P 1994," which is a reference to the GENCON 1994 Charter Party Form (the "Gencon 1994").

### III.   The Letter of Undertaking.

Hawthorne filed this action on June 6, 2022 through the filing of the Verified Complaint. (Dkt. 1, the Complaint). The Vessel was then placed under arrest. On June 13, 2022, the Vessel's insurer, The Britannia Steam Ship Insurance Association Europe ("Britannia"), posted a letter of undertaking in favor of Hawthorne and all Plaintiffs to secure Plaintiffs' claims against the Vessel

---

[3] While the Booking Note is entitled "Booking Note," the contents of the document clearly evidence a standard maritime contract of affreightment. *See, e.g. Proodos Marine Carriers Co. v. Overseas Shipping & Logistics*, 578 F. Supp. 207, 208 (S.D.N.Y. 1984) (explaining that a booking note "is in effect a maritime contract of affreightment"). This is further supported by the fact that the Booking Note incorporates the GENCON 1994 form, which is a standard charter party for bulk cargo shipments.

in the total amount of $28 million (the "LOU"). (Ex. O4, the LOU). The LOU expressly states that it was issued "without prejudice to any rights or defences which the said vessel or its owners may have, including, without limitation…the right to assert the claim is subject to arbitration." *Id*. Following issuance of the LOU the Vessel was released from arrest. (Dkt. 19, correspondence regarding release of arrest).

## LEGAL DISCUSSION

### I. The Bills of Lading Incorporate the Hong Kong Arbitration Clause

It is well-established that "where a bill of lading clearly refers to the charter-party to be incorporated, and the holder has actual or constructive notice of the incorporation, the charter party will be deemed to be incorporated." *Nat'l Material Trading v. M/V Kaptan Cebi*, C.A. No. 2:95-3673-23, 1997 U.S. Dist. LEXIS 24027, at *10 (D.S.C. Mar. 13, 1997) (binding bill of lading consignee to charter party arbitration clause); *see also Salim Oleochemicals v. M/V Shropshire*, 169 F. Supp. 2d 194, 198 (S.D.N.Y. 2001) (holding that "if a charter party's arbitration clause is expressly incorporated into a bill of lading, nonsignatories of the charter party who are linked to that bill through general principles of contract or agency law may be bound, provided they are put on actual or constructive notice of their arbitration obligation") (internal quotation marks omitted). Here, the bills of lading all validly incorporate the Hong Kong arbitration clause, and all disputes advanced by Hawthorne in this case must be arbitrated.

First, with respect to reference to the Booking Note in the bills of lading, Courts routinely find that a charter party is clearly referred to in the bill of lading when the bill of lading refers to the charter party by date. *See Hawkspere Shipping Co., Ltd. v. Intamex, S.A.*, 330 F.3d 225, 234 (4th Cir. 2003) (stating that "[d]ecisions in which courts have found a proper incorporation are those in which the charter party was identified in the bill of lading, at the least, by date"); *M/V*

*Kaptan Cebi*, 1997 U.S. Dist. LEXIS 24027, at *10 (explaining that "Courts find such incorporation and infer the holder of the bill's consent to the terms of the charter where the bill of lading identifies the charter party by date and lists the names of the parties"); *Cont'l Ins. Co. v. Polish S.S. Co.*, 346 F.3d 281, 284 (2d Cir. 2003) (finding valid incorporation when "[t]he charter party was specifically identified by date, which is all that is required"). Here, the Bills of Lading explicitly refer to the Booking Note by its reference number and also specify the Booking Note's date, as the top right corner of each Bill of Lading states:

> "TO BE USED WITH CHARTER-PARTIES
> Reference No. HWS20211013J DATED 13TH OCT 2021"

(Ex. O1, the Bills of Lading). The Booking Note, in turn, and consistent with his reference, is indeed dated "13th Oct. 2021" and expressly refers to "Fixture Note No. HWS20211013J." This express reference to the Booking Note by reference number and date is more than sufficient to establish that the Booking Note was clearly referred to in the Bills of Lading.

It is also clear that Hawthorne, as consignee, had actual or constructive notice of the Booking Note's incorporation into the bills of lading. As noted above, all of the Bills of Lading under which Hawthorne claims were issued on the CONGENBILL 1994 form, which explicitly specifies on the reverse side that "[a]ll terms and conditions, liberties and exceptions of the Charter Party, dated as overleaf, **including the Law and Arbitration Clause**, are herewith incorporated." (Ex. O2, emphasis added).

Courts have consistently held that this language from the CONGENBILL form is sufficient to give the holder of the bill of lading actual or constructive knowledge that they would be bound by the charter party arbitration clause. *See Cont. Ins.*, 346 F.3d at 284 (finding that bill of lading specifying that "All terms and conditions, liberties and exceptions of the Charter Party, dated as overleaf, are herewith incorporated" expressly incorporated charter party arbitration clause);

8

*Union Carbide Corp. v. M/T Monte Carmelo*, 2002 US Dist. LEXIS 23925, at *5 (S.D.N.Y. 2002) (reasoning that since the COGENBILL bill of lading specifically incorporated the charter party, the consignee was bound to the arbitration clause in the charter party despite being a nonsignatory); *Thyssen, Inc. v. M/V Markos N*, 1999 US Dist. LEXIS 12578, at *9 (S.D.N.Y. 1999) (holding that the existence of a specific charter party of a particular date, combined with the repeated references to the charter party on both sides of the COGENBILL bills of lading were sufficient to incorporate all the charter party terms, including the arbitration clause); *M/V Kaptan Cebi*, 1997 US Dist. LEXIS 24027, at *15 (explaining that the COGENBILL bill of lading clearly identified the charter party and therefore it was clear that such terms were incorporated). For instance, the court in *M/V Kaptan Cebi* held that "[n]otice of the incorporation of the terms of a charter-party on this particular bill of lading" was "obvious and inescapable" when the bill of lading was printed on a CONGENBill 94 form and explicitly stated that "all terms and conditions of liberties and exceptions of the Charter-Party dated as overleaf including the Law and Arbitration Clause, are herewith incorporated." *M/V Kaptan Cebi*, 1997 US Dist. LEXIS 24027 at *11-12.

The same result should follow here. Hawthorne clearly had notice of application of the Booking Note's Hong Kong arbitration clause because the Bills of Lading all explicitly state: "All terms and conditions, liberties and exceptions of the Charter Party, dated as overleaf, **including the Law and Arbitration Clause**, are herewith incorporated." (Ex. O1, Bills of Lading). Given this language, the "obvious and inescapable" conclusion is that Hawthorne had notice of the Hong Kong arbitration clause and thus must be bound by its terms. *M/V Kaptan Cebi*, 1997 US Dist. LEXIS 24027 at *11-12.

Moreover, Hawthorne also clearly had notice of incorporation of the Booking Note arbitration clause because it has filed suit under the Bills of Lading. By initiating this action in its

capacity as Consignee under the Bills of Lading, Hawthorne has accepted all of the Bills of Lading terms. *See All Pacific Trading, Inc. v. Vessel M/ V Hanjin Yosu*, 7 F.3d 1427, 1432 (9th Cir. 1993) (holding that "[p]laintiff's initiation of the suit constituted acceptance of the terms of the … bills of lading"); *see also Commercial Metals Co. v. Compania Espanola de Laminacion S.L.*, Civil Action No. 2:09cv451, 2011 U.S. Dist. LEXIS 168827, at *17 (E.D. Va. Apr. 29, 2011) (explaining that "CMC, as consignee, is bound to the terms in the bills of lading," including incorporation of the charter party arbitration clause). Hawthorne "cannot pick and choose among the clauses of the bills of lading, selecting those that impose duties on the vessel and impose liability while avoiding those that establish the forum where that liability is to be determined." *F.D. Imp. & Exp. Corp. v. M/V Reefer Sun*, 248 F. Supp. 2d 240, 248-49 (S.D.N.Y. 2002) (quoting *Thyssen*, 1999 U.S. Dist. LEXIS 12578 at *19).

Simply put, Hawthorne has based its claims upon its status as a consignee under the Bills of Lading, and it must therefore comply with ***all*** Bill of Lading terms, including incorporation of the Booking Note arbitration clause.

## II.   The *In Rem* Claims are Covered by the Arbitration Clause.

The arbitration clause here is concise and states: "Arbitration in Hongkong, with English law to be applied." (Daley Dec. at Ex. O3). Courts have consistently held that similarly worded clauses are to be considered broad, mandatory arbitration clauses that bind all parties to all disputes arising out of the subject contract. *See Salim Oleochemicals v. M/V Shropshire*, 169 F. Supp. 2d 194, 198 (S.D.N.Y. 2001) (finding clause stating "Law General average and charterparty arbitration to be conducted in London" to be a broad arbitration clause); *Usinor Steel Corp. v. M/V Koningsborg*, 2004 U.S. Dist. LEXIS 1615, at *3-5 (S.D.N.Y. Feb. 4, 2004) (holding clause stating "Arbitration, if any, to be settled in Paris by Chambre Arbitrale Maritime and French Law to apply"

is broad and mandatory); *Oriental Commercial & Shipping Co. v. Rosseel, N.V.*, 609 F. Supp. 75 (S.D.N.Y. 1985) (finding clause providing "Arbitration: If required in New York City" to be broad and mandatory). In the context of maritime disputes involving cargo loss and damage, such broad arbitration clauses have routinely been found to cover in rem claims against the defendant vessel. *See Thyssen, Inc. v M/V Markos N*, 1999 US Dist. LEXIS 12578, at *20-21 (S.D.N.Y. 1999); *Diana Co. Maritima, S.A. v. Subfreights of S.S. Admiralty Flyer*, 280 F. Supp. 607, 615-16 (S.D.N.Y. 1968) (holding that an arbitration panel may decide both *in personam* and *in rem* claims).

Under this established law, the Booking Note arbitration clause providing for "Arbitration in Hongkong, with English law to be applied" is a broad, mandatory arbitration provision covering all disputes arising out of the bills of lading, including all of Hawthorne's claims set forth in the Verified Complaint against the Vessel. The claims advanced by Hawthorne against the Vessel are thus subject to arbitration in Hong Kong, and this matter should be stayed pending resolution of any arbitration.

**III.     A Stay is Warranted Pursuant to Section 3 of the FAA.**

Given that the *in rem* claims are subject to arbitration, a stay of this action is warranted pursuant to Section 3 of the FAA, which states:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is preferable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.

The use of the word "shall" in Section 3 means that "a district court ***must*** grant a party's motion to stay further proceedings if (1) the court is 'satisfied that the issue . . . is referable to arbitration pursuant to 'an agreement in writing for such arbitration,' and (2) the 'applicant for the stay is not in default in proceeding with such arbitration.'" *Noe v. City Nat'l Bank*, 828 F. App'x 163, 165 (4th Cir. 2020) (emphasis added); *see also United States v. Bankers Ins. Co.*, 245 F.3d 315, 319 (4th Cir. 2001) (explaining that under Section 3 of the FAA "a court is required to stay 'any suit or proceeding' pending the arbitration of any issue referable to arbitration under an agreement in writing for such arbitration'").

Both requirements of Section 3 of the FAA are satisfied here. First, the claims against the Vessel are subject to arbitration in Hong Kong as discussed above. Second, neither Owners nor the Vessel are in default in proceeding with any arbitration in Hong Kong, which as of today has not yet even been demanded by Hawthorne. Accordingly, pursuant to Section 3 of the FAA the Court, respectfully, must enter an Order staying this action in favor of arbitration in Hong Kong.

## **CONCLUSION**

Based on the foregoing, Owners are entitled to an Order staying this matter in favor of Hong Kong arbitration.

Respectfully submitted,

BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC


\_\_\_/s/_____
**Jack R. Daley, Bar No. 29187**
**Geoffrey S. Tobias, Bar No. 00301**
**Constantine Themelis, Bar No. 27303**
Baker, Donelson
100 Light Street
Baltimore, MD  21202
Tel: (410) 685-1120
Fax: (410) 547-0699
E-mail: jdaley@bakerdonelson.com
E-mail: gtobias@bakerdonelson.com
E-mail: gthemelis@bakerdonelson.com

*Attorneys for Ratu Shipping Co. Ltd.  ("Ratu Shipping") the Owner of the M/V TAC IMOLA*

Of Counsel:
Don P. Murnane, Jr. (murnane@freehill.com)
J. Tanner Honea (honea@freehill.com)
Michael J. Dehart (dehart@freehill.com)
Freehill Hogan & Mahar, LLP
80 Pine Street, 25th Floor
New York, NY 10005

**CERTIFICATE OF SERVICE**

    I hereby certify that on this 17th day of June 2022 the foregoing was served on all counsel of record via ECF.

                                                */s/ Jack R. Daley*
                                                _____
                                                Jack R. Daley