IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Northern Division*

| | | |
|---|---|---|
| HAWTHORNE INDUSTRIAL PRODUCTS INC. FOR ITS OWN ACCOUNT AS CONSIGNEE OF CERTAIN CARGO, AND AS AUTHORIZED AGENT FOR GENESIS PRODUCTS INC., GREAT LAKES LAMINATION, GREAT LAKES FOREST PRODUCTS, ANDand FUSION WOOD PRODUCTS, | § § § § § § § § § § | CIVIL NO. 1:22-cv-01376-RDB |
| Plaintiffs | § | |
| v. | § § | |
| M/V TAC IMOLA, IMO No. 9932103 her engines, boilers, tackle, etc., *in rem*, RATU SHIPPING CO. SA, NISSHIN SHIPPING CO LTD, and FLEET MANAGEMENT LTD-HKG, TRANSATLANTICA COMMODITIES PTE. LTD., and HANWIN SHIPPING LIMITED, *in personam*, | § § § § § § § § § § § | |
| Defendants | § § | |

## AMENDED VERIFIED COMPLAINT

Plaintiffs Hawthorne Industrial Products Inc. ("Hawthorne"), for its own account as consignee of certain cargo and as authorized agent for Genesis Products Inc. ("Genesis"), Great Lakes Lamination ("GLL"), Great Lakes Forest Products ("GLFP"), and Fusion Wood Products ("Fusion" and, all together, the "Plaintiffs"), by and through their undersigned attorneys, respectfully submit this *Amended Verified Complaint* against defendants M/V TAC IMOLA, her engines, boilers, tackle, etc., *in rem* (the "Vessel"), Ratu Shipping Co SA ("Ratu"), NissinNisshin Shipping Co Ltd ("Nissin"), and Nisshin"), Fleet Management Ltd-HKG, *in*

*personam* ("Fleet Management"), Transatlantica Commodities Pte. Ltd. ("Transatlantica"), and Hanwin Shipping Limited ("Hanwin" and, all together with the Vessel, the "Defendants"), and alleges upon information and belief as follows:

## JURISDICTION AND VENUE

1. This is a claim within this Honorable Court's admiralty and maritime jurisdiction, 28 U.S.C. § 1333, and this is also an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

2. Venue is proper in this District because the Vessel and the Defendants' property are or soon will be located within this District.

## THE PARTIES

3. Plaintiff Hawthorne is a corporation organized and existing pursuant to the laws of the state of Florida and with a principal place of business located at 10694-B South US Highway 1, Port St. Lucie, Florida 34952, and at all times relevant hereto was engaged in the business of importing wood products from overseas as consignee, including the "Cargo" described more fully described in *Exhibit A* – the "Bills of Lading" numbered HSLM01QINBAL001-HSLM01QINBAL008 and HSLM01QINBAL167.

4. Plaintiffs Genesis, GLL, GLFP, and Fusion are the beneficial owners of the Cargo described in the Bills of Lading.

5. Plaintiff Hawthorne brings this action for its own account as consignee of some Cargo, as authorized agent for plaintiffs GLL, GLFP, and Fusion, and on behalf of any and all other third parties who may be or might become interested in the Cargo as each of their respective interests may appear.

6. Plaintiffs are entitled to maintain this action.

-2-

6.7. Upon information and belief, the ~~defendant~~ Vessel was a ~~newbuilt bulk ship registered in Panama, and it is presently located within this District~~Panamanian-flagged bulker with 5 cargo holds, engaged on its maiden voyage.

7.8. Upon information and belief, at all times relevant hereto, the Vessel was owned by defendant Ratu, with a principal place of business located on the 19th floor, Nihonbashi, I-chome Building, 4-1, Nihonbashi 1-chome, Chaso-ku, Tokyo, 103-0027, Japan, co-managed by defendant ~~Nissin~~Nisshin, with a principal place of business located at the same address at Ratu, and co-managed by and Fleet Management, with a principal place of business located on the 27th floor, South Island Place, 8, Wong Chunk Hang Road, Southern Hong Kong, China.

8.9. Upon information and belief, at all times relevant hereto, ~~the Vessel was time chartered by non-party~~defendant Transatlantica ~~Commodities Pte Ltd ("Transatlantica")~~was a company located in Singapore which charters and sub-~~time chartered by non-party Hanwin Shipping Limited ("Hanwin").~~ charters vessels.

10. Upon information and belief, at all times relevant hereto, defendant Hanwin was a company located in China that carries ocean cargo.

## THE FACTS

11. ~~On~~ Upon information and belief, at all time relevant hereto, defendant Transatlantica time-chartered the Vessel from defendant Ratu.

12. Upon information and belief, at all times relevant hereto, defendant Hanwin sub-chartered the Vessel from defendant Transatlantica.

13. Upon information and belief, it is customary in the maritime industry for charterers and sub-charterers like Transatlantica and Hanwin to provide bunkers, marine fuels, lubricants, fresh water, food, and other provisions to vessels for their operation and care. *See*, *e.g.*, *Verified*

*Complaint with Request for Issue of Warrant of Arrest and Maritime Attachment and Garnishment*, Docket No. 1, ¶ 23, *Transatlantica Commodities Pte. Ltd. v. Hanwin Shipping Limited*, Case No. 22 Civ 1275 (D. Md. filed May 27, 2022).

9.14. Upon information and belief, on or about November 2420-25, 2021, at the load port in Qingdao, China, the Defendants accepted and loaded approximately 9,667 palletscrates of MDF Panels, Pinus Sylvestris Plywood, and Plywood (*i.e.*, the "Cargo) were loaded ") aboard the Vessel for carriage to Baltimore, Maryland.

15. WhileUpon information and belief, the Vessel was expected to arrive in Baltimore around January 8, 2022.

10. Upon information and belief, on or about November 24-25, 2021, the Defendants issued and/or ratified the Bills of Lading fail to identify the "Carrier" in the masthead, theyfor the Cargo, each of which are all signed and stamped at the bottom-right in Chinese and English, including by "LI SONG OF THE M/V TAC IMOLA" as "AGENT FOR AND ON BEHALF OF THE MASTER."

11.16. Under the signature appears the words "AS " and by "ZHENHUA INTERNATIONAL SHIPPING AGENCY (QINGDAO) CO. LTD." as "AGENT FOR THE CARRIER OF THE B/L (BILL OF LADING) TITLE"."

12.17. All of the Bills of Lading are "clean" meaning that no exceptions were taken by the Master, the Vessel's Owner, and/or the CarrierDefendants as to the good order and condition of the Cargo at the time it was accepted and loaded on the Vessel in China.

13.18. Upon information and belief, the Defendants also accepted and loaded other cargo including twenty-foot metal containers stuffed with computer equipment which were placed

directly on top of the ~~cargo of~~ Cargo in hold numbers 2 and 4~~, there were container(s) of computer equipment which was stowed and secured by unknown means and methods~~.

~~14.~~19.  Upon information and belief, ~~the Vessel and~~ the ~~Carrier~~Defendants were responsible for safely and properly loading, stowing, and securing all of the ~~Cargo~~cargo on board the Vessel.

20.  Upon information and belief, the Defendants failed to safely and properly load, stow, and secure all of the cargo on board the Vessel.

21.  Upon information and belief, as a consequence of the Defendants' failure to safely and properly load, stow, and secure all of the cargo on board the Vessel, the cargo moved, shifted, and collapsed during the voyage.

22.  Upon information and belief, on or about December ~~5, 2021~~3, 2021, while east of Japan, the Vessel's crew observed smoke and fire in cargo hold number 4.

23.  Upon information and belief, the Vessel crew's extinguished the fire in cargo hold number 4 by using $CO_2$.

24.  Upon information and belief, after the first fire, the Defendants ordered the Vessel to deviate back towards Japan.

25.  Upon information and belief, on or about December 9, 2021, instead of calling Japan, the Vessel anchored back near Qingdao.

26.  Upon information and belief, the Vessel stayed at anchor off Qingdao for twenty days.

27.  Upon information and belief, on or about December 29, 2021, the Vessel began to sail towards Kunsan, Korea.

~~15.~~28.  Upon information and belief, on or about December 30, 2021, while drifting outside Kunsan's port limits, the Vessel's crew observed smoke ~~coming from~~ and fire ~~within its~~in cargo ~~holds~~hold number 2 ~~and 4~~.

29. Upon information and belief, the ~~Vessel's crew tried~~ Vessel crew's attempted to extinguish the fire in cargo hold number ~~4~~2 by using CO2 ~~— however, there was either no CO2,~~ but failed.

30. Upon information and belief, on ~~or insufficient CO2~~ about January 3, 2022, the Vessel berthed at Kunsan.

31. Upon information and belief, on or about January 4, 2022, the Vessel's crew again attempted to extinguish the fire in cargo hold number 2 by using CO2, but failed.

~~16.~~32. Upon information and~~, therefore~~ belief, on or after January 5, 2022, the Vessel's crew flooded cargo hold number 2 with ~~sea water.~~ seawater to extinguish the second fire.

~~17. Upon information and belief, the Vessel deviated its course several times—all without consent of the Plaintiffs—to unscheduled ports in South Korea, China, Japan, and/or Canada.~~

~~18. At no time during the incident did the Defendants or charterers advise Hawthorne that the Cargo was exposed to fire, smoke, high temperatures, CO2, and sea water.~~

~~19.~~33. Although the ~~incident~~first fire is believed to have occurred around December 5, ~~2022,~~2021, and the second fire is believed to have occurred around December 30, 2021, plaintiff Hawthorne was not notified ~~of~~about the ~~incident~~fires until February of 2022 ~~— i.e., about three months later.~~.

~~20.~~34. Moreover, upon information and belief, the information provided to Hawthorne at the time of notification was at least in part inaccurate~~; Plaintiff was told~~:

> ALTHOUGH IT WAS A VERY HOT FIRE IT LOOKS LIKE THE FIRE WAS CONTAINED TO ONE CONTAINER ON DECK.
>
> IN PUTTING THE FIRE OUT, IT CAUSED TROUBLES MAINLY CONTAINED TO HOLD 4 AND IT CAUSED TROUBLES TO ONE OTHER HOLD.

SOME WATER USED IN PUTTING OUT THE FIRE LEAKED
INTO TWO HOLDS ALSO.

~~21.~~35. As a consequence of the late notice, Plaintiffs were ~~unable~~deprived of an opportunity to inspect the nature of the damage, assess the extent of the damage, and investigate the cause or source of the damage when the Vessel deviated ~~to South Korea, China, Japan, and/or Canada.~~ and berthed in Kunsan, where other surveyors and experts disturbed crucial evidence.

~~22. Instead, the Plaintiffs were forced to wait until the ship ultimately called at a salvage terminal near Albany, New York, in May of 2022—*i.e.*, about six months later.~~

~~23. By that time, the cargo continued to decompose and lose value, and it was a constructive total loss on discharge at the salvage terminal.~~

~~24. Meanwhile, upon information and belief, surveyors and experts for the Defendants and charterers had already accessed the Vessel and disturbed the evidence several months earlier in South Korea, China, Japan, and/or Canada, and when it subsequently discharged the containerized cargo of computer parts at Newark, New Jersey, all without notice to Plaintiff and without an invitation to join in surveys, inspections, and investigations.~~

36. Upon information and belief, as time passed, the Cargo onboard the Vessel became so badly damaged, moved, shifted, collapsed, crushed, charred, heated, wetted, warped, decayed, and decomposed that stevedores at the discharge port of Baltimore refused to unload it due to health and safety concerns.

37. Upon information and belief, the Defendants ordered the Vessel to deviate to Newark, New Jersey, where it unloaded the twenty-foot metal containers stuffed with computer equipment, which had gouged the insides of the Vessel's freshly painted cargo holds.

38. Upon information and belief, the Defendants thereafter caused the Vessel to deviate to Albany, New York, where it began to discharge some of the Cargo on or about March 5, 2022.

39. Upon information and belief, before all of the Cargo was unloaded in Albany, a dispute arose between the terminal in Albany and the Defendants, and the Defendants ordered the Vessel to deviate to an anchorage off Long Island, New York.

40. Upon information and belief, while the Vessel was anchored off Long Island, further disputes arose between defendants Transatlantica and Hanwin, causing the Vessel to be further delayed and the Cargo to become further warped, decayed, and decomposed.

41. The Plaintiffs, in order to mitigate their own damages and without prejudice to their rights, paid outstanding costs of discharging at Albany and, in addition, prepaid some of the costs of discharging at Baltimore.

42. But, upon information and belief, the dispute between defendants Transatlantica and Hanwin still had not been resolved.

43. Therefore, the Plaintiffs, in order to continue to mitigate their own damages and without prejudice to their rights, prepaid the costs of discharging at Coeymans, New York.

44. Upon information and belief, the Vessel arrived at Coeymans on or about May 21, 2022, and resumed discharging some of the Cargo.

45. Upon information and belief, the Defendants ordered the Vessel to depart Coeymans before discharge was completed.

46. Upon information and belief, on or about June 1, 2022—*i.e.*, about seven months after departing Qingdao—the Vessel finally arrived at its originally intended discharge port of Baltimore.

47. Upon information and belief, in the ordinary course, the Defendants were obligated to unload and deliver the cargo in Baltimore.

48. Despite requests to all of the Defendants for information and documents concerning the cause of the casualties and responsibility therefor, only defendant Ratu has provided thirty-eight documents to Plaintiffs, although none of them explain the Defendants' responsibilities and obligations with respect to the custody and care of the Cargo or the potential causes of the Cargo moving, shifting, collapsing, and fires.

**AS AND FOR A FIRST CAUSE OF ACTION** ~~BY PLAINTIFF, HAWTHORNE, ACTING FOR ITS OWN ACCOUNT AS CONSIGNEE~~
**BREACH OF** ~~THE SUBJECT BILLS OF LADING AGAINST ALL NAMED DEFENDANTS FOR LOSSES AND DAMAGES WHICH WHERE INCURRED OUT OF POCKET.~~**MARITIME CONTRACT**

~~25.~~ Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1-~~24~~48 above.

~~26.~~49. ~~Plaintiff Hawthorne is the named "consignee" on each and every Bill of Lading attached as Exhibit A to this *Verified Complaint*.~~

~~27.~~50. The Cargo described in the Bills of Lading was in good order and condition when tendered to and accepted by the ~~Vessel~~Defendants at the load port, but it was not ~~discharged and~~ delivered to Plaintiffs at the discharge port in the same good order and condition ~~at the salvage terminal~~; instead, the Cargo was damaged, moved, shifted, collapsed, crushed, charred, ~~exposed to heat~~heated, wetted, warped, decayed, and decomposed to the point where it had little or no value, ~~was at least a constructive total loss, and~~and some of it had to be destroyed.

~~28. Moreover, the Defendants and/or the charterers refused to pay for the costs~~By virtue of ~~handling, stowing, and disposing of the lost and damaged Cargo at the salvage terminal.~~

~~29. Defendants have failed to provide any documents to Plaintiff from the Vessel to explain the cause of the incident which resulted in the loss and damage of the cargo which had been within the control and custody of the Defendants.~~

30.51. ~~Defendants,~~ the Defendants' (individually or collectively~~, have refused to pay for the costs of discharge of the damaged cargo from the ship, the handling of the cargo on the terminal, and the storage of the cargo on the terminal, but instead have threatened to hold up the delivery of the Defendants cargo, both damaged and sound cargo.~~) breaches of the bills of lading, Plaintiffs have incurred losses and damages estimated to be $28,000,000, which continue to accrue.

~~The Defendants,~~ **AS AND FOR A SECOND CAUSE OF ACTION FOR MARITIME TORT**

52. Plaintiffs repeat and reallege each of the allegations contained in paragraphs 1-48 above.

53. The Cargo was in good order and condition when tendered to and accepted by the Defendants at the load port, but it was not delivered to Plaintiffs at the discharge port in the same good order and condition; instead, the Cargo was damaged, moved, shifted, collapsed, crushed, charred, heated, wetted, warped, decayed, and decomposed to the point where it had little or no value, and some of it had to be destroyed.

~~31.~~ By virtue of the Defendants' (individually ~~or~~and collectively~~, have not shared any of the survey reports that they have commissioned at ports before the salvage port near Albany, New York, allowing Defendants to have an unfair advantage as to information and details concerning the nature and extent of the incident which caused damage to the Cargo onboard the Vessel.~~

32.54. By virtue of Defendants' (individually or collectively)~~)~~ tortious conduct~~, breach of contract,~~ including ~~but not limited to breach of the bills of lading,~~ their failure to exercise due diligence to make the ~~Vessel~~vessel seaworthy, ~~improper loading and securing of the cargo, geographical deviations (including towards Canada),~~ failure to exercise due care for the custody of the cargo, unreasonable ~~delay in delivery and geographical~~ deviation~~, inadequate firefighting system, training and equipment,~~ and delay, conversion, misinformation, and reckless and gross

negligence, ~~Plaintiff , Hawthorne, has~~Plaintiffs have incurred ~~out-of-pocket costs~~losses and ~~expenses which now are as best~~damages estimated to ~~exceed $3~~be $28,000,000 ~~and~~, which continue to accrue~~, none of which has been paid or reimbursed by Defendants, nor are such cost or expenses recoverable under the terms of Plaintiff's insurance policy.~~ .

**AS AND FOR A ~~SECOND~~THIRD CAUSE OF ACTION ~~BY PLAINTIFF, ACTING AS AUTHORIZED AGENT~~ FOR ~~THE LOSS OF VALUE OF THEIR CARGOS AND EXPENSES~~**

~~Plaintiff repeats~~**RULE C VESSEL ARREST**

~~33.~~55. Plaintiffs repeat and ~~realleges~~reallege each of the allegations contained in paragraphs 1-~~32~~48 above.

~~34. Plaintiff, Hawthorne, has been authorized to represent each of the other Plaintiffs set forth in this *Verified Complaint* who were the beneficial owners of the Cargo having pre-paid in full for the subject cargo. *See* Exhibit B – Letters of Authorization.~~

~~35. The Cargo was not discharged and delivered to Plaintiff (s) in the same sound and good order and condition at the alternate port of discharge, but instead the cargo was damaged, charred, exposed to heat, warped, decayed, decomposed and otherwise damage to the point where it had no value, was a constructive total loss, and had to be destroyed.~~

~~36. The Defendants, individually or collectively, have failed to provide any documents to Plaintiff(s) from the vessel to explain the cause or the occurrence of the incident which resulted in the condition of the cargo in the control and custody of the Defendants.~~

~~37. By virtue of the (individually and collectively) tortious conduct and breach of contract, including the breach of the bills of lading, failure to exercise due diligence to make the vessel seaworthy, geographical deviations, failure to exercise due care for the custody of the cargo, inadequate firefighting system, training and equipment, unreasonable deviation and delay,~~

~~conversion, misinformation, and reckless and gross negligence, Plaintiffs are entitled to the sound market value of the cargo at the intended port of discharge, Baltimore, had the goods arrived in the same sound and good quality condition as when loaded.~~

~~38. At this time, Plaintiffs best estimate this value to be $21,000,000, although this estimate may require further amendment due to the fact that there is still damaged cargo aboard the Vessel which has not yet been unloaded or surveyed, and other damages continue to accrue.~~

~~39. Plaintiffs have a maritime lien against the Vessel for the full amount of damages claimed and for those damages yet unassessed.~~

~~40. Consequently, Plaintiff in its own capacity and as agent for the Plaintiffs and Cargo's beneficial owners is entitled to a judgment against said Vessel and the Defendants, *in personam*, in the amount of the specified claims, with interest and costs.~~

<u>56. In their original *Verified Complaint*, Docket No. 1, Plaintiffs sought issuance by this Honorable Court of a warrant of arrest of the Vessel, so that they may be paid the amount adjudged to be owed by the *in rem* Defendant Vessel.</u>

<u>57. After the filing of the original *Verified Complaint* and before the filing of this *Amended Verified Complaint*, the Britannia Steam Ship Insurance Association Europe posted a Letter of Undertaking in favor of the Plaintiffs to secure Plaintiffs' claims against the Vessel in the total amount of $28 million. *See Vessel Interests' Motion to Stay in Favor of Arbitration*, Docket No. 22, Exhibit 4.</u>

<u>58. On June 17, 2022, defendant Ratu filed a *Restricted Appearance and Verified Statement of Interest*, Docket Nos. 20 and 21, for the Vessel.</u>

### <u>AS AND FOR A FOURTH CAUSE OF ACTION FOR<br>RULE B MARITIME ATTACHMENT<br>(AGAINST TRANSATLANTICA AND HANWIN ONLY)</u>

59. Plaintiffs repeat and reallege each of the allegations contained in paragraphs 1-48 above.

60. Plaintiffs seek the issuance by this Honorable Court of processes of maritime attachment so that they may be paid the amount adjudged to be owed by the *in personam* Defendants.

61. No security for Plaintiffs' claims have been posted by the *in personam* Defendants as of the date of this *Amended Verified Complaint*.

62. The *in personam* Defendants cannot be found within this District within the meaning of Rule B, but they are believed to have, or will have during the pendency of this action, assets within this jurisdiction; for example, Transatlantica and/or Hanwin may have bunkers, lubricants, water, food and other cash or credits aboard the vessels M/V TAC IMOLA and M/V INDIGO SPICA, each of which are presently within this District.

**WHEREFORE**, Plaintiffs respectfully pray:

A. That this Honorable Court issue an order directing the clerk to issue a warrant for the arrest of the *in rem* Defendant- Vessel pursuant to Rule C of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions[1];

B. That this Honorable Court issue an order directing the clerk to issue a writ of maritime attachment and garnishment of the *in personam* Defendants' assets within this District pursuant to Rule B of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions;

---

[1] For purposes of the record, Plaintiffs arrested the M/V TAC IMOLA pursuant to Rule C of the Supplemental Rules for Admiralty and Maritime Claims and Asset Forfeiture Actions, and the Vessel was subsequently released from arrest by Court Order on June 14, 2022 [ECF No. 17]. After the filing of the original *Verified Complaint* and before the filing of this *Amended Verified Complaint*, the Britannia Steam Ship Insurance Association Europe posted a Letter of Undertaking in favor of the Plaintiffs to secure Plaintiffs' claims against the Vessel in the total amount of $28 million. Accordingly, Plaintiffs assert this prayer for purposes of the record, but do not request additional issuance of a warrant for arrest of the *in rem* Defendant pursuant to Rule C at this time.

~~B.~~C.	That any security thereafter fixed by this Honorable Court be conditioned for the maximum amount permitted by Rule E(5), which permits up to twice the amount of Plaintiffs' claim;

~~C.	That the claims of Plaintiff, Hawthorne Industrial Products, Inc., and that of the Plaintiffs', be adjudged to be a maritime lien on the M/V TAC IMOLA, her engines, tackle, appurtenances, etc., and that a judgment be entered in favor of Hawthorne Industrial Products, Inc., for its own account and as agent against the M/V TAC IMOLA, her engines, tackle, equipment, appurtenances, etc., for the amount of $28,000,000, subject to increase or decrease as the situation warrants, with interest, costs, and attorneys' fees;~~

~~D.	That the M/V TAC IMOLA, her engines, tackle, equipment and other appurtenances be condemned and sold to pay the judgment entered in favor of Hawthorne Industrial Products, Inc and the Plaintiffs.~~;

~~E.~~D.	That this Honorable Court issue judgment against the ~~Defendant Vessel,~~ Defendants in an amount in excess of $~~24~~28,000,000 plus fees, interest, attorneys fees and costs; and

~~F.	The Plaintiff be entitled to judgement in the aforementioned amounts against the Defendants, *in personam,* RATU SHIPPING CO. SA., NISSIN SHIPPING CO., LTD., and FLEET MANAGEMENT LTD HKG, jointly and severally, for the allegations of breach of contract, tort, bailment, conversion, and as otherwise specified in this Complaint, together with interest, costs and legal fees, and;~~

~~G.~~E.	That this Honorable Court grant such other and further relief as it deems just and proper.

Dated: ~~June 6~~July 8, 2022
      Baltimore, Maryland

                                                                  ~~/s/~~
                                                    James W. Bartlett, III, Esquire
                                                    Federal Bar Number 00017

Imran O. Shaukat, Esquire<br>
Federal Bar Number 30134<br>
Semmes, Bowen & Semmes<br>
25 S. Charles Street, Suite 1400<br>
Baltimore, Maryland 21201<br>
Phone: (410) 539-5040<br>
Facsimile: (410) 539-5223<br>
jbartlett@semmes.com<br>
ishaukat@semmes.com<br>
<br>
*Attorneys for Plaintiff*<br>
HAWTHORNE INDUSTRIAL PRODUCTS, INC.

Of Counsel:

Robert E. O'Connor
Vincent M. DeOrchis
Alfred Kuffler
Wook Chung
Montgomery McCracken Walker & Rhoads LLP
437 Madison Avenue
New York, NY 10022
Tel: 212-551-7732
Fax: 212-201-1939

~~2791274.docx~~
B2821642.DOCX

## VERIFICATION OF AMENDED COMPLAINT

BEFORE ME, the undersigned authority, personally came and appeared Russell Stadelman, who deposed and said that he is the President of HAWTHORNE INDUSTRIAL PRODUCTS, INC., that he has read the above and foregoing Amended Complaint and knows the contents thereof and that the same are true and correct based upon his personal knowledge, documents that have become available to him, and upon information and belief, and that he is authorized to verify the Amended Complaint filed herein.

_____

Subscribed and sworn to before me this _____ day of July, 2022

My commission expires:

_____