**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Northern Division*

| | | |
|---|---|---|
| HAWTHORNE INDUSTRIAL PRODUCTS INC. for its own account as consignee of certain cargo and as agent for GENESIS PRODUCTS INC., GREAT LAKES LAMINATION, GREAT LAKES FOREST PRODUCTS, and FUSION WOOD PRODUCTS, | § § § § § § § § | CIVIL NO. 1:22-cv-01376-RDB |
| Plaintiffs | § § | |
| v. | § § | |
| M/V TAC IMOLA, IMO No. 9932103 her engines, boilers, tackle, etc., *in rem*, RATU SHIPPING CO. SA, NISSHIN SHIPPING CO LTD, FLEET MANAGEMENT LTD-HKG, TRANSATLANTICA COMMODITIES PTE. LTD., and HANWIN SHIPPING LIMITED, *in personam*, | § § § § § § § § § § § § | |
| Defendants | § | |

**CARGO INTERESTS' OPPOSITION TO**
**VESSEL INTERESTS' MOTION TO STAY IN FAVOR OF ARBITRATION**

## <u>TABLE OF CONTENTS</u>

**Page(s)**

PRELIMINARY STATEMENT ................................................................................ 1

STATEMENT OF FACTS .................................................................................... 2

    Plywood Purchase – No Agreement to Arbitrate ................................................ 2

    Bills of Lading – Unauthorized ........................................................................ 3

    Booking Note – Inadmissible .......................................................................... 4

STANDARD OF REVIEW ................................................................................... 5

ARGUMENT ................................................................................................... 9

I.    The Vessel Interests Failed to Prove That an Agreement to Arbitrate Exists ................. 9

    A.    The Vessel Interests Cannot Rely on Bills of Lading That Were Unauthorized ........................................................................................ 9

    B.    The Vessel Interests Cannot Rely on A Booking Note That Is Inadmissible ...... 10

    C.    The Booking Note Was Not A Final and Binding Agreement Anyway ............. 12

II.    Alternatively, as a Matter of Law, the Vessel Interests' Motion to Stay in Favor of Arbitration Should Be Denied ......................................................................... 13

    A.    The Booking Note's Arbitration Agreement Is Not Enforceable Under The New York Convention Because It Was Not Signed ............................................. 13

    B.    The Bills of Lading Do Not Expressly Reference or Specifically Incorporate the Booking Note ............................................................................... 16

    C.    The Contracts of Carriage Are Adhesion Contracts and Any Ambiguities Must Be Construed in The Cargo Interests' Favor ............................................. 18

        (i)    The Bills of Lading do Not Incorporate the Booking Note .................... 18

        (ii)    The Booking Note Cannot be Enforced Against a Non-Signatory ......... 19

III.    If the Court Cannot Decide the Motion on the Existing Record, then It Should order Limited Discovery ................................................................................ 21

CONCLUSION ................................................................................................ 23

## <u>TABLE OF AUTHORITIES</u>

**Cases**

**Page(s)**

*Adkins v. Labor Ready, Inc.*,
   303 F.3d 496 (4th Cir. 2002) ..............................................................................6, 20

*AGP Indus. SA (PERU) v. JPS Elastromerics Corp.*,
   511 F. Supp. 2d 212 (D. Mass. 2007) ......................................................................15

*All Pac. Trading, Inc. v. Vessel M/V Hanjin Yosu*,
   7 F.3d 1427 (9th Cir. 1993) ......................................................................................18

*Allied Chem. Int'l Corp. v. Companhia de Navegacao Lloyd Brasileiro*,
   775 F.2d 476 (2d Cir. 1985)......................................................................................18

*In re Am. Exp. Fin. Advisors Sec. Litig.*,
   672 F.3d 113 (2d Cir. 2011)..................................................................................6, 22

*Anderson v. Ahluwalia*,
   Case No. 21 Civ. 60793, 2022 WL 850000 (S.D. Fla. Feb. 28, 2022) ................6, 20

*AT&T Techs., Inc. v. Communications Workers of America*,
   475 U.S. 643 (1986)....................................................................................................5

*Berkeley Cnty. Sch. Dist. v. Hub Int'l Ltd.*,
   944 F.3d 225 (4th Cir. 2019) .................................................................................6, 8

*Burch v. PJ Cheese, Inc.*,
   Case No. 09 Civ. 1640, 2009 WL 10688971 (N.D. Ala. Dec. 11, 2009) ..................8

*Caire v. Conifer Value Based Care, LLC*,
   982 F. Supp. 2d 582 (D. Md. 2013) (Bennett, D.J.) ..................................................8

*Caledonia*,
   157 U.S. 124 (1895).................................................................................................18

*Continental Ins. Co. v. Polish S.S. Co*
   346 F.3d 281 (2d Cir. 2003)....................................................................................12

*Deangelo Bros. LLC v. Am. Alternative Fuels LLC*,
   Case No. 14 Civ. 314, 2015 WL 13357554 (M.D. Pa. Nov. 6, 2015)......................8

*Deangleo Bros., LLC v. Am. Alternative Fuel, LLC*,
   Case No. 14 Civ. 2314, 2015 WL 13424441 (M.D. Pa. Nov. 24, 2015)..................8

## TABLE OF AUTHORITIES
### (continued)

Page(s)

*Eurosteel Corp. v. M/V Millenium Falcon*,
  2002 WL 1972276 (N. D. Ill. Aug. 20, 2002) ........................................................21

*Fastener Corp. of Am. v. Asheboro Elastics Corp.*,
  Case No. 12 Civ. 1296, 2013 WL 3227665 (M.D.N.C. 2013) .............................7, 9

*First Options of Chicago, Inc. v. Kaplan*,
  514 U.S. 938 (1995)...........................................................................................7, 16

*Garza v. Marine Transport Lines Inc.*,
  861 F.2d 23 (2d Cir. 1988).......................................................................................18

*Gateway Coal Co. v. Mine Workers*,
  414 U.S. 368 (1974)...................................................................................................5

*Goodwin v. Branch Banking & Trust Co.*,
  699 Fed. Appx. 274 (4th Cir. 2017)....................................................................6, 20

*Granite Rock Co. v. Int'l Bhd. of Teamsters*,
  561 U.S. 287 (2010)................................................................................................5, 6

*Hale Container Line, Inc. v. Houston Sea Packing Co.*,
  137 F.3d 1455 (11th Cir. 1998) ...............................................................................13

*Harren & Partner Ship Mgmt. de Mexico S.A.P.I. v. Am. Bureau of Shipping*,
  Case No. 21 Civ. 5361, 2021 WL 3617335 (S.D.N.Y. July 7, 2021)..................6, 15

*Hawkspere Shipping Co. Ltd. v. Intamex S. A.*,
  330 F.3d 225 (4th Cir. 2003) ...................................................................................12

*Hellenic Lines, Ltd. v. United States*,
  512 F.2d 1196 (2d Cir. 1975)...................................................................................22

*Hoogovens Ijmuiden Verkoopkantor BV v. M/V Sea Catttelya*,
  852 F.2d 6 (S.D.N.Y. 1994)......................................................................................21

*Howsam v. Dean Witter Reynolds, Inc.*,
  537 U.S. 79 (2002)......................................................................................................5

*Int'l Drilling Co., N. V. v. M/V Doriefs*,
  291 F. Supp. 479 (S.D. Tex. 1968) ..........................................................................22

*Interocean S.S. Corp. v. New Orleans Cold Storage & Warehouse Co.*,
  865 F.2d 699 (5th Cir. 1989) ...................................................................................18

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Kahn Lucas Lancaster, Inc. v. Lark Int'l Ltd.*,
    186 F.3d 210 (2d Cir. 1999).............................................................................7, 14, 15

*Lake Erie Towing v. Walter*,
    Case No. 07 Civ. 2312, 2007 WL 2907496 (N.D. Ohio Oct. 3, 2007)..............................7, 16

*Ledee v. Ceramiche Ragno*,
    684 F.2d 184 (1st Cir. 1982)...........................................................................14

*Little v. City of New York*,
    487 F. Supp. 2d 426 (S.D.N.Y. 2007).................................................................11

*Lorenzo v. Prime Comc'ns, L.P.*,
    806 F.3d 777 (4th Cir. 2015) ..........................................................................6, 20

*Maroc Fruit Bd. S.A. v. M/V VINSON*,
    Case No. 10 Civ. 10306, 2012 WL 2989195 (D. Mass. July 11, 2012) ...............................15

*Moses Cone Mem. Hospital v. Mercury Construction*
    460 U.S. 1 (1983)....................................................................................19, 20

*Myrvold v. Raibow Fiberglass & Boat Repair, LLC*,
    Case No. 17 Civ. 245, 2018 WL 1748107 (D. Alaska Apr. 11, 2018) .................................8

*Nat'l Material Trading v. M/V Kaptan Cebi*,
    1997 LEXIS 2407 (D. S. C. Mar. 13, 1997) ...........................................................12

*Noe v. City Nat'l Bank of W. Virginia*,
    828 F. App'x 163 (4th Cir. 2020).......................................................................8

*Ocean Prod., Inc. v. Molinos Rio de la Plata, S.A.*,
    Case No. 98 Civ. 3487, 1999 WL 239692 (S.D.N.Y. Apr. 22, 1999) .................................13

*Oriental Commercial & Shipping Co. v. Rosseel, N. V.*
    609 F. Supp. 75 (S.D.N.Y. 1985) .....................................................................19

*Orr v. Bank of Am., NT & SA*,
    285 F.3d 764 (9th Cir. 2002) ..........................................................................11

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
    388 U.S. 395 (1967)...................................................................................6

*Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional De Venezuela*,
    991 F.2d 42 (2d Cir. 1993)............................................................................7, 9

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Rota-McLarty v. Santander Consumer USA, Inc.*,
  700 F.3d 690 (4th Cir. 2012) ............................................................7, 16

*Salim Oleochemichicals v. M/V Shropshire*,
  169 F. Supp. 2d 194 (S.D.N.Y. 2001)......................................................19

*Silkworm Screen Printers, Inc. v. Abrams*,
  978 F.2d 1256 (4th Cir. 1992) ...........................................................7, 9

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
  559 U.S. 662 (2010)..................................................................5, 6, 22

*Stuart v. Gen. Motors Corp.*,
  217 F.3d 621 (8th Cir. 2000) .............................................................11

*Sys. Agency v. Villanueva*,
  Case No. 19 Civ. 6486, 2020 WL 7629879 (S.D.N.Y. Dec. 22, 2020)...................11

*Thyssen Inc. v. Calypso Shipping Corp. S.A.*,
  310 F. 3d 102 (2d Cir 2002)...............................................................12

*Thyssen Inc. v. M/V  Markos N,*
  *1999* LEXIS 12578 (S.D.N.Y. 1999).......................................................12

*Trade Arbed, Inc. v. M/V KANDALAKSHA*,
  Case No. 02 Civ. 5121, 2003 WL 22097460 (S.D.N.Y. June 23, 2003) .................19

*Transatlantica's Memorandum Opposing Hanwin's Motion for a Rule B
  Attachment*,
  Docket No. 10, p. 3, Case No. 22 Civ. 11182 (D. Mass filed Jul. 24, 2022)..........5

*United Steelworkers of America v. Warrior & Gulf Navigation Co.*,
  363 U.S. 574 (1960).......................................................................5

*Usinor Steel Corp v. M/V Koningsborg*,
  2004 WL 230910 (S.D.N.Y. Feb. 6, 2004)..................................................19

*Weinhoffer v. Davie Shoring, Inc.*,
  23 F.4th 579 (5th Cir. 2022) .............................................................10

*Whiteside v. Teltech Corp.*,
  940 F.2d 99 (4th Cir. 1991) ..............................................................7, 9

*Wyler v. United States*,
  725 F.2d 156 (2d Cir. 1983)...............................................................11

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Yeremex International v. SS Tendo*,
    595 F.2d 943 (4th Cir. 1979) ...................................................................................................10

**Statutes**

9 U.S.C.A. § 154 ......................................................................................................................14

9 U.S.C. § 1 ................................................................................................................................6

9 U.S.C. § 201 ............................................................................................................................7

9 U.S.C. § 202 ..........................................................................................................................14

9 U.S.C. § 206 ..........................................................................................................................14

46 U.S.C. § 30701 ....................................................................................................................12

**Other Authorities**

Federal Rule of Evidence 901 ..................................................................................................11

Plaintiffs Hawthorne Industrial Products Inc. ("Hawthorne"), for its own account as consignee of certain cargo and as authorized agent for Genesis Products Inc. ("Genesis"), Great Lakes Lamination ("GLL"), Great Lakes Forest Products ("GLFP"), and Fusion Wood Products ("Fusion" and, all together, the "Cargo Interests"), by and through their undersigned attorneys, respectfully submit this *Opposition to Vessel Interests' Motion to Stay in Favor of Arbitration* (Docket No. 22), and in support thereof state as follows:

## PRELIMINARY STATEMENT

This dispute concerns liability for an estimated $28 million of losses and damages suffered by the Cargo Interests as a consequence of the Vessel Interests' (and the other defendants') failure to properly stow and secure cargo prior to the commencement of the voyage. These egregious errors caused the cargo to shift and collapse, two separate fires, and a series of unreasonable deviations during the voyage.  Defendants Ratu Shipping Co. S.A. ("Ratu") and M/V TAC IMOLA's (the "Vessel" and, together, the "Vessel Interests") motion to stay this litigation and effectively compel enforcement of an alleged arbitration clause in a "Booking Note" by and between non-appearing co-defendant Hanwin and foreign non-party LYIT is nothing but a thinly-veiled attempt to delay and avoid responsibility.

As the movants seeking to stay litigation in favor of an alleged arbitration agreement, the Vessel Interests must first prove that there is an indisputable agreement to arbitrate.  But, here, the Cargo Interests unequivocally deny the very existence of the alleged agreement to arbitrate, and the Vessel Interests cannot carry their burden on the admissible evidence.  First, the Vessel Interests concede that the Bills of Lading purportedly containing the agreement to arbitrate were "unauthorized."  This begs the obvious question: How can the Vessel Interests disavow a document and simultaneously rely on it?  Second, the Booking Note which the Vessel Interests allege was incorporated into the unauthorized Bills of Lading cannot be authenticated by the

-1-

Vessel Interests' lawyer and, therefore, is not admissible evidence in support of their argument. Third, in practice, a booking note is not a final and binding document, anyway, and it cannot be relied on to show a final and binding agreement to arbitrate.

Even assuming that the Bill of Lading was authorized and that the Booking Note was authenticated, then under the New York Convention, the Vessel Interests must show that there is a signed agreement to arbitrate.  The Cargo Interests did not sign any arbitration agreement, though.  Additionally, under federal maritime law, the Booking Note was not incorporated into the Bills of Lading.  Therefore, its general terms are not binding on the Cargo Interests. Furthermore, assuming that the Booking Note was incorporated into the Bills of Lading, its arbitration clause was not specifically incorporated into the Bills of Lading.  The intent of the actual parties to each of these key documents is ambiguous, therefore, all inferences must all be construed in favor of the non-signatory and non-moving Cargo Interests.

The Court should deny the Vessel Interests' *Motion to Stay in Favor of Arbitration*, especially given the Vessel Interests' dispositive factual admission that the Bills of Lading were unauthorized.  The Court should also deny the motion because, as a matter of law, the Booking Note and its alleged arbitration clause were not signed and were not incorporated into the Bills of Lading.  At the very least, the Court should order discovery and conduct a summary trial on the gateway issue in dispute: whether there was an agreement to arbitrate.

## **STATEMENT OF FACTS**

### **Plywood Purchase – No Agreement to Arbitrate**

The Cargo Interests collectively purchased about $34 million of plywood from non-party seller Lianyungang Yuanti International Trade Co, Ltd ("LYIT").  *See* Declaration of Russell Stadelman at ¶ 6.  The goods were purchased on a CIF basis, meaning that LYIT was responsible for sourcing the goods, insuring them, and arranging for them to be carried as cargo to

Baltimore, Maryland.  *See* Stadelman Decl. at ¶¶ 7-8.  The Cargo Interests fully paid LYIT for the goods.  *See* Stadelman Decl. at ¶ 9.

The purchase orders did not include any agreement to arbitrate disputes arising thereunder or relating thereto.  *See* Stadelman Decl. at ¶ 10.  The Cargo Interests never agreed to arbitrate.  *See* Stadelman Decl. at ¶ 11.

### Bills of Lading – Unauthorized

A series of Bills of Lading numbered HSLM01QINBAL001-HSLM01QINBAL008 and HSLM01QINBAL167 were issued to LYIT as "Shipper" on or about November 24-25, 2021.  *See Amended Verified Complaint, Exhibit A – the "Bills of Lading"* (Docket No. 29-1).  Contrary to industry custom and practice, the Bills of Lading failed to identify the issuing "Carrier" in their mastheads.  Moreover, when confronted, the Vessel Interest's co-defendants—intermediary charterers Transatlantica Commodities Pte. Ltd. ("Transatlantica") and Hanwin Shipping Limited ("Hanwin") —denied that they were the responsible "Carrier."  For example, in a May 9, 2022 email, Hanwin wrote:

> [W]e do not see any legal basis for your clients to claim against Hanwin.  There is simply no legal relationship between our respective clients.  Your clients are not a party to the Fixture Note to which you refer and our clients are not party to the contract of carriage contained in or evidenced by the relevant Bills of Lading. You will note that the Bills of Lading were issued for and on behalf of Captain of the Vessel.  It follows that the carrier under the B/Ls, and party to the aforementioned contract of carriage, is the Owners of the Vessel.

*See* Declaration of Robert E. O'Connor ("O'Connor Decl.") at ¶ 4.  The Vessel Interests acknowledged in their *Answer to the Amended Verified Complaint* (Docket No. 34) that the Bills of Lading failed to identify a "Carrier" and—adding to the confusion that has so far polluted an efficient resolution of this casualty—when denying the allegation, the Vessel Interests failed to disclose who they know or believe to be the Bill of Lading "Carrier."

Crucially, in their same answer, the Vessel Interests further denied that the "Defendants authorized any Bills of Lading to be signed by" Zhenhua International Shipping Agency (QINGDAO) Co., LTD as agent for and on behalf of the Master of the Vessel." In other words, the Vessel Interests take the position that the Bills of Lading were not authorized by answering defendants Ratu, Nissin Shipping Co Ltd ("Nissin"), and Fleet Management Ltd-Hkg ("Fleet Management")—a position directly in conflict with Hanwin's position.

At this point, it is not clear to the Cargo Interests what, if any, are the applicable contracts of carriage. The Bills of Lading supposedly requiring the Cargo Interests to arbitrate were—according to the party seeking to compel arbitration—"unauthorized." It is also not clear to the Cargo Interests who was the Bill of Lading "Carrier." One of the *in personam* defendants must have issued the Bills of Lading. For its part, Hawthorne, as "Consignee", was not involved when ocean carriage was arranged and when the Bills of Lading were issued. *See* Stadelman Decl. at ¶¶ 12-13. Hawthorne did not even receive the Bills of Lading until April 18, 2022 (*i.e.*, long after they were issued). *See* Stadelman Decl. at ¶ 14.

**Booking Note – Inadmissible**

The Booking Note that contains the purported Hong Kong arbitration clause was apparently entered into by Hanwin and LYIT. *See Attorney Declaration and Introduction of Exhibits in Support of Owner's Motion to Stay in Favor of Arbitration*, Exhibit O3 – "Booking Note" (Docket No. 22-6). Neither of the parties to the Booking Note—Hanwin and LYIT—have appeared in this litigation to authenticate the document and to explain their intent. Moreover, the Booking Note (assuming it is admissible evidence) is just one link in a long chain of contracts of carriage—the Vessel Interests to Transatlantica, Transatlantica to Hanwin, and Hanwin to LYIT—each of which are relevant to determining whether the Cargo Interests are bound to arbitrate their disputes with the Vessel Interests.

Yet, despite repeated requests to all of the defendants, this key chain of contracts of carriage still has not been disclosed to the Cargo Interests.  *See*, *e.g.*, O'Connor Decl. at Exhibit A (Vessel Interests rejecting Cargo Interests' request for copies of the charter parties).  They would obviously help resolve confusion concerning the underlying claim of liability for the cargo losses and damages and the appropriate forum to adjudicate those claims.  Those documents should be disclosed here and now because the Vessel Interests' answer viewed in conjunction with their motion have put these documents squarely in the spotlight.  Are the alleged arbitration agreements consistent through the back-to-back-to-back-to-back contracts?  Intermediary charterers Transatlantica and Hanwin are currently arbitrating in London—not Hong Kong.  *See Transatlantica's Memorandum Opposing Hanwin's Motion for a Rule B Attachment*, Docket No. 10, p. 3, Case No. 22 Civ. 11182 (D. Mass filed Jul. 24, 2022).  The Vessel Interests' must therefore produce, authenticate, and explain all of the contracts of carriage to prove that there was in fact an agreement to arbitrate.  On the other hand, from the perspective of the Cargo Interests, they purchased $34 million of plywood, and they never agreed to arbitrate any disputes arising under or relating to that purchase.

## STANDARD OF REVIEW

"[A] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."  *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960); *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 684 (2010); *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002).  "This axiom recognizes the fact that arbitrators derive their authority to resolve disputes only because the parties have agreed in advance to submit such grievances to arbitration."  *AT&T Techs., Inc. v. Communications Workers of America*, 475 U.S. 643, 648-649 (1986) (citing *Gateway Coal Co. v. Mine Workers*, 414 U.S. 368, 374 (1974)).  "Arbitration is strictly a matter of consent."  *Granite Rock Co. v.*

*Int'l Bhd. of Teamsters*, 561 U.S. 287, 299 (2010).  Forcing a party to arbitrate a dispute that it

did not agree to arbitrate would cause irreparable harm and contradict public interest.  *Harren &*

*Partner Ship Mgmt. de Mexico S.A.P.I. v. Am. Bureau of Shipping*, Case No. 21 Civ. 5361, 2021

WL 3617335, at *2 (S.D.N.Y. July 7, 2021).  A court must resolve any dispute concerning the

formation of an alleged agreement to arbitrate.  *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561

U.S. 287, 296 (2010); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04

(1967); *Berkeley Cnty. Sch. Dist. v. Hub Int'l Ltd.*, 944 F.3d 225, 234 (4th Cir. 2019).

     When the existence of an agreement to arbitrate is unequivocally disputed—as it is

here—the Federal Arbitration Act's purported mandate to stay litigation and to compel

arbitration is inapplicable.  9 U.S.C. §§ 1 *et seq*. (the "Federal Arbitration Act" or "FAA");

*Anderson v. Ahluwalia*, Case No. 21 Civ. 60793, 2022 WL 850000, at *4 (S.D. Fla. Feb. 28,

2022) ("The presumption of arbitrability, however, does not apply to the determination of

whether an arbitration agreement exists.") (internal quotation omitted).  "While the Supreme

Court has acknowledged a liberal policy favoring arbitration … it has also consistently held that

§ 2 of the FAA reflects the fundamental principle that arbitration is a matter of contract."

*Lorenzo v. Prime Comc'ns, L.P.*, 806 F.3d 777, 781 (4th Cir. 2015) (citations omitted); *Goodwin*

*v. Branch Banking & Trust Co.*, 699 Fed. Appx. 274, 275 (4th Cir. 2017); *Adkins v. Labor*

*Ready, Inc.*, 303 F.3d 496, 500 (4th Cir. 2002) (holding that "even though arbitration has a

favored place, there still must be an underlying agreement between the parties to arbitrate.").

"[A]s with any other contract, the parties' intentions control."  *In re Am. Exp. Fin. Advisors Sec.*

*Litig.*, 672 F.3d 113, 127 (2d Cir. 2011) (quoting *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,

559 U.S. 662, 682 (2010) (internal quotation marks omitted)).

"The burden of proving an agreement to arbitrate rests upon the party seeking arbitration." *Fastener Corp. of Am. v. Asheboro Elastics Corp.*, Case No. 12 Civ. 1296, 2013 WL 3227665, *2, (M.D.N.C. 2013) (citing *Silkworm Screen Printers, Inc. v. Abrams*, 978 F.2d 1256 (4th Cir. 1992)); *Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional De Venezuela*, 991 F.2d 42, 46 (2d Cir. 1993) (burden of proving an agreement to arbitrate by a preponderance of the admissible evidence rests on the moving party).  In the Fourth Circuit, a movant can stay litigation in favor of arbitration under the FAA only if it can prove: "(1) the existence of a dispute between the parties; (2) a written agreement that includes an arbitration provision which purports to cover the dispute; (3) the relationship of the transaction, which is evidenced by the agreement, to interstate and foreign commerce, and (4) the failure, neglect, or refusal of the defendant to arbitrate the dispute."  *Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th Cir. 1991).

But, here, since the Vessel Interests are seeking to enforce a foreign arbitration clause among diverse parties, any analysis of the Vessel Interests' motion should be governed by the Convention on the Recognition and Enforcement of Foreign Arbitral Awards instead.  9 U.S.C. §§ 201 *et seq*. (the "New York Convention") at Article 1(1).  Notably, the New York Convention requires an arbitration agreement to be signed by the parties.  New York Convention at Article II(2); *Kahn Lucas Lancaster, Inc. v. Lark Int'l Ltd.*, 186 F.3d 210, 218 (2d Cir. 1999).

This simple matter of contract is otherwise primarily governed by state law, although in maritime disputes like here it might instead be governed by federal maritime law.  *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 938 (1995) (state law); *Rota-McLarty v. Santander Consumer USA, Inc.*, 700 F.3d 690, 699 (4th Cir. 2012) (state law); *Lake Erie Towing v. Walter*, Case No. 07 Civ. 2312, 2007 WL 2907496, at *4 (N.D. Ohio Oct. 3, 2007) (considering the

application of federal maritime law when analyzing whether the parties agreed to arbitrate a salvage dispute).

A summary judgment-like standard applies—a court may stay litigation in favor of arbitration only when there is no genuine dispute of material fact concerning whether the parties did or did not agree to arbitrate.  *Noe v. City Nat'l Bank of W. Virginia*, 828 F. App'x 163, 166 (4th Cir. 2020); *Berkeley Cnty. Sch. Dist. v. Hub Int'l Ltd.*, 944 F.3d 225, 234 (4th Cir. 2019); *Caire v. Conifer Value Based Care, LLC*, 982 F. Supp. 2d 582, 589 (D. Md. 2013) (Bennett, D.J.) ("Where, as here, the formation or validity of the arbitration agreement is in dispute, a motion to compel arbitration is treated as one for summary judgment.").  In the circumstances, a court may consider admissible evidence outside the pleadings, but the evidence must nonetheless be admissible.  *Noe v. City Nat'l Bank of W. Virginia*, 828 F. App'x 163, 166 (4th Cir. 2020); *Berkeley Cnty. Sch. Dist. v. Hub Int'l Ltd.*, 944 F.3d 225, 234 (4th Cir. 2019).  Also, a court "must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party."  *Caire v. Conifer Value Based Care, LLC*, 982 F. Supp. 2d 582, 589 (D. Md. 2013) (Bennett, D.J.) (holding, without a hearing, that there was no agreement to arbitrate).

But, if there is a genuine dispute of material fact concerning whether the parties did or did not agree to arbitrate, then the court may allow limited discovery and must conduct a summary trial.  *Berkeley Cnty. Sch. Dist. v. Hub Int'l Ltd.*, 944 F.3d 225, 235 (4th Cir. 2019); *Deangelo Bros. LLC v. Am. Alternative Fuels LLC*, Case No. 14 Civ. 314, 2015 WL 13357554, at *4 (M.D. Pa. Nov. 6, 2015), report and recommendation adopted sub nom. *Deangleo Bros., LLC v. Am. Alternative Fuel, LLC*, Case No. 14 Civ. 2314, 2015 WL 13424441 (M.D. Pa. Nov. 24, 2015); *Burch v. PJ Cheese, Inc.*, Case No. 09 Civ. 1640, 2009 WL 10688971, at *3 (N.D. Ala. Dec. 11, 2009); *Myrvold v. Raibow Fiberglass & Boat Repair, LLC*, Case No. 17 Civ. 245,

2018 WL 1748107, at *4 (D. Alaska Apr. 11, 2018) (ordering discovery concerning "the existence of an arbitration agreement" when one of the parties has "unequivocally challenge[d] the existence of the arbitration agreement").  Discovery, hearing, and a trial might not be necessary here, however, because on the existing record, the Vessel Interests' *Motion to Stay in Favor of Arbitration* should be denied as a matter of law.

## ARGUMENT

**I.**     **The Vessel Interests Failed to Prove That an Agreement to Arbitrate Exists**

The Vessel Interests have the burden of proving by a preponderance of the admissible evidence that a written agreement to arbitrate exists.  *Fastener Corp. of Am. v. Asheboro Elastics Corp.*, Case No. 12 Civ. 1296, 2013 WL 3227665, *2, (M.D.N.C. 2013) (citing *Silkworm Screen Printers, Inc. v. Abrams*, 978 F.2d 1256 (4th Cir. 1992)) (burden of proof); *Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional De Venezuela*, 991 F.2d 42, 46 (2d Cir. 1993) (preponderance); *Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th Cir. 1991) (written agreement).  Here, they have not and cannot carry that burden because the Bills of Lading were unauthorized and because the Booking Note is not admissible evidence.  Furthermore, under the New York Convention, there was no agreement to arbitrate because there was no signed writing.

    **A.**     **The Vessel Interests Cannot Rely on Bills of Lading That Were Unauthorized**

Both the Vessel Interests' *Answer* (Docket No. 28) and their *Answer to Amended Verified Complaint* (Docket No. 34) denied that Ratu, Nissin, and Fleet Management authorized the Bills of Lading.  Each of these defendants were sued *in personam* for breach of contract and, in the alternative, maritime tort.  In addition, as the Court knows, the Cargo Interests arrested the Vessel within this District and Ratu entered a *Restricted Appearance and Verified Statement of Interest* (Docket No. 20) on its behalf, so the Vessel is also properly before the Court *in rem*.

The responsive pleadings, then, cover the three *in personam* defendants as well as the Vessel *in rem*. The Vessel Interests' motion to stay rests on the Bills of Lading and the position that because the Booking Note with its Hong Kong arbitration clause is incorporated into the Bills of Lading, the Cargo Interests must arbitrate this dispute in Hong Kong.

However, the Vessel Interests can no longer maintain this position because their answer alleges that the Bills of Lading were "unauthorized." Paragraph 16 denies that "Defendants authorized any Bills of Lading to be signed by Zhenhua International Shipping Agency (Quindao) LTD as agent for the and on behalf of the Master of the Vessel." The Vessel Interests cannot simultaneously disavow a document and rely upon it. As a matter of law, if a bill of lading is unauthorized, no reliance should be placed upon it. *Yeremex International v. SS Tendo,* 595 F.2d 943 (4th Cir. 1979).[1] Moreover, if a motion to stay pending arbitration is effectively a motion for summary judgment, then the pleadings must be viewed in a light most favorable to the non-movants like the Cargo Interests here. Accepting the Vessel Interests' lack of authority allegation at face value, as it must, this Court should dismiss the motion.

**B.**     <u>The Vessel Interests Cannot Rely on A Booking Note That Is Inadmissible</u>

The Booking Note has not been properly authenticated and cannot be given any weight in this context. "Authentication is a condition precedent to admissibility". *Weinhoffer v. Davie*

---

[1] *Yeremex* addresses only *in personam* defendant-owners because the defendant-charterer-carrier was insolvent and the vessel *in rem* was not within the court's jurisdiction. Nonetheless, the Fourth Circuit's opinion in *Yeremex* recites that the parties conceded the undisputed principle that when a vessel sails with cargo on board, it ratifies the bills of lading in its *in rem* capacity and is thus bound by them. The Vessel Interests' allegation here that the Bills of Lading were unauthorized does not disrupt the indisputable principle of *in rem* ratification. The Vessel Interests should be held to their disavowal of the Bills of Lading for the purposes of their motion and, as this dispute proceeds, accept that they may face waiver and estoppel issues if they try to rely on the Bills of Lading later on. Nothing here should be construed as a waiver by the Cargo Interests of their right to rely on the Bills of Lading and to conform their pleadings to the facts as they are developed.

*Shoring, Inc.*, 23 F.4th 579, 582 (5th Cir. 2022).  Federal Rule of Evidence 901 requires anyone that offers an item into evidence to produce other evidence supporting a finding that the item is what the proponent claims it is.  "To be considered for evidence, documents must be authenticated by and attached to an affidavit made on personal knowledge … Documents which do not meet those requirements cannot be considered" in a summary judgment context.  *Stuart v. Gen. Motors Corp.*, 217 F.3d 621, 636 (8th Cir. 2000) (finding counsel lacked personal knowledge and could not authenticate the document).

In particular, when it comes to items whose introduction into evidence is attempted through an attorney's affidavit or declaration, courts have specifically scrutinized whether the attorney had any personal knowledge: "[a]n affidavit of the opposing party's attorney which does not contain specific facts or is not based on first-hand knowledge is not entitled to any weight." *Sys. Agency v. Villanueva*, Case No. 19 Civ. 6486, 2020 WL 7629879, at *1 (S.D.N.Y. Dec. 22, 2020) (citing *Wyler v. United States*, 725 F.2d 156, 160 (2d Cir. 1983)).  "The law is clear that an attorney's affirmation that is not based on personal knowledge of the relevant facts is to be accorded no weight …."  *Little v. City of New York*, 487 F. Supp. 2d 426, 433 (S.D.N.Y. 2007).  Moreover, an attorney cannot authenticate exhibits that originated with third parties even if the attorney states in his or her affidavit that the exhibits in question are "true and correct copies." *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 776–77 (9th Cir. 2002).

Here, an attorney for the Vessel Interests declared that the Booking Note attached to his *Attorney Declaration and Introduction of Exhibits in Support of Owner's Motion to Stay in Favor of Arbitration* was a true and accurate copy.  Notably, the Vessel Interests are not parties to the Booking Note and their attorney could not possibly have personal knowledge about its authenticity.  The Vessel Interests have not laid any foundation showing that their attorney has

first-hand knowledge of the origin of the booking note, of its currency, or its authenticity.  In other words, through their attorney's declaration, the Vessel Interests are improperly attempting to introduce evidence concerning the disputed arbitration agreement without satisfying any of the requirements under the Federal Rules of Evidence for its authentication and admissibility.  They cannot rely on the Booking Note unless it is admissible and, since it is not, their motion should be denied as a consequence.

### C.    The Booking Note Was Not A Final and Binding Agreement Anyway

The federal maritime law governing incorporation of "charterparties" into bills of lading and who may be bound by such incorporation sharply diverges from that applicable to "booking notes."  The rules governing the incorporation of charterparties into bills of lading is quite clear.  However, the cases cited by the Vessel Interests in support of that proposition are very limited to the specific issues and facts presented therein—whether a bill of lading incorporated a charter party.[2]  Equally, the law on incorporation of "booking notes" into bills of lading is quite clear.  As will be explained below, when incorporation of a booking note is at issue, the question becomes: What documents actually comprise the contract of carriage?[3]

---

[2] See *Continental Ins. Co. v. Polish S.S. Co* 346 F.3d 281, 284 (2d Cir. 2003); *Hawkspere Shipping Co. Ltd. v. Intamex S. A.*, 330 F.3d 225, 234 (4th Cir. 2003); *Nat'l Material Trading v. M/V Kaptan Cebi*, 1997 LEXIS 2407, at *10 (D. S. C. Mar. 13, 1997); *Thyssen Inc. v. M/V Markos N, 1999* LEXIS 12578, at *9 (S.D.N.Y. 1999), aff'd sub nom. *Thyssen Inc. v. Calypso Shipping Corp. S.A.*, 310 F. 3d 102 (2d Cir 2002). Of course, as explained further below, the arbitration clause also has to be broad enough to sweep up non-signatories to the agreement.

[3] Under the Carriage of Goods by Sea Act, 46 USC §§ 30701 *et seq*. ("COGSA"), which as we shall see is applicable here, a bill of lading is a receipt for the cargo, evidence of the terms of the contract of carriage, and a document of title.  Here, COGSA applies as a matter of law because the Bills of Lading cover cargo inbound to the United States from a foreign port (Qingdao, China) and by contract because clause 2(a) the Hague Rules in the country of shipment shall apply, but if no such rules are in force in the country of shipment, then those in the country of destination shall apply.  China has not enacted the Hague Rules and COGSA is the United States' adoption of that regime.  COGSA should apply to the merits of the underlying dispute.

Of utmost importance is an understanding of just what a "booking note" is.  In *Hale Container Line, Inc. v. Houston Sea Packing Co.*, 137 F.3d 1455, 1461 (11th Cir. 1998), the court offered this helpful explanation:

> In admiralty, a "liner" is a cargo operation that sails along fixed routes on a preannounced schedule. Grant Gilmore & Charles L. Black, Jr., The Law of Admiralty 13 (2nd ed.1975). A shipper reserves or "books" space on a liner for the cargo. Id.

In other words, a booking note is a preliminary agreement for a shipper to reserve space on board a carrier's vessel.  In practice, reliance on pre-fixture booking notes (if not superseded by a bill of lading issued upon loading) can create extreme confusion concerning terms and conditions applicable to the carriage of cargo.  For example, in *Ocean Prod., Inc. v. Molinos Rio de la Plata, S.A.*, Case No. 98 Civ. 3487, 1999 WL 239692 (S.D.N.Y. Apr. 22, 1999), the court wrestled factually with the threshold issue of whether the parties agreed to arbitrate because they had exchanged booking notes with conflicting arbitration clauses.  The Booking Note here, upon which the Vessel Interests heavily rely, should not be considered a final and binding agreement.  Accordingly, its arbitration clause is also not final and binding, and the Vessel Interests' motion should be denied.

## II.     **Alternatively, as a Matter of Law, the Vessel Interests' Motion to Stay in Favor of Arbitration Should Be Denied**

### A.     **The Booking Note's Arbitration Agreement Is Not Enforceable Under The New York Convention Because It Was Not Signed**

Although heavily cited by the Vessel Interests, the Federal Arbitration Act does not actually govern the Vessel Interests' *Motion to Stay in Favor of Arbitration*.  Instead—assuming that the Bills and Lading and the Booking Note are authenticated and admissible—the Vessel Interests' motion would be governed by the New York Convention because it seeks to enforce a foreign arbitration clause among diverse parties.  That distinction is very important because, to

-13-

be enforceable under the New York Convention, an arbitration agreement must be signed by the

parties—which is not the case here.  New York Convention at Article II(2); *Kahn Lucas*

*Lancaster, Inc. v. Lark Int'l Ltd.*, 186 F.3d 210, 218 (2d Cir. 1999).

The New York Convention applies to an alleged arbitration agreement when all of the

following questions are answered in the affirmative:

> (1) Is there an agreement in writing to arbitrate the subject of the dispute? Convention, Articles II(1), II(2).
> (2) Does the agreement provide for arbitration in the territory of a signatory of the Convention? Convention, Articles I(1), I(3); 9 U.S.C. s 206; Declaration of the United States upon accession, reprinted in 9 U.S.C.A. at 154 n.29 (1982 Supp.).
> (3) Does the agreement arise out of a legal relationship, whether contractual or not, which is considered as commercial? Convention, Article I(3); 9 U.S.C. s 202.
> (4) Is a party to the agreement not an American citizen, or does the commercial relationship have some reasonable relation with one or more foreign states? 9 U.S.C. s 202.

*Ledee v. Ceramiche Ragno*, 684 F.2d 184, 186–87 (1st Cir. 1982).  Here, the Vessel Interests'

allege that the Booking Note calls for arbitration in Hong Kong, which is a signatory to the New

York Convention, and the legal relationship between the diverse parties concerns the carriage of

goods by sea, which is no doubt commercial.

However—and most importantly for purposes of this opposition—Article II(2) of the

New York Convention requires that an agreement between the parties to arbitrate a dispute must

be in writing and signed:

> The term "agreement in writing" shall include an arbitral clause in a contract or arbitration agreement, signed by the parties or contained in an exchange of letters or telegrams.

The undisputed fact of the matter here is that there is no written arbitration agreement

between the Cargo Interests and the Vessel Interests that has been signed.  Rather, there is a

string of still undisclosed contracts of carriage that ran from the Vessel Interests at the top

through three intermediaries to the Cargo Interests at the bottom.  The alleged arbitration clause was contained in an intermediary Booking Note, not even necessarily a final and binding agreement, between entities other than the Cargo Interests and the Vessel Interests.  Case law holds that in circumstances like these, where a cargo claimant was not involved when the bill of lading was issued, the New York Convention's fundamental requirement that there must be a written agreement signed by the parties is not satisfied.

For example, in *Maroc Fruit Bd. S.A. v. M/V VINSON*, Case No. 10 Civ. 10306, 2012 WL 2989195 (D. Mass. July 11, 2012), the court, applying the New York Convention, rejected an effort to incorporate an arbitration clause into a bill of lading reasoning that the bill of lading was not signed by the plaintiff-shipper and, therefore, was not binding on the plaintiff-shipper. *Maroc Fruit Bd. S.A. v. M/V VINSON*, Case No. 10 Civ. 10306, 2012 WL 2989195, at *2–3 (D. Mass. July 11, 2012) (citing *Kahn Lucas Lancaster, Inc. v. Lark Int'l Ltd.*, 186 F.3d 210 (2d Cir. 1999)); *see also Harren & Partner Ship Mgmt. de Mexico S.A.P.I. v. Am. Bureau of Shipping*, Case No. 21 Civ. 5361, 2021 WL 3617335, at *1 (S.D.N.Y. July 7, 2021) (arbitration clause in invoices unenforceable because not signed by the parties); *AGP Indus. SA, (PERU) v. JPS Elastromerics Corp.*, 511 F. Supp. 2d 212, 213–14 (D. Mass. 2007) (same).

Here, where the Vessel Interests conceded the Bills of Lading were unauthorized and the Cargo Interests have unequivocally denied signing any arbitration agreement, the Cargo Interests cannot be compelled to arbitrate. The Bills of Lading were sent to the Cargo Interests long after they were issued, and neither the Cargo Interests nor the Vessel Interests (who deny that the Bills of Lading were authorized) signed them.  The Cargo Interests and the Vessel Interests did not sign the Booking Note, either.  In fact, the Booking Note does not even identify the Cargo Interests and the Vessel Interests by name.  Accordingly, the Vessel Interests' *Motion to Stay in*

-15-

*Favor of Arbitration* should be denied because on the existing record as a matter of law—*i.e.*, the New York Convention—the Booking Note's arbitration agreement is unenforceable.

   **B.**   **The Bills of Lading Do Not Expressly Reference or Specifically Incorporate the Booking Note**

   Nowhere on the Bills of Lading does it say that the terms and conditions of a "Booking Note" are to be "incorporated."  Instead, the Bills of Lading say that they are "TO BE USED WITH CHARTER-PARTIES."  A booking note—by which shipper reserves space on a vessel—is not a charterparty—by which a charterer hires a vessel.  Additionally, the phrase "to be used with" is not the equivalent of "incorporated."

   This simple matter of contract interpretation is primarily governed by state law but given the subject matter of this dispute federal maritime law is also applicable.  *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 938 (1995) (state law); *Rota-McLarty v. Santander Consumer USA, Inc.*, 700 F.3d 690, 699 (4th Cir. 2012) (state law); *Lake Erie Towing v. Walter*, Case No. 07 Civ. 2312, 2007 WL 2907496, at *4 (N.D. Ohio Oct. 3, 2007) (federal maritime law).  They are in effect substantially the same although federal maritime law is more closely analogous on the facts.

   On a standard COGENBILL 94 bill of lading, when the parties' intent is to incorporate the terms and conditions of a charter party, they may easily do so by simply filling in the blank spaces after the pre-printed clauses calling for the identification of the charter party by date.  For example, a standard COGENBILL 94 bill of lading provides on its face: "Freight payable as per CHARTER-PARTY dated …."  When the date is added in the blank space, the charter party's terms are expressly incorporated into and made part of the contract of carriage.  This is well understood and settled because, by express and clear language, the parties' intentions are obvious.  In contrast, here, in the same blank space on the faces of the subject Bills of Lading

(which are COGENBILL 94 forms) the "Freight payable as per CHARTER-PARTY dated" clause was not filled in at all.  No charter party was incorporated.

The "Conditions of Carriage" printed on the back of a standard COGENBILL 94 bill of lading only reinforce the view that when the parties want to incorporate some other clause or document, they can clearly do so.  Paragraph 1 of the Conditions of Carriage states:

> All terms and conditions, liberties and exceptions of the Contract, dated as overleaf, including the Law and Arbitration Clause, are herewith incorporated.

What constitutes a clearer expression of intent to incorporate an arbitration clause than the express language used in the foregoing paragraph?  Contrast this open invitation to incorporate a specific contract with the amorphous language upon which the Vessel Interests would have this Court rely—the generic "Reference No." in the top right-hand corner of the Bills of Lading. This alone is not sufficient to incorporate a charter party's arbitration clause.   A "Reference No." could refer to anything.

The Vessel Interests also try to equate the language "TO BE USED WITH CHARTER PARTIES" into the parties' express intent to incorporate the Booking Note with its truncated arbitration provision.  But, the only reasonable reading of the document as a whole leads to the conclusion that absent an express clause regarding incorporation of the "Booking Note," no such incorporation was intended.  The language of the Bills of Lading—or the blank spaces the parties omitted to fill in—clearly establishes, as a matter of law, the lack of any intent to include the Booking Note as part of the terms of the contract of carriage.  The Vessel Interests' motion should accordingly be denied.

**C.**     **The Contracts of Carriage Are Adhesion Contracts and Any Ambiguities Must Be Construed in The Cargo Interests' Favor**

**(i)**     **The Bills of Lading do Not Incorporate the Booking Note**

If there is any ambiguity in the language of the Bills of Lading, then that language must be construed against the carrier or whoever else is claiming the benefits of the Bills of Lading in this summary judgment-like context. This rule goes back at least to the Supreme Court's decision in the *Caledonia*, 157 U.S. 124, 137 (1895). Cases such as *All Pac. Trading, Inc. v. Vessel M/V Hanjin Yosu*, 7 F.3d 1427, 1431-32 (9th Cir. 1993), *Allied Chem. Int'l Corp. v. Companhia de Navegacao Lloyd Brasileiro*, 775 F.2d 476 (2d Cir. 1985), and *Interocean S.S. Corp. v. New Orleans Cold Storage & Warehouse Co.*, 865 F.2d 699 (5th Cir. 1989) reaffirm this rule.

Treating the Bills of Lading as adhesion contracts is particularly apt here. The Cargo Interests had no hand in the creation or negotiation of the Bills of Lading and in fact had no opportunity to do so. The Cargo Interests are not parties to the Booking Note, either. Hawthorne received copies of the Bills of Lading after they had been issued to LYIT, after the Cargo Interests paid LYIT, and after the two fires. In these circumstances, the Cargo Interests were completely foreclosed from objecting to any terms.

Again, the Vessel Interests' argue that the "Reference No." wording can only be interpreted to mean that the Booking Note was incorporated into the Bills of Lading. But this reading is not the only reasonable construction of the language. It could also merely be a ministerial reference used to identify the cargo LYIT was shipping with the carrier. Two reasonable interpretations is the definition of "ambiguity." *Garza v. Marine Transport Lines Inc.*, 861 F.2d 23 (2d Cir. 1988). Construing the Bills of lading as adhesion contracts, this Court,

in the face of this ambiguity, should conclude that the Booking Note is not to be incorporated into the Bills of Lading, and as a consequence should deny the Vessel Interests' motion.

### (ii)      The Booking Note Cannot be Enforced Against a Non-Signatory

In addition to the Bills of Lading, the arbitration clause in the Booking Note is itself ambiguous. It merely states in paragraph 20: "Arbitration in Hongkong [sic], with English law to be applied."  Is this language "broad" enough to encompass any and all disputes arising under and relating to the Booking Note, including with non-signatory third parties? Or, is it too "narrow" and limited to disputes between Hanwin and LYIT concerning breach of the Booking Note?  *See*, *e.g.*, *Trade Arbed, Inc. v. M/V KANDALAKSHA*, Case No. 02 Civ. 5121, 2003 WL 22097460 (S.D.N.Y. June 23, 2003) (holding that an agreement to arbitrate did not exist between shipper and vessel owner).

The Vessel Interests' cite three decisions holding that sparsely worded arbitration clauses in charterparties (not booking notes) have been held to bind a non-party to an arbitration agreement: *Usinor Steel Corp v. M/V Koningsborg,* 2004 WL 230910 (S.D.N.Y. Feb. 6, 2004); *Salim Oleochemicals v. M/V Shropshire,* 169 F. Supp. 2d 194, 198 (S.D.N.Y. 2001); and *Oriental Commercial & Shipping Co. v. Rosseel, N. V.*  609 F. Supp. 75 (S.D.N.Y. 1985).  These cases all found in favor of arbitration based on the policy growing out of the FAA that favors arbitration.  These decisions rest on language taken from the Supreme Court's decision in *Moses Cone Mem. Hospital v. Mercury Construction* 460 U.S. 1 (1983).  But none of the foregoing district courts actually considered whether the policy they applied in finding in favor of arbitration actually fit the facts of the matters before them.

Here, this Court should engage in such an analysis.  The issue in *Moses Cone,* unlike the case at bar, was whether the district court had improperly refused a stay pending arbitration in favor of a parallel state court proceeding.  Thus, the formation of an agreement to arbitrate, the

issue here, was not contested there.  And, most importantly, the language in the opinion addressing the FAA's policy of favoring arbitration does not apply here, because the FAA's "presumption of arbitrability … does not apply to the determination of whether an arbitration agreement exists."  *Anderson v. Ahluwalia*, Case No. 21 Civ. 60793, 2022 WL 850000, at *4 (S.D. Fla. Feb. 28, 2022) (internal quotation omitted); *Lorenzo v. Prime Comc'ns, L.P.*, 806 F.3d 777, 781 (4th Cir. 2015) (citations omitted); *Goodwin v. Branch Banking & Trust Co.*, 699 Fed. Appx. 274, 275 (4th Cir. 2017); *see also Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500 (4th Cir. 2002) (holding that "even though arbitration has a favored place, there still must be an underlying agreement between the parties to arbitrate.").  The Cargo Interests' position that they are not bound by the alleged agreements of others to arbitrate is not a defense to arbitration like waiver or delay, but a straight-forward defense concerning the intent of the parties to that arbitration agreement at the time of formation.  As such, the *Moses Cone* statement regarding the presumption favoring arbitration should not apply.

Moreover, the courts in the decisions upon which the Vessel Interests rely did not have before them the contention that since Bills of Lading are adhesion contracts, they must be construed against the proponent, and thus no need to consider the interplay between the FAA policy favoring arbitration and the well-established law holding bills of lading to be adhesion contracts with that rule's implications on arbitrability.  Nor did they consider that the New York Convention rather than the FAA should apply.  On the basis, then, that reasoning inherent in the cases upon which the Vessel Interests' rely should not be seen as relevant to this dispute, this Court should hold that the vague and narrow arbitration clause in the Booking Note cannot require the Cargo Interests to arbitrate in Hong Kong.

Additionally, the case law allows the Court to decline the Vessel Interests' invitation to enforce against non-signatories because the sparse language of the Booking Note refers expressly only to the location of arbitration, while not expressly mandating arbitration.  In *Eurosteel Corp. v. M/V Millenium Falcon,* 2002 WL 1972276 (N. D. Ill. Aug. 20, 2002), the charter was properly incorporated into the bill of lading, but the court held that arbitration language—"Arbitration, if any, to be settled in Paris by Chambre Arbitrale Maritime"—was only a venue provision in the event the parties at some point agreed to arbitrate. The court found no compulsion to arbitrate. Likewise, *Hoogovens Ijmuiden Verkoopkantor BV v. M/V Sea Catttelya,* 852 F.2d 6 (S.D.N.Y. 1994) treated the wording "General Average and arbitration to be settled in Netherlands" as only a venue provision. The court also, aware that other decisions had invoked *Moses Cone's* liberal policy, distinguished that decision on the basis that the clear language of the arbitration clause there at issue mandated arbitration.

Courts finding that these abbreviated arbitration clauses speak only to venue and not to the compulsion to arbitrate actually follows the precept of construction requiring that words and phrases be given their plain meaning. Limiting the language to venue does just that; the express language here does nothing more that identify Hong Kong as the venue.  If the parties had wanted to compel arbitration, simple language could have been added to effectuate this intent. On this basis the narrow wording of the Booking Note's arbitration clause should be treated as a venue provision only, and cannot be enforce against a non-signatory.

## III.   If the Court Cannot Decide the Motion on the Existing Record, then It Should order Limited Discovery

As the Court can see from the arguments that the Cargo Interests have advanced, the Court can and should deny the motion on the record presently before it because the Vessel Interests have not carried their burden of proving that an agreement to arbitrate exists and, as a

matter of law, the arbitration clause is not binding on the Cargo Interests or should be construed against the Vessel Interests.

Nonetheless, if the Court believes the record is inadequate to address the issues that the motion raises, then discovery limited to the issues relevant to the motion should be allowed.  The intentions of each of the parties to not only the Bills of Lading and the Booking Note but also to the entire chain of charter parties is crucial.  *In re Am. Exp. Fin. Advisors Sec. Litig.*, 672 F.3d 113, 127 (2d Cir. 2011) (quoting *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682 (2010) (internal quotation marks omitted) (the parties' intention control).

The decision in *Int'l Drilling Co., N. V. v. M/V Doriefs*, 291 F. Supp. 479 (S.D. Tex. 1968), is illustrative of that point.  There, the court was called upon to determine "what constitutes the contract of affreightment and, once that issue is resolved, who if anyone is liable in damages to [the shipper]." *Int'l Drilling Co., N. V. v. M/V Doriefs*, 291 F. Supp. 479, 483 (S.D. Tex. 1968).  The court then set the framework for the analysis saying "the conditions and circumstances known to the parties and contemplated by them" must be considered when interpreting the contract of carriage.  *Int'l Drilling Co., N. V. v. M/V Doriefs*, 291 F. Supp. 479, 483 (S.D. Tex. 1968); *see also Hellenic Lines, Ltd. v. United States*, 512 F.2d 1196, 1207-08 (2d Cir. 1975) (confirming that the test for incorporation of a booking note into a bill of lading is the intention of the parties).  *Doriefs* makes clear that the circumstances under which a bill of lading is issued, including the knowledge, or lack thereof, of the parties preparing and signing that bill of lading, is critical to the determination as to what was intended to be incorporated into that bill of lading.

That inquiry must begin with the charter parties under which the Vessel was operating.  Charters typically contain detailed clauses relating to the issuance and signing of bills of lading.

But at this juncture, the Court is denied the benefit of reviewing those terms because the Vessel Interests and the other defendants have chosen not to include them in its briefing and have elected to not disclose them voluntarily.  To be clear the Cargo Interest have repeatedly asked for these key documents.  Accordingly, if the Court finds the present record insufficient for resolution of Vessel Interests' *Motion to Stay in Favor of Arbitration*, then discovery and trial should be allowed on the issues relevant to this gateway issue in dispute.

## **CONCLUSION**

The Court should deny the Vessel Interests' *Motion to Stay in Favor of Arbitration* on the existing record or, in the alternative, order discovery and conduct a summary trial on the gateway issue in dispute: whether there was an agreement to arbitrate.  If the motion is to be granted, then Cargo Interests request that any such order include a condition that Vessel Interests agree to not raise any time bar defenses in arbitration.

Dated:  August 5, 2022
Baltimore, Maryland                                     /s/

James W. Bartlett, III, Esquire
Federal Bar Number 00017
Imran O. Shaukat, Esquire
Federal Bar Number 30134
Semmes, Bowen & Semmes
25 S. Charles Street, Suite 1400
Baltimore, Maryland 21201
Phone: (410) 539-5040
Facsimile: (410) 539-5223
jbartlett@semmes.com
ishaukat@semmes.com

*Attorneys for Plaintiff*
HAWTHORNE INDUSTRIAL PRODUCTS, INC.

Of Counsel:

Robert E. O'Connor
Vincent M. DeOrchis
Alfred Kuffler
Wook Chung
Montgomery McCracken Walker & Rhoads LLP
437 Madison Avenue
New York, NY 10022
Tel: 212-867-9500
Fax: 212-201-1939

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY on this 5th day of August, 2022, that this Opposition to Vessel

Interests' Motion to Stay in Favor of Arbitration was served on all counsel of record via this

Court's CM/ECF System.


_/s/ Imran O. Shaukat_____
Attorney for Plaintiff