| | |
|---|---|
| HAWTHORNE INDUSTRIAL PRODUCTS INC. FOR ITS OWN ACCOUNT AS CONSIGNEE OF CERTAIN CARGO, AND AS AUTHORIZED AGENT FOR GENESIS PRODUCTS INC., GREAT LAKES LAMINATION, GREAT LAKES FOREST PRODUCTS, AND FUSION WOOD PRODUCTS,<br>                      Plaintiffs,<br>  v.<br><br>M/V TAC IMOLA, IMO No. 9932103 her engines, boilers, tackle, etc., *in rem*,<br>RATU SHIPPING CO. SA,<br>NISSHIN SHIPPING CO LTD, and<br>FLEET MANAGEMENT LTD-HKG, TRANSATLANTICA COMMODITIES PTE. LTD., and<br>HANWIN SHIPPING LIMITED<br>*in personam*,<br>                      Defendants. | 22-cv-1376-RDB |

## OWNER'S OPPOSITION TO HAWTHORNE'S MOTION FOR LEAVE TO FILE SURREPLY

**INTRODUCTION / SUMMARY OF OPPOSITION TO SURREPLY**

Pursuant to the court's order of October 12, 2022 (Dkt. 64), Defendant Ratu Shipping Co., SA ("Owner"), as claimant to the *in rem* defendant M/V *Tac Imola* (the "Vessel") files the within Opposition to Hawthorne's Motion for Leave to File Surreply to Motion to Stay in Favor of Arbitration (Dkt. 57, the "Motion for Surreply" or "MFS").

Owner did not oppose the relief sought by Hawthorne in the now moot Motion for Discovery ("MFD" Dkt. 52) that sought production of the head and first sub charter parties for the Vessel, namely (1) the time charter between Owner and defendant Transatlantica Commodities Pte. Ltd. ("Transatlantica") (the "Ratu/TA C/P"), and (2) the sub trip-time charter between Transatlantica and defendant Hanwin Shipping Ltd. ("Hanwin") (the "TA/Hanwin C/P and, collectively with the Ratu/TA C/P, the "Charter Parties"). The Ratu/TA C/P, was produced by Ratu in connection with the Motion to Dismiss for Lack of Personal Jurisdiction filed by Ratu and co-defendants Nisshin Shipping Co. Ltd. ("Nisshin") and Fleet Management Ltd-HKG ("Fleet"). *See* Dkt. 51-10, the Ratu/TA C/P. Transatlantica has also now produced a copy of the TA/Hanwin C/P. *See* Dkt. 56, Transatlantica's Response to the Motion for Discovery. A copy of the TA/Hanwin C/P is attached hereto as **Exhibit 1**.

Owner does, however, object to several of the arguments and factual characterizations set forth by Hawthorne in the Motion for Surreply, principally that the two time charters have any relevancy to the requested arbitral stay of the *in rem* claims against the Vessel. The reason for this is the controlling law makes crystal clear that what Ratu, *in perosnam*, agreed to with Transatlantica in its head time charter of the Vessel, and what Transatlantica in turn agreed to with Hanwin in the sub-charter, does **not** change that, as a matter of law, both the Vessel *in rem* and

Hawthorne as consignee are bound to the Bills of Lading including the Hong Kong arbitration clause which is expressly incorporated into the Bills of Lading.

The Vessel is bound to the Bills of Lading by the settled "Black Letter Law" maritime doctrine of ratification. *Cactus Pipe & Supply Co. v. M/V Montmartre*, 756 F.2d 1103, 1113 (5th Cir. 1985). In turn, Hawthorne, having expressly authorized Lianyungang (the seller and shipper of the cargo, who sub-chartered the Vessel from Hanwin) to arrange for the contract of carriage (Stadelman Declaration Dkt. 42-8 at ¶8), which Lianyungang in fact did using the subject Bills of Lading and Booking Note, is bound as consignee to those Bills and the Booking Note Hong Kong arbitration clause incorporated by reference into the Bills. (*See* Owner's Opening and Reply Memoranda of Law submissions at Dkt. 22-1 at Point I and Dkt. 50 at Point V.)

The request for Surreply, however, is entirely premised on the false contention that the two time charters (the Ratu/TA C/P and the TA/Hanwin C/P) constitute "significant …new evidence just obtained". (Dkt. 57-1, p.1.) This "smoking gun" obsession with the time charters appears to perhaps be a last-ditch attempt by Hawthorne to avoid arbitration of the *in rem* claim in Hong Kong. Owner, as claimant to the Vessel, has steadfastly maintained throughout this matter that, under the law, the two time charters do not and cannot change what is the controlling contract of carriage to which **the Vessel** is bound ***in rem*** by the doctrine of **ratification**. *See Cactus Pipe*, 756 F.2d at 1113; *Liberty Woods Int'l v. Motor Vessel Ocean Quartz*, 889 F.3d 127, 133 (3d Cir. 2018).

Accordingly, Hawthorne's lead Surreply contention that the head time charter shows "Ratu had no expectation much less intention that the Booking Note, rather than the Headcharter itself, would be incorporated into the bills of lading…" (Dkt. 57-1, p.2) is simply irrelevant under the governing law. Hawthorne has apparently not read in full the governing case law on the ship's *in*

*rem* ratification of the bills of lading. It is the **actual bills** of lading issued (and documents those bills incorporate) which govern the *in rem* claim, not the head charter parties. Ratu's intent under its time charter with Transatlantica is simply **not relevant** to the Hawthorne *in rem* claim against the Vessel which is governed solely by the ratified bills of lading to which Hawthorne itself is bound. Hawthorne's entire defense to the stay of the *in rem* claims has thus been plagued by a stubborn refusal to accept this settled law, instead relying on myriad scattergun arguments to muddy the water.

## ARGUMENT

### 1. The two charter parties are a false "smoking gun" – and not "critical" evidence.

As set forth at length in Owner's Opening (Dkt. 22-1) and Reply (Dkt. 50) Memoranda of Law in Support of the Motion to Stay, all of Hawthorne's *in rem* claims against the Vessel are subject to arbitration in Hong Kong. The reason for this conclusion is simple: the Bills of Lading upon which Hawthrone has based its claims clearly and unambiguously incorporate the Booking Note, which contains a broad, mandatory Hong Kong arbitration clause.

Briefing on the Motion to Stay has proceeded in accordance with this Court's Local Rules. Owner filed its Opening Memorandum of Law (Dkt. 22-1), after which Hawthorne filed a 31-page Opposition (Dkt. 40). Owner then filed its Reply Memorandum of Law (Dkt. 50-1), which was strictly limited to responding to the points raised by Hawthorne in its Opposition.

Hawthorne now contends that the head and intermediate Charter Parties play a "critical role…in resolving the Motion to Stay," but it provides **zero** legal support for this bald assertion. (MFD, Dkt. 52-1 at p. 2). Similar to the Motion for Discovery, Hawthorne's Motion for Surreply and proposed Surreply cite **zero case law** for this position, but instead rely solely on the text of the Ratu/TA C/P. Indeed, Hawthorne relies on a single clause in the Ratu/TA C/P which provides,

in pertinent part, that "the Charterers or their agents may sign bills of lading on behalf of the Captain always in conformity with mate's receipts without prejudice to this Charter Party." (Proposed Surreply at 2-3). Hawthorne goes on to argue that this provision is "ample grounds to deny the Motion to Stay" because, according to Hawthorne, "the Headcharter demonstrates conclusively that Ratu intended that the charter, and not the Booking Note, to be incorporated into the bills of lading." *Id*. at 3. But, again, Hawthorne offers no case law, statute, or arbitration award citations to support its position as to the allegedly critical nature of the Charter Parties with respect to resolution of the Motion to Stay. The reason for this is there is none. Indeed, the law is the opposite: what Ratu "intended" or authorized "without prejudice" to the head charter is between Ratu and Transatlantica (and subject to arbitration in London), but it is irrelevant as a matter of settled law to the *in rem* claims before this court against the Vessel under the ratified Bills of Lading. As the Fifth Circuit expressly held in *Cactus Pipe*: "any question of the authority of the issuer of the bills of lading" is simply **"immaterial."** *Cactus Pipe*, 756 F.2d at 1113. (emphasis added). Thus, Hawthorne's sole articulated basis for the alleged need for a Surreply is devoid of any legal citation.

Hawthorne previously admitted in its Opposition "the undisputed principle that when a vessel sails with cargo on board, it ratifies the bills of lading in its *in rem* capacity and is thus bound by them." (Dkt. 40 at 10, fn. 1). However, despite its prior admission, Hawthorne now desperately switches gears and baldly claims with zero case law citation that "[i]t is no answer to this issue that by sailing with the cargo on board, the vessel ratified the existing bills" because accepting this axiomatic legal principle would "allow Ratu to take advantage of a happenstance, the reference to the booking note which it did not anticipate would be part of the bills of lading."

(MFD at p. 6). Again, Hawthorne totally misses the law here and mixes apples with oranges. It is not an issue of "Ratu taking advantage," the issue is the **Vessel *in rem***, not Ratu *in personam*.

Moreover, regardless of Hawthorne having fundamentally confused the matter, what Hawthorne thinks may be "fair or equitable" does not trump the settled law. *See INS v. Pangilinan*, 486 U.S. 875, 883 (1988) (explaining "it is well established that courts of equity can no more disregard statutory and constitutional requirements and provisions than can courts of law"). And the law is that the Vessel *in rem* and Hawthorne as consignee under the Bills of Lading are both bound by the Hong Kong arbitration clause. Again, whether Owner, *in personam*, is also bound by the Hong Kong arbitration provision is wholly irrelevant to the Motion to Stay, which solely concerns the *in rem* claims against the Vessel.

Hawthorne also claims that a stay in favor of arbitration when the Bills of Lading "were neither prepared nor authorized by the Owner" would be inequitable because Owner "should not be able to opportunistically disclaim the bill for one purpose, but embrace it for another – the classic case of having the cake and eating it too." (MFD at p. 6). Again, this argument ignores the above-discussed settled law and the critical difference between the *in rem* and *in personam* claims. Hawthorne again has no case law to support its arguments. Hawthorne's contention is also hypocritical given that it is Hawthorne, not Ratu as claimant to the Vessel, that is attempting to pick and choose what provisions of the Bills of Lading it must follow by basing its claims on the Bills, while at the same time seeking to avoid the express incorporation of the Booking Note and its arbitration clause. There is nothing "inequitable" about Ratu as claimant to the Vessel admitting its Vessel is bound to the Bills of Lading – that is in fact the established law – and also conveying the factually accurate background concerning issuance of the Bills of Lading.

Ratu, as claimant for the Vessel, has in its prior submissions in support of the stay cited to a number of the settled "ratification" cases involving *in rem* cargo claims. *See Cactus Pipe*, 756 F.2d at 1113; *Liberty Woods*, 889 F.3d at 133.

One of the lead cases is *Cactus Pipe & Supply Co. v. M/V Montmartre*, 756 F.2d 1103, 1113 (5th Cir. 1985). There, Circuit Judge John R. Brown, one of this county's most prominent admiralty judges,[1] writing for the Fifth Circuit, comprehensively outlined the unique nature of the *in rem* claim:

> "A proceeding *in rem* in the admiralty is one against the vessel as the offending thing. The vessel may be held liable even in the absence of the liability, *in personam,* of the vessel Owner.

*Id.* at 1112.

He went on to clearly explain:

> When cargo has been stowed on board a vessel and bills of lading are issued, **the bills of lading become the binding contracts of the vessel *in rem*** upon the sailing of the vessel with the cargo. The sailing of the vessel **constitutes the ratification of the bills of lading**.

*Id.* at 1113 (emphasis added).

What Hawthorne's contentions in opposition to the stay motion fail to recognize however, is that *Cactus Pipe* also expressly held that the intent or authority of those in the chartering chain as to the issuance of the bills of lading is immaterial. Whether the bills of lading actually issued are different in form from what the owner authorized does not change that the ship is bound *in rem* to the bills **as issued**.

The *Cactus Pipe* court expressly stated that Orient, the owner of the vessel, had not authorized issuance of the bills of lading in that case by the sub-charterer's agent Delpa Shipping,[2]

---

[1] *See, e.g.*, John R Brown Admiralty Moot Court Competition - https://law.utexas.edu/advocacy/admiralty-competition/
[2] *Id.* at 1106, n. 1.

nor had Orient **"approved the form or the contents"** of the bills of lading. *Id.* at 1111 (emphasis added). It commented further: "Although bills of lading were issued they were not issued either by the vessel owner, Orient, or by one acting with its authority." *Id.* at 1113. On this basis the court held: "[t]here was no basis, therefor for holding Orient liable *in personam. Id.* Critically, however, the court then immediately went on to draw the distinction to the *in rem* claims against the vessel holding:

> Nonetheless bills of lading were issued and the vessel sailed with the good onboard. Under those circumstances, Black Letter Law translates Cleirac's historic aphorism: "Le battelier est oblige a la merchandise et la merchandise au batelier" into the settled maritime principle **that sweeps away as immaterial any question of the authority of the issuer of the bills of lading** to hold the ship liable in rem for loss or damage to the cargo carried.

*Id.* (emphasis added). The vessel was bound to the bills of lading even though the owner had not authorized or approved them as to their form, content or otherwise.

Similarly, in *Dempsey and Associates Inc. v SS Sea Star* 461 F 2d 1009, 1014-15 (2d Cir. 1972) the Second Circuit held that: "the fact the vessel was operated under a [time] charter to World Bulk does not affect the liability of the vessel. … The sailing of the [vessel] with the [cargo] aboard constituted a ratification of the bills of lading…. Because however the [owner] did not authorize [time charterer] World Bank's agent to issue the bills of lading, [owner] is not liable *in personam*."

Likewise, the Fourth Circuit in *Yeramex* held that there was no *in personam* liability against the vessel owner because the bills of lading were issued without the owner's authority, but also went on to remark that "[i]t is not contested that liability *in rem* would lie against the vessels carrying the damaged goods." *Yeramex Int'l v. S. S. Tendo*, 595 F.2d 943, 944, 948 (4th Cir. 1979).

In short, Hawthorne's arguments that the time charters are "smoking gun" new evidence to defeat the motion for arbitral stay are flatly at odds with this controlling law on the issue.

**2. Improper Attaching of proposed actual Surreply to Motion**

Owner strongly opposes Hawthorne's intentional choice to file a copy of its proposed Surreply as an exhibit to its Motion for Surreply. *See* Dkt. 57-1. This tactic is inappropriate, and Owner respectfully submits that it should not be condoned. Local Rule 105(2)(a) expressly provides that surreply memoranda of law "are not permitted to be filed…[u]nless otherwise ordered by the Court." D. Md. L.R. 105(2)(a). Submission of a "proposed" surreply memorandum of law as an attachment to a motion seeking permission to file same is an improper end-run around the Local Rules which require a court order as a prerequisite. The tactic seems clearly designed to place Hawthorne's surreply arguments before the Court regardless of whether its motion was granted.

Hawthorne contends that a surreply is warranted "for the reasons set forth in Cargo Interests' Surreply." *Id*. This argument puts the cart before the horse and is also inappropriate as it is designed to force the Court to address the arguments set forth in the proposed Surreply before permission to file the Surreply is even granted.

**3. No new arguments were raised in Owner's Reply submission.**

Hawthorne has also suggested a surreply is appropriate to address "new material Ratu had not previously raised" in Owner's reply papers. (MFD at p. 2). This is flatly incorrect. Owner's reply brief on the Motion to Stay raised no new arguments, but instead simply responded in detail to the arguments raised by Hawthorne in its opposition. Hawthorne fails to point to a single "new" argument allegedly raised for the first time in Owner's reply brief, and instead seeks to respond to the arguments made by Owner in reply to the arguments made by Hawthorne in its opposition

papers. An argument on reply that responds to an allegation made in opposition does not make such argument "new," and if this were the controlling standard, a surreply would always be warranted, which is certainly not the case.

Owner reiterates that it was inappropriate for Hawthorne to submit its proposed Surreply as an exhibit to the Motion for Surreply, but because Hawthorne has placed those issues squarely before the Court, Owner will respond to them briefly and in turn.

### 4. Admissibility of the Booking Note

Hawthorne adds new arguments in its proposed Surreply regarding the admissibility of the Booking Note, but it again fails to acknowledge that the controlling standard is not whether the Booking Note has already been deemed admissible, but instead, whether the disputed document "*could* be put in admissible form." *Elkharroubi v. Six Flags Am., LP*, Civil Action No. TJS-17-2169, 2020 U.S. Dist. LEXIS 37431, at *34 (D. Md. Mar. 4, 2020). In this regard, it bears repeating that the Booking Note was voluntarily supplied by counsel for Hawthorne, and Hawthorne has failed to articulate why it believes the Booking Note may not ultimately be admissible. (*See* **Exhibit 2**, Email from counsel for Hawthorne attaching the Booking Note.)[3] Hathorne should not be able to accept the admissibility of the bills of lading, rely on them for its claims, and simultaneously challenge the very Booking Note that the bills expressly incorporate. The Booking Note is clearly the companion integrated document incorporated by reference into the Bills of Lading. (*See, e.g.*, discussion at Reply Brief Dkt. 50 at pages 10, 12, 16-19.) The Booking Note would thus clearly meet the requirements of F.R.E. § 901(b)(4) given its "contents" and "substance" "taken together with all the circumstances." *See Acosta v. Mezcal, Inc.*, No. JKB-17-

---

[3] It is ironic that Hawthorne has not raised the same admissibility argument regarding the Bills of Lading, which were also produced by counsel for Hawthorne in conjunction with the Booking Note and were also not prepared by either Hawthorne or Owner.

0931, 2019 U.S. Dist. LEXIS 103834, at *7-8 (D. Md. June 20, 2019) (explaining that "[a]uthentication only requires 'evidence sufficient to support a finding that the item is what the proponent claims it is,' which may include 'distinctive characteristics' discernible from the face of the document, such as its appearance or contents").

That Hawthorne at the start of this matter would voluntarily produce the Booking Note and describe it as "the booking note to which the bills of lading refer" while demanding substantial security for the claims, and now switch direction and contend that the Booking Note is not admissible or authentic again signifies Hawthorne's desperation in trying to find some basis to prevent the required arbitral stay.

**5. The Bills of Lading and incorporated Booking Note comprise the integrated contract.**

Hawthorne's argument regarding the applicable contract of carriage is odd, but it appears to argue that the Bills of Lading, not the Booking Note, are the applicable contract of carriage. Owner has not disputed that the Bills of Lading are part of the contract of carriage, but has maintained throughout that the Booking Note (and the GENCON 1994 form charter incorporated at ¶22 of the Booking Note) is also part of the integrated contract of carriage via its incorporation into the Bills of Lading. (Dkt. 50 at p. 16.) Contrary to Hawthorne's contentions, there is nothing "astonishing" about the routine and widespread maritime practice of having a charter party incorporated into the bill of lading with the two co-joined documents constituting the integrated contract of carriage.

**6. The "Vessel *in rem* has not 'disavowed' the B/l's" – the Vessel is charged with ratification of the bills as a matter of law.**

At page 4 of the proposed Surreply, it is not clear as a result of potentially an unintended double negative syntax error, but the argument seems to be that because in their Answer to the Amended Complaint, *in personam* "defendants" Ratu, Nishhin, and Fleet denied that they authorized the issuance of the bills of lading, then the Vessel, also a named "defendant" did not authorize and disavowed or otherwise cannot rely on the bills of lading. This is another desperate stretch of an argument.

First, the Answer to the Amended Complaint at page 1 defines: "("Fleet and collectively with Ratu and Nisshin "Defendants")". The ship is defined as the "Vessel." Second, the Motion to Stay (Dkt. 22) predates both the Answer (Dkt. 28) and Answer to the Amended Complaint (Dkt. 34) by several weeks and each subsequent Answer preserves as the very first affirmative defense arbitration in Hong Kong. Third, **as a matter of law** the Vessel is bound to the bills of lading *in rem* by ratification upon sailing with the cargo onboard. As a matter of law, the Vessel cannot "disavow" the bills of lading, and the Vessel has not and does not disavow them, even though Owner has *in personam*.

**7. The SCOTUS decision in *GE Energy Power Conversion France SAS Corp.***

Hawthorne's argument that Owner has misread the Supreme Court's decision in *GE Energy Power Conversion France SAS Corp. v. Outokumpu Stainless USA, LLC*, 140 S. Ct. 1637 (2020) is without merit, and it is actually Hawthorne that has misinterpreted that decision. Having overlooked this important decision when preparing its opposition, Hawthorne now struggles to give an unnaturally narrow reading of *GE Energy* and claims that the decision applies only to cases in which a non-signatory is bound to an arbitration clause *via* the theory of estoppel. However, the court in *GE Energy* made clear that its decision was not so narrow in scope, stating explicitly that nothing in the New York Convention "tacitly precludes the use of domestic law to enforce

arbitration agreements." *Id*. at 1645. The only natural reading of the Supreme Court's decision in *GE Energy* is that the rationale also applies to cases involving domestic law claims of incorporation by reference such as the instant matter. Indeed, the Court expressly stated in its decision: "we have recognized that arbitration agreements may be enforced by nonsignatories through 'assumption, piercing the corporate veil, alter ego, **incorporation by reference**, third party beneficiary theories **and estoppel**.'" *Id.* at 1643 (emphasis added).

### 8. Discovery

Hawthorne's final contention that Owner's arguments regarding the need for discovery "misfire[s] badly" also ignores the applicable law. Notably, Hawthorne premises this argument on what it describes as "the cardinal rule that contract interpretation turns on the intent of the parties," which intent Hawthorne contends can be gleaned only through an evidentiary hearing. (Proposed Surreply at p. 8). This is an incorrect statement of the law. "It is only when a contract is ambiguous that courts may consult extrinsic evidence to 'determine and effectuate the intent of the parties.'" *Sky Angel U.S., LLC v. Discovery Communs., LLC*, 885 F.3d 271, 277 (4th Cir. 2018). The Bills of Lading are not ambiguous, and the intent to incorporate the Booking Note is crystal clear *via* the express reference to the Booking Note by date and unique reference number. No discovery is needed to reach this conclusion. All that is required is for the court to apply the existing law that establishes that the bills of lading do incorporate the Booking Note by reference. Where, as here, they do, the consignee is bound. (*See* Motion to Stay (Dkt. 22-1) at p. 7-10; Reply (Dkt. 50) p. 17-18).

### **CONCLUSION**

A series of many weak arguments does not equate to the strength of a single valid one. None of the arguments Hawthorne has offered to defeat the granting of an arbitral stay of the *in*

*rem* claims is meritorious. For the reasons set forth above, the Motion for Surreply should be denied and the Motion for Stay granted.

                                    */s/ Jack R. Daley*
                                    Jack R. Daley (jdaley@bakerdonelson.com)
Geoffrey S. Tobias (gtobias@bakerdonelson.com)
Constantine Themelis (gthemelis@bakerdonelson.com)
Baker, Donelson
100 Light Street
Baltimore, MD 21202
Tel: (410) 685-1120
Fax: (410) 547-0699

Of Counsel:
Don P. Murnane, Jr. (murnane@freehill.com)
Michael Fernandez (fernandez@freehill.com)
J. Tanner Honea (honea@freehill.com)
Michael J. Dehart (dehart@freehill.com)
Freehill Hogan & Mahar, LLP
80 Pine Street, 25th Floor
New York, NY 10005

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of October 2022 the foregoing was served on all counsel of record via ECF.

>*/s/ Jack R. Daley*
>Jack R. Daley