# Exhibit 1



Copyright © 1981 and Published by: The Association of Ship Brokers & Agents (U.S.A.) Inc. This derivative work may not be copied without the permission of the copyright owners. Code Name: ASBATIME

# TIME CHARTER
## New York Produce Exchange Form

November 6th, 1913 - Amended October 20th, 1921; August 6th, 1931; October 3rd, 1946; June 12th, 1981

|  |  |  |
|---|---|---|
| | THIS CHARTER PARTY, made and concluded in *Bergen* ........................................... | 1 |
| | ....................................................*11th* .......... day of *December* .................. ~~19~~ *2020* | 2 |
| **Owners** | between.................................................................. | 3 |
| | .................................................................................................... Owners of | 4 |
| | the good ........ ~~Steamship/~~ Motorship *"FALCON TRADER" – see Clause 28 for vessel's description* | 5 |
| **Description of Vessel** | of ................................................~~of~~ ..........................~~tons gross register, and~~ | 6 |
| | ..............................................~~tons net register, having engines of~~ ......................... | 7 |
| | ~~horsepower and with hull, machinery and equipment in a throughly efficient~~ | 8 |
| | ~~state, and classed~~ .......................................................................~~of about~~ | 9 |
| | ...............................................~~cubic feet grain/bale capacity~~ ...................... | 10 |
| | ..............................................................................................~~, and about~~ | 11 |
| | ...............................................~~long/metric tons deadweight capacity (cargo and~~ | 12 |
| | ~~bunkers, including fresh water and stores not exceeding~~ .................................... | 13 |
| | ~~long/metric tons) on a salt water draft of~~....................................~~on summer~~ | 14 |
| | ~~freeboard, inclusive of permanent bunkers, which are of the capacity of about~~ | 15 |
| | ...........................................................~~long/metric tons of~~ | 16 |
| | ~~fuel oil and~~ .......................... | 17 |
| | ~~long/metric tons of~~ ...............................................................~~, and~~ | 18 |
| | ~~capable of steaming, fully laden, under good weather conditions about~~ | 19 |
| | ...................................~~knots on a consumption of about~~...................................... | 20 |
| | ~~long/metric tons of~~ ................................................................................... | 21 |
| | ....................................................................................... | 22 |
| | ...................................................................... | 23 |
| | ................................................................................................ and | 24 |
| **Charterers** | *Transatlantica Commodities Pte Ltd.* ................................................................ | 25 |
| | .................................................... Charterers of the City of *Singapore* ........... | 26 |
| | The Owners agree to let and the Charterers agree to hire the vessel from the | 27 |
| **Duration** | time of delivery for ~~about~~ *a Timecharter period* ................................................. | 28 |
| | ............................................... ................................................................. | 29 |
| | .......................................................................... within below mentioned trading limits. | 30 |
| **Sublet** | Charterers shall have liberty to sublet the vessel for all or any part of the | 31 |
| | time covered by this Charter, but Charterers shall remain responsible for the | 32 |
| | fulfillment of this Charter. | 33 |
| **Delivery** | Vessel shall be placed at the disposal of the Charterers *as per main terms* | 34 |
| | .......................................................................................... | 35 |
| | .......................................................................................... | 36 |
| | .......................................................................................... | 37 |
| | ~~in such dock or at such berth or place (where she may safely lie, always afloat,~~ | 38 |
| | ~~at all times of tide, except as otherwise provided in Clause 6) as the Charterers~~ | 39 |
| | ~~may direct. If such dock, berth or place be not available, time shall count as~~ | 40 |
| | ~~provided in Clause 5.~~ Vessel on her delivery shall be ready to receive *any permissible* cargo with | 41 |
| | clean-swept*, dry* holds and tight, staunch, strong and in every way fitted for ~~ordi~~ | 42 |
| | ~~nary~~ *any permitted* cargo service, having water ballast ~~and with sufficient power to operate all~~ | 43 |
| | ~~cargo-handling gear simultaneously~~ (and with full complement of officers and | 44 |
| | crew for a vessel of her tonnage *and design*), to be employed in carrying lawful merchan- | 45 |
| **Dangerous** | dise excluding *those cargoes as per Clause 90.* ~~any goods of a dangerous, injurious,~~ ~~flammable or corrosive~~ | 46 |
| **Cargo** | ~~nature unless carried in accordance with the requirements or recom~~ | 47 |
| | ~~mendations of the proper authorities of the state of the vessel's registry and of~~ | 48 |
| | ~~the states of ports of shipment and discharge and of any intermediate states or~~ | 49 |
| | ~~ports through whose waters the vessel must pass. Without prejudice to the~~ | 50 |
| **Cargo** | ~~generality of the foregoing, in addition the following are specifically excluded:~~ | 51 |

**Exclusions**

~~livestock of any description, arms, ammunition, explosives~~ ........................................... 52

............................................................................................................................. 53

............................................................................................................................. 54

............................................................................................................................. 55

............................................................................................................................. 56

**Trading Limits**

The vessel shall be employed in such lawful trades between safe ports and 57
places within *as per Clause 40* ............................................................................... 58

.....................................................................~~excluding~~ ........................................ 59

............................................................................................................................. 60

............................................................................................................................. 61

............................................................................................................................. 62

as the Charterers or their agents shall direct, on the following conditions: 63

**Owners to Provide**

1. The Owners shall provide and pay for the insurance of the vessel and 64
for all provisions, cabin, deck, engine-room and other necessary stores, in- 65
cluding *lubricating oils,* boiler *and domestic* water; shall pay for wages, consular 66
shipping and discharging

fees of the crew and charges for port services pertaining to the crew *including* 67
*garbage removal and vessel's guard/gangway watchmen will be provided by members of the*
*crew unless port regulations provide otherwise in which case Charterers to pay for same*;
shall

maintain vessel's class and keep her in a thoroughly efficient *and well maintained* 68
state in hull, *holds, hatches,*

machinery and equipment ~~for and~~ *and in full compliance with the current regulations at* 69
*all ports of call* during the service.

**Charterers to Provide**

2. The Charterers, while the vessel is on hire, shall provide and pay for all 70
the fuel except as otherwise agreed, port charges, *all* pilotages (Turkish Straits,
Danish Straits, Magellan Strait, etc) towages, 71

agencies *(except those levied for Owners' business), compulsory garbage removal to be for* 72
*Charterers' account,* commissions, consular charges (except those pertaining to
individual

crew members or flag of the vessel), and all other usual expenses except those 73
stated in Clause 1, but when the vessel puts into, *or remains in* a port for causes for 74
which

vessel is responsible, then all such charges incurred *in consequence* shall be paid by 75
the

Owners. Fumigations ordered because of illness of the crew *or authority ordered* 76
*fumigation of vessel's bridge/engine room/accommodation space due to crew related reason*
shall be for

Owners' account. Fumigations ordered because of cargoes carried or ports 77
visited while vessel is employed under this Charter shall be for Charterers' 78
account. ~~All other fumigations shall be for Charterers' account after vessel has~~ 79
~~been on charter for a continuous period of six months or more.~~ 80

Charterers shall provide necessary dunnage and shifting boards, also 81
any extra fittings *or temporary modifications* requisite for a special trade or unusual 82
cargo, but Owners

shall allow them the use of any dunnage and shifting boards already aboard 83
vessel. 84

**Bunkers on Delivery and Redelivery**

3. The Charterers on delivery, and the Owners on redelivery, shall take 85
over and pay for all fuel and diesel oil remaining on board the vessel as 86
hereunder. ~~The vessel shall be delivered with:~~ ................................................................ 87

~~long/metric* tons of fuel oil at the price of~~ ................................................~~per ton;~~ 88

..................................................................~~tons of diesel oil at the price of~~ ........................... 89

~~per ton. The vessel shall be redelivered with:~~ ............................................................... 90

~~tons of fuel oil at the price of~~ ......................................... ~~per ton;~~ .............................. 91

...................................................~~tons of diesel oil at the price of~~ ............................~~per ton~~ 92

*See Clause 38.* ....................................................................................................... 93

............................................................................................................................. 94

~~(*Same tons apply throughout this clause)~~ 95

**Rate of Hire** *including overtime*

4. The Charterers shall pay for the use and hire of the said vessel at the 96
rate of *US$* ▮▮▮▮▮▮ *United States Dollars) to Owners* daily, or *pro rata* 97
~~United States Currency~~ 98

~~per ton on vessel's total deadweight carrying capacity, including bunkers and stores,~~ 99
~~on~~................................................................. ~~summer freeboard, per calendar month,~~ 100
commencing on and from the *hour of the* day of her delivery, as aforesaid, and at and 101
after

|  |  |  |
|--|--|--|
| | the same rate for any part of a ~~month~~ *day*; hire shall continue until the hour of the | 102 |
| **Redelivery** | day of her redelivery in like good order and condition, ordinary wear and tear | 103 |
| **Areas and** | excepted, to the Owners (unless vessel lost)~~at~~ *on dropping last outward sea pilot* | 104 |
| **Notices** | *anytime day or night Sundays and holidays included, one safe port Aden / Japan Range* | 105 |
| | *including Indonesia, Philippine Islands and South Korea or in Charterers' option one safe* | 106 |
| | *port United Kingdom - Continent - Skaw / Passero Range or one safe port Vietnam / Taiwan* | 107 |
| | *Range or one safe port Malaysia / People's Republic of China Range, or one safe port* | |
| | *Boston / Buenos Aires Range including United States Gulf / Caribbean / North Coast South* | |
| | *America and one safe port Vancouver, British Columbia / Santiago, Chile Range, port in* | |
| | *Charterers option, always within trading limits/Institute Warranty Limits/International* | |
| | *Navigating Limits, areas listed by the London Joint War Committee (JWC) excluded* unless | |
| | otherwise mutually agreed. | |
| | Charterers shall give Owners not less than *25 / 20* days notice | 108 |
| | of vessel's expected date of redelivery *range* and probable port and *15 / 12 / 10 / 7  5 / 4* | 109 |
| | */ 3 / 2 / 1 days* | |
| | *definite notice of expected port and date of redelivery.* ...................................................... | 110 |
| **Hire** | 5. Payment of hire shall be made so as to be received by Owners or ~~their~~ | 111 |
| **Payment** | ~~designated payee in New York, i.e.~~ *nominated bank by telegraphic transfer remittance* | 112 |
| **and** | *to the account held by the Owners as follows:* ...................................................................... | 113 |
| **Commencement** | *..................................................................................* | 114 |
| | *Charterers agree to assign Charter hier payments to Owners' financiers. Hir is payable* in | 115 |
| | United States Currency, ~~i n funds~~ | |
| | ~~available to the Owners~~ on the due date, semi-monthly in advance, and for the | |
| | | 116 |
| | last half month or part of same the approximate amount of hire, and should | 117 |
| | same not cover the actual time, hire shall be paid for the  balance day by day as | 118 |
| | it becomes due, if so required by Owners. Failing the punctual and regular | 119 |
| | payment of the hire, ~~or on any breach of this Charter,~~ the Owners shall be at | 120 |
| | liberty to withdraw/withhold the vessel from the service of the Charterers without pre- | 121 |
| | judice to any claims they (the Owners) may otherwise have on the Charterers. *If* | 122 |
| | *payment date falls on a day which is not a banking day, payment shall be made on the* | |
| | *preceding banking day. (See Clause 81).* | |
| | *The vessel will be on hire as per line 34.* | |
| | ~~Time shall count from 7 A.M. on the working day following that on~~ | 123 |
| | ~~which written notice of readiness has been given to Charterers or their agents~~ | 124 |
| | ~~before 4 P.M., but if required by Charterers, they shall have the privilege of~~ | 125 |
| | ~~using vessel at once, in which case the vessel will be on hire from the com-~~ | 126 |
| | ~~mencement of work.~~ | 127 |
| **Cash** | Cash for vessel's ordinary disbursements at any port may, *at Charterers* | 128 |
| | *discretion,* be advanced, | |
| **Advances** | as required by the *Owners/*Captain, by the Charterers or their agents, subject to 2 1/2 | 129 |
| | percent commission and such advances shall be deducted from the hire. The | 130 |
| | Charterers, however, shall in no way be responsible for the application of such | 131 |
| | advances. | 132 |
| **Berths** | 6. Vessel shall be loaded and discharged in any dock or at any berth or | 133 |
| | *anchorage or* | |
| | place that Charterers or their agents may direct, provided the vessel can safely | 134 |
| | lie always afloat at any time of tide, except at such places *in East Coast South America,* | 135 |
| | *Buenaventura, Colombia and Fredrikstad, Norway* where it is customary for similar | |
| | size vessels to safely lie aground. *(See Clause 40).* | 136 |
| **Spaces** | 7. The whole reach of the vessel's holds, decks, and usual places of | 137 |
| **Available** | loading (not more than she can reasonably and safely stow and carry), also | 138 |
| | accommodations for supercargo, if carried, shall be at the Charterers' dis- | 139 |
| | posal, reserving only proper and sufficient space for ship's officers, crew, | 140 |
| | tackle, apparel, furniture, provisions, stores and fuel. | 141 |

| | | |
|---|---|---|
| **Prosecution** | 8. The Captain shall prosecute his voyages with ~~due~~ *utmost* despatch, and shall | 142 |
| **of** | render all customary assistance with ship's crew and boats *including sweeping and/or* | 143 |
| | *cleaning holds as per Clause 61*. The Captain | |
| **Voyages** | (although appointed by the Owners) shall be under the orders and directions of | 144 |
| | the Charterers as regards employment and agency; and Charterers are to | 145 |
| | perform all cargo handling *(to load, stow, lash, trim, discharge)* at their expense under | 146 |
| | the supervision *and responsibility* of the | |
| | Captain, who is to sign the bills of lading for cargo as presented in conformity | 147 |
| | with mate's ~~or tally clerk's~~ receipts. However, at Charterers' option, the Chart- | 148 |
| | erers or their agents may sign bills of lading on behalf of the Captain always in | 149 |
| **Bills** | conformity with mate's ~~or tally clerk's~~ receipts *without prejudice to this Charter Party*. | 150 |
| | All bills of lading shall be | |
| **of** | without prejudice to this Charter and the Charterers shall indemnify the Own- | 151 |
| **Lading** | ers against all consequences or liabilities which may arise from any inconsis- | 152 |
| | tency between this Charter and any bills of lading or waybills signed by the | 153 |
| | Charterers or their agents or by the Captain at their request. *No Through or Liner* | 154 |
| | *Bill(s) of Lading to be issued under this Charter Party.* | |
| **Conduct of** | 9. If the Charterers shall have reason to be dissatisfied with the conduct of | 155 |
| **Captain** | the Captain ~~or officers~~, the Owners shall, on receiving particulars of the | 156 |
| | complaint, investigate the same, and, if necessary, make a change in the | 157 |
| | appointments. *But this provision does not affect the Charterers' right to advance any claim* | 158 |
| | *or require arbitration under Clauses 17 and 83 of any dispute arising out of the conduct of* | |
| | *the Master in prosecution of his voyage and in carrying out the directions of the Charterers.* | |
| | *Captain and Offices shall be fluent in English.* | |
| **Supercargo** | 10. The Charterers are entitled to appoint a supercargo, who shall accom- | 159 |
| **and** | pany the vessel and see that voyages are prosecuted with ~~due~~ *utmost* despatch. He | 160 |
| | is | |
| **Meals** | to be furnished with free accommodation and same fare as provided for | 161 |
| | Captain's table, Charterers paying at the rate of *US$* ▬▬ ...............................per day. | 162 |
| | Owners shall victual pilots and customs officers, and also, when authorized by | 163 |
| | Charterers or their agents *in writing*, shall victual tally clerks, stevedore's foreman, | 164 |
| | etc., | |
| | Charterers  paying  at  the  rate  of *US* ▬▬  per meal for all such victual- | 165 |
| | ling. | 166 |
| **Sailing** | 11. The Charterers shall furnish the Captain from time to time with all | 167 |
| **Orders** | requisite instructions and sailing directions, in writing, and the Captain shall | 168 |
| **and Logs** | keep full and correct deck and engine logs, *and such other documents as the Charterers* | 169 |
| | *may reasonably request*, of the voyage or voyages, which are | |
| | to be ~~patent~~ *always available* to the Charterers or their agents, and furnish the | 170 |
| | Charterers, their | |
| | agents or supercargo, *within reasonable time after completion of or during voyage,* | 171 |
| | when required, with a true copy of such deck and engine | |
| | logs, *in English*, showing the course of the vessel, distance run and the consumption | 172 |
| | of | |
| | fuel *and diesel oil and any other information that Charterers may request*. | 173 |
| **Ventilation** | 12. The Captain shall use diligence in caring for *and, if required*, the ventilation of | 174 |
| | the | |
| | cargo. | 175 |
| **Continuation** | 13. ~~The Charterers shall have the option of continuing this Charter for a~~ | 176 |
| | ~~further period of~~ ................................................................................................................. | 177 |
| | ................................................................................................................................................ | 178 |
| **Laydays/** | 14. If required by Charterers, time shall not commence before *00:01 hours local* | 179 |
| **Cancelling** | *time*....................................................................... and should vessel not have ~~given/written~~ | 180 |
| | ~~notice of readiness~~ *been delivered* on or before *23:59 hours local time* ~~but not~~ | 181 |
| | ~~I ater than 4 P.M.~~ Charterers or their agents shall have the option of cancelling | |
| | | 182 |
| | this Charter at any time not later than the day of vessel's readiness. | 183 |
| | 15. In the event of the loss of time from *strikes, breach of orders or due to error on* | |
| **Off** | | 184 |
| | *the part of Master, Officers or crew from* deficiency and/or default of *Master,* officers | |
| **Hire** | or crew or deficiency of stores, *fresh water*, fire, breakdown of, or damages *(whether* | 185 |
| | *partial or otherwise)* to, hull, | |

machinery or equipment, grounding, detention *or delay* by average accidents to ship or 186

cargo, ~~unless resulting from inherent vice, quality or defect of the cargo,~~ drydocking 187
for the purpose of examination or painting bottom, or by any other s ~~imilar~~ cause 188
*whatsoever* preventing the full working of the vessel, the payment of hire ~~and~~ 189
o~~vertime, if any,~~ shall cease for the time thereby lost *and until the vessel resumes her*
*employment.* Should the vessel deviate 190

or put back during a voyage, contrary to the orders or directions of the Charterers, 191
for any reason ~~other than accident to the cargo,~~ the hire is to be suspended from the 192
time of her deviating or putting back until she is again in the same or equidistant 193
position from the destination and the voyage resumed therefrom. All fuel used *and* 194
*expenses incurred* by the vessel while off hire shall be for Owners' 195

account.  ~~In the event of the vessel being driven into port or to anchorage~~ 196

~~through stress of weather, trading to shallow harbors or to  rivers  or  ports  with bars,~~ 197
~~any detention of the vessel and/or expenses resulting from such deten tion shall be~~ 198
~~for the Charterers' account.~~ If upon the voyage the speed be reduced by defect in, 199
or breakdown of, any part of her hull, machinery or equipment, the time so lost, and 200
the cost of any extra fuel consumed in consequence thereof, and all extra expenses 201
shall be deducted from the hire. *All time so lost under this Clause shall be considered as* 202
*off-hire.*

**Total**     16. Should the vessel be lost, money paid in advance and not earned 203
**Loss**    (reckoning from the date of loss or being last heard of) shall be returned to the 204
Charterers at once. 205

**Exceptions**     The act of God, enemies, fire, restraint of princes, rulers and people, and 206
all dangers and accidents of the seas, rivers, machinery, boilers and steam navigation, 207
and *non-negligent* errors of navigation throughout this Charter, always mutually 208
excepted.

**Liberties**     The vessel shall have the liberty to sail with or without pilots, to tow and    to 209
be towed, to assist vessels in distress, and to deviate for the purpose of saving 210
life and property. *The cost incurred shall be for Owners account and the payment of hire* 211
*shall cease until the vessel has returned to the same or equivalent position to that from which* 212
*the deviation commenced.*

**Arbitration**     17. Should any dispute arise between Owners and the Charterers, the matter
in dispute shall be *dealt with in the manner prescribed by Clause 83 in London.* ~~referred~~ 213
~~to three persons at New York, one to be~~ 214

~~appointed by each of the parties hereto, and the third by the two so chosen; their~~ 215
~~decision, or that of any two of them, shall be final and for the purpose of enforcing any~~ 216
~~award this agreement may be made a rule of the Court. The a rbitrators shall be~~ 217
~~commercial men conversant with shipping matters.~~

**Liens**     18. The Owners shall have a lien upon all *Charterers'* cargoes and all sub-freights 218
*and sub-hires* for 219

any amounts due under this Charter, including general average contributions, and
the Charterers shall have a lien on the ship for all monies paid in advance 220
221

and not earned, and any *other amounts due under this Charter.*    ~~overpaid hire or~~ 222
~~excess deposit to be returned at once.~~

Charterers will not suffer, nor permit to be continued, any lien or encumbrance 223
incurred by them or their agents, which might have priority over the title and interest 224
of the Owners in the vessel. 225

**Salvage**     19. All derelicts and salvage shall be for Owners' and Charterers' equal benefit 226
after deducting Owners' and Charterers' expenses and crew's propor- tion. 227

**General**     General average shall be adjusted, according to York-Antwerp Rules 228
229

**Average**   ~~1974~~ *2016*, at such port or place in *London,* ~~the United States as may be selected by t~~ 230
~~he~~

~~Owners~~ and as to matters not provided for by these Rules, according to the 231
laws and usage *in London. Hire not to contribute to General Average.*   ~~at the port of~~ 232
~~New York. In such adjustment disbursements in~~

~~foreign currencies shall be exchanged into United States money at the rate prevailing~~ 233
~~on the dates made and allowances for damage to cargo claimed in foreign currency~~ 234
~~shall be converted at the rate prevailing on the last day of  discharge at the port or~~ 235
~~place of final discharge of such damaged cargo from the ship. Average agreement~~ 236
~~or bond and such additional security, as may be~~ 237

~~required by the Owners, must be furnished before delivery of the goods. Such cash deposit as the Owners or their agents may deem sufficient as additional security for the contribution of the goods and for any salvage and special charges thereon, shall, if required, be made by the goods, shippers, consign- ees or owners of the goods to the Owners before delivery. Such deposit shall, at the option of the Owners, be payable in United States money and remitted to the adjuster. When so remitted the deposit shall be held in a special account at the place of adjustment in the name of the adjuster pending settlement of the general average and refunds or credit balances, if any, shall be paid in United States money.~~ 238–246

**York-**  Charterers shall procure that all bills of lading issued during the cur- **Antwerp** rency of the Charter will contain a provision to the effect that general average **Rules** shall be adjusted according to York-Antwerp Rules ~~1974~~ *2016* and will include the "New Jason Clause" as per Clause 23 *22*. 247–250

**Drydocking**  20. ~~The vessel was last drydocked.....................................................The Owners shall have the option to place the vessel in drydock during the cur- rency of this Charter at a convenient time and place, to be mutually agreed upon between Owners and Charterers, for bottom cleaning and painting and/or repair as required by class or dictated by circumstances. Payment of hire shall be suspended upon deviation from Charterers' service until vessel is again placed at Charterers' disposal at a point not less favorable to Charterers than when the hire was suspended..........................~~ 251–258

*See Clause 88.* ...................................................................... 259–260

**Cargo Gear**  21. Owners shall maintain the cargo-handling gear of the ship which is as follows: *see Clauses 28 and 49.* ................................................. 261–264

~~providing gear (for all derricks or cranes) capable of lifting capacity as de- scribed.~~ Owners shall also provide on the vessel for night work lights *sufficient to* 265–267

*effectively work all hatches simultaneously.* ~~as on board, but all additional lights over those on board shall be at Charterers' expense.~~ 268 The Charterers shall have the use of any gear *and equipment* on board the vessel. ~~If r equired by Charterers, the~~ *The* vessel shall work night and day *including* 269 *weekends/holidays, during loading and discharging, if required by Charterers;* and all c ~~argo-~~ 270 ~~handling~~ gear shall be at Charterers' disposal during loading and discharging; *vessel to provide cranemen and/or crew to work day and night, to open and close hatches, to connect hoses, to remove and replace beams and hatchboards or pontoons, and to perform any other usual tasks as required by Charterers.* 271

**Stevedore Stand-by**  ~~In the event of disabled cargo-handling gear, or insufficient power to operate the same, the vessel is to be considered to be off hire to the extent that time is actually lost to the Charterers and Owners to pay stevedore stand-by charges occasioned thereby. If required by the Charterers, the Owners are to bear the cost of hiring shore gear in lieu thereof.~~ *If the rules of the port, or labour unions, prevent the crew from working gear or opening or closing hatches, removing and replacing beams and hatchboards or pontoons, where so fitted, shore labour to be paid by Charterers. In the event of disabled gear or insufficient power to operate gear, Owners to pay for suitable substitute shore engine(s) or crane(s), and also for any longshoremen and/or stevedore standby tie occasioned thereby. Hire to be reduced proportionately to the total number of working hatches, for all time gear is unavailable due to disability or los of power. If the vessel is detained as a result of disabled gear, and such detention or loss of time would not have occurred had the gear been available at all times, then payment of hire to be adjusted accordingly as per Clause 15.* 272–276

**Crew**  ~~2 2. In lieu of any overtime payments to officers and crew for work ordered~~ 277

**Overtime**  ~~by Charterers or their agents, Charterers shall pay Owners $.....................~~ 278 ~~per month or pro rata.~~ 279

**Clauses**  ~~23~~ *22.* ~~The~~ *This Charter is subject to the* following clause ~~is~~ *or ones having similar* 280

*effect all of which are* to be included in all bills of lading **Paramount** hereunder: 281
This bill of lading shall have effect subject to the provisions of the Carriage 282 of Goods by Sea Act of the United States, the Hague Rules, or the Hague-Visby Rules, 283 as applicable, or such other similar national legislation as may mandatorily apply 284 by virtue of origin or destination of the bills of lading, 285

which shall be deemed to be incorporated herein and nothing herein con- tained shall be deemed a surrender by the carrier of any of its rights or immunities or an increase of any of its responsibilities or liabilities under said applicable Act. If any term of this bill of lading be repugnant to said applicable Act to any extent, such term shall be void to that extent, but no further.

~~This Charter is subject to the following clauses all of which are to be included in all bills of lading issued hereunder:~~

**New Both- to- Blame Collision Clause**

If the ship comes into collision with another ship as a result of the negligence of the other ship and any act, neglect or default of the master, mariner, pilot or the servants of the carrier in the navigation or in the manage- ment of the ship, the owners of the goods carried hereunder will indemnify the carrier against all loss or liability to the other or non-carrying ship or her owners insofar as such loss or liability represents loss of, or damage to, or any claim whatsoever of the owners of said goods, paid or payable by the other or non-carrying ship or her owners to the owners of said goods and set off, recouped or recovered by the other or non-carrying ship or her owners as part of their claim against the carrying ship or carrier.

The foregoing provisions shall also apply where the owners, operators or those in charge of any ships or objects other than, or in addition to, the colliding ships or objects are at fault in respect to a collision or contact.

**New Jason Clause**

In the event of accident, danger, damage or disaster before or after commencement of the voyage resulting from any cause whatsoever, whether due to negligence or not, for which, or for the consequences of which, the carrier is not responsible, by statute, contract, or otherwise, the goods, ship- pers, consignees, or owners of the goods shall contribute with the carrier in general average to the payment of any sacrifices, losses, or expenses of a general average nature that may be made or incurred, and shall pay salvage and special charges incurred in respect of the goods.

If a salving ship is owned or operated by the carrier, salvage shall be paid for as fully as if salving ship or ships belonged to strangers. Such deposit as the carrier or his agents may deem sufficient to cover the estimated con- tribution of the goods and any salvage and special charges thereon shall, if required, be made by the goods, shippers, consignees or owners of the goods to the carrier before delivery.

**War Clauses**

~~(a) No contraband of war shall be shipped. Vessel shall not be re- quired, without the consent of Owners, which shall not be unreasonably withheld, to enter any port or zone which is involved in a state of war, warlike operations, or hostilities, civil strife, insurrection or piracy whether there be a declaration of war or not, where vessel, cargo or crew might reasonably be expected to be subject to capture, seizure or arrest, or to a hostile act by a belligerent power (the term "power" meaning any de jure or de facto authority or any purported governmental organization maintaining naval, military or air forces).~~

~~(b) If such consent is given by Owners, Charterers will pay the provable additional cost of insuring vessel against hull-war risks in an amount equal to the value under her ordinary hull policy but not exceeding a valuation of .................................................... In addition, Owners may purchase and Charterers will pay for war risk insurance on ancillary risks such as loss of hire, freight disbursements, total loss, blocking and trapping, etc. If such insurance is not obtainable commercially or through a government program, vessel shall not b e required to enter or remain at any such port or zone.~~

~~(c) In the event of the existence of the conditions described in (a) subsequent to the date of this Charter, or while vessel is on hire under this Charter, Charterers shall, in respect of voyages to any such port or zone assume the provable additional cost of wages and insurance properly incurred in connection with master, officers and crew as a consequence of such war,~~ *warlike operations or hostilities. Basic war risk insurance and crew bonus for worldwide trading to be for Owners account. In the event Charterers employ the vessel in a trade for which there is additional war risk insurance premium, Charterers shall reimburse Owners for additional premium actually paid by them less usual rebate based on the present hull and machinery valuation of the ship, but not to exceed the scale from time to time published by the institute of London Underwriters. Any increase in crew war bonus after delivery caused by the trade in which vessel is engaged to be for Charterers account but not exceeding that which is customary for the trade.*

**Ice**

24 *23*. The vessel shall not be required to enter or remain in any icebound port

286
287
288
289
290
291
292
293
294
295
296
297
298
299
300
301
302
303
304
305
306
307
308
309
310
311
312
313
314
315
316
317
318
319
320
321
322
323
324
325
326
327
328
329
330
331
332
333
334
335
336
337
338
339
340
341
342
343

| | | |
|---|---|---|
| | or area, nor any port or area where lights or lightships have been or are about | 344 |
| | to be withdrawn by reason of ice, nor where there is risk that in the ordinary | 345 |
| | course of things the vessel will not be able on account of ice to safely enter and | 346 |
| | remain in the port or area or to get out after having completed loading or | 347 |
| | discharging. | 348 |

| | | |
|---|---|---|
| **Navigation** | 25 *24.* Nothing herein stated is to be construed as a demise of the vessel to the | 349 |
| | Time Charterers. The Owners shall remain responsible for the navigation of the | 350 |
| | vessel, acts of pilots and tug boats, insurance, crew, and all other similar | 351 |
| | matters, same as when trading for their own account. | 352 |
| **Commissions** | 6 *25.*   A commission of *1.25* percent is payable to broker | 353 |
| | and 3.75% address commission  to | 354 |
| | .......................................................................................................................... | 355 |
| | on hire earned and paid under this Charter, and also upon any continuation or | 356 |
| | extension of this Charter. | 357 |
| **Address** | 27 *26.*   An address commission of............................................................ percent | 358 |
| | is payable to ...................................................................................................... | 359 |
| | .......................................................................................................................... | 360 |
| | on hire earned and paid under this Charter. | 361 |
| **Rider** | *27.* Rider Clauses *28 through to and including 110*............................................ as at- | 362 |
| | tached hereto are incorporated in this Charter. | 363 |

*THE OWNERS:*                                             *THE CHARTERERS:*

## Rider of Suggested Additional Clauses

(None of these Clauses apply unless expressly agreed during the negotiations and enumerated in line 362)

**Extension**      ~~28. If it clearly appears that, despite the exercise of due diligence by~~ of 364
**ancelling**      ~~Owners, the vessel will not be ready for delivery by the cancelling date, and~~ C 365
~~provided Owners are able to state with reasonable certainty the date on which~~ 366
~~the vessel will be ready, they may, at the earliest seven days before the vessel is~~ 367
~~expected to sail for the port or place of delivery, require Charterers to declare whether~~ 368
~~or not they will cancel the Charter. Should Charterers elect not to cancel, or should~~ 369
~~they fail to reply within seven days or by the cancelling date, whichever shall first~~ 370
~~occur, then the seventh day after the expected date of readiness for delivery as~~ 371
~~notified by Owners shall replace the original cancel ling date. Should the vessel~~ 372
~~be further delayed, Owners shall be entitled to r equire further declarations of~~ 373
~~Charterers in accordance with this Clause.~~ 374

**Grace**   ~~29. Where there is failure to make "punctual and regular payment" of hire,~~ 375
**Period**   ~~Charterers shall be given by Owners two clear banking days (as recognised at the~~ 376
~~agreed place of payment) written notice to rectify the failure, and when so rectified~~ 377
~~within those two days following Owners' notice, the payment shall stand as regular~~ 378
~~and punctual. Payment received by Owners' bank after the original due date will~~ 379
~~bear interest at the rate of 0.1 percent per day which shall be payable immediately by~~ 380
~~Charterers in addition to hire.~~ 381
~~At any time while hire is outstanding the Owners shall be absolutely entitled~~ 382
~~to withhold the performance of any and all of their obligations hereun- der and~~ 383
~~shall have no responsibility whatsoever for any consequences thereof in respect~~ 384
~~of which the Charterers hereby indemnify the Owners and hire shall continue to accrue~~ 385
~~and any extra expenses resulting from such withholding s hall be for the Charterers'~~ 386
~~account.~~ 387

**Cargo**   ~~30. Damage to and claims on cargo shall be for Owners' account if caused~~ 388
**Claims**   ~~by unseaworthiness of the vessel, but shall be for Charterers' account if~~ 389
~~caused by handling and stowage, including slackage. Claims for shortage ex~~ 390
~~ship shall be shared equally between Owners and Charterers.~~ 391

**War**   ~~31. In the event of the outbreak of war (whether there be a declaration of~~ 392
**Cancellation**   ~~war or not) between any two or more of the following countries: The United States~~ 393
~~of America, the United Kingdom, France, the Union of Soviet Socialist Republics, the~~ 394
~~People's Republic of China,~~ .................................................................. 395
.................................................................................................................... 396
.................................................................................................................... 397
~~or in the event of the nation under whose flag the vessel sails becoming involved~~ 398
~~in war (whether there be a declaration of war or not), either the Owners or the~~ 399
~~Charterers may cancel this Charter. Whereupon the Charterers shall redeliver the~~ 400
~~vessel to the Owners in accordance with Clause 4; if she has cargo on board, after~~ 401
~~discharge thereof at destination, or, if debarred under this Clause from reaching~~ 402
~~or entering it, at a near open and safe port as directed by the Owners; or, if she~~ 403
~~has no cargo on board, at the port at which she then is; or, if at sea, at a near open~~ 404
~~and safe port as directed by the Owners.~~ 405
~~In all cases hire shall continue to be paid in accordance with Clause 4 and except~~ 406
~~as aforesaid all other provisions of this Charter shall apply until redeliv- ery.~~ 407
408

**War** ~~Bonus~~   ~~32. Any war bonus to officers and crew due to vessel's trading or cargo carried~~ 409
~~shall be for Charterers' account.~~ 410

**Requisition**   ~~33. Should the vessel be requisitioned by the government of the vessel's flag~~ 411
~~during the period of this Charter, the vessel shall be deemed to be off hire during the~~ 412
~~period of such requisition, and any hire paid by the said government in respect of~~ 413
~~such requisition period shall be retained by Owners. The period during which the~~ 414
~~vessel is on requisition to the said government shall count as p art of the period~~ 415
~~provided for in this Charter.~~ 416
~~If the period of requisition exceeds~~ ........................................... ~~months, either~~ 417
~~party shall have the option of cancelling this Charter and no consequential claim may~~ 418
~~be made by either party.~~ 419

**On/Off-hire**   ~~34. Prior to delivery and redelivery the parties shall each appoint sur-~~ 420
**Survey**   ~~veyors, for their respective accounts, who shall conduct joint on hire/off hire surveys.~~ 421
~~A single report shall be prepared on each occasion and signed by each surveyor,~~ 422
~~without prejudice to his right to file a separate report setting~~ 423

forth items upon which the surveyors cannot agree. If either party fails to have a representative attend the survey and sign the joint survey report, such party shall nevertheless be bound for all purposes by the findings in any report prepared by the other party. On-hire survey shall be on Charterers' time and off-hire survey on Owners' time. — 424 / 425 / 426 / 427 / 428

**Stevedore Damage**  35. Any damage caused by stevedores during the currency of this Charter **D** shall be reported by Captain to Charterers or their agents, in writing, within 24 hours of the occurrence or as soon as possible thereafter. The Captain shall use his best efforts to obtain written acknowledgement by responsible parties causing damage unless damage should have been made good in the mean time. — 429 / 430 / 431 / 432 / 433

Stevedore damages involving seaworthiness shall be repaired without delay to the vessel after each occurrence in Charterers' time and shall be paid for by the Charterers. Other minor repairs shall be done at the same time, but if this is not possible, same shall be repaired while vessel is in drydock in Owners' time, provided this does not interfere with Owners' repair work, or by vessel's crew at Owners' convenience. All costs of such repairs shall be for Charterers' account. Any time spent in repairing stevedore damage shall be for Charterers' account. — 434 / 435 / 436 / 437 / 438 / 439 / 440

Charterers shall pay for stevedore damages whether or not payment has been made by stevedores to Charterers. — 441 / 442

**Charterers'**  36. Charterers shall have the privilege of flying their own house flag and **Colors** painting the vessel with their own markings. The vessel shall be repainted in Owners' colors before termination of the Charter. Cost and time of painting, maintaining and repainting those changes effected by Charterers shall be for C harterers' account. — 443 / 444 / 445 / 446 / 447

**Return**  37. Charterers shall have the benefit of any return insurance premium **Premium** receivable by Owners from their underwriters as and when received from underwriters by reason of vessel being in port for a minimum period of 30 days i f on full hire for this period or pro rata for the time actually on hire. — 448 / 449 / 450 / 451

38. The vessel shall be off-hire during any time lost on account of vessel's non-compliance with government and/or state and/or provincial regulations pertaining to water pollution. In cases where vessel calls at a U.S. port, Owners warrant to have secured and carry on board the vessel a Certificate of Financial R esponsibility as required under U.S. law. — 452 / 453 / 454 / 455 / 456

457 / 458

This Charter Party is a computer generated copy of the ASBATIME (1981) form printed under licence from the Association of Ship Brokers & Agents (U.S.A), Inc., using software which is the copyright of SDSD.It is a precise copy of the original document which can be modified, amended or added to only by the striking out of original characters, or the insertion of new characters, such characters being clearly highlighted by underlining or use of colour or use of a larger font and marked as having been made by the licencee or end user as appropiate and not by the author.

RIDER CLAUSES TO CHARTER PARTY OF
M.V. "FALCON TRADER"
DATED BERGEN, 11TH DECEMBER 2020

**Clause 28 – Vessel's Description**

**Clause 29 – Plans**

Owners are to provide Charterers with copies of the vessel's capacity plan, hydrostatic curves and deadweight scale together with copies of the currently approved grain loading plan and trimming scales.

**Clause 30 – Speed and Consumption**

The words "good weather conditions" in line 21 of this Charter shall mean any weather condition in which the wind does not exceed Force 4 at the Beaufort Scale . Weather reports to be taken from vessel's deck log and from independent weather company, if so elected by Charterers. In the event of consistent discrepancies between the 2 (two) sources, independent weather company reports to be taken as final and binding. All costs and expenses incurred by obtaining independent weather company reports shall be for Charterers' account.

Vessel has liberty to use marine diesel oil in her main engine while manoeuvring in/out of ports, rivers, straits, canals, shallow/narrow or restricted waters, when ballasting/ deballasting, heating fuel in cold weather, familiarization, maintenance and others in case of need.

Charterers shall be entitled to instruct the vessel to steam at reduced or increased speed for commercial or operational reasons, subject to constraints imposed by the physical characteristics of the vessel's machinery.

All speed/consumption are given basis good weather condition for 12 consecutive hours, winds up to Beaufort 4/total combined (sea and swell) significant wave height confined to limits of maximum 1.5 metres, currents can/will be factored in upon voyage evaluation to reflect the true performance of the vessel.

Any gain on time and/or consumption to be off-set against loss on time and/or consumption if any.

About is defined as +/- 0.5 knot on the speed and +/- 5% on the consumption figure.

**Clause 31 – Delivery Notice**

Owners are to give Charterers 3/2/1 days  notice of vessel's readiness to deliver and to keep Charterers advised of any changes immediately they occur.

**Clause 32 – On-Hire and Off-Hire Survey**

On delivery/at first loading port and on redelivery/at last discharging port, an on-hire and off-hire survey respectively shall be held jointly by Owners and Charterers, the cost and time of which to be equally shared. Owners' option to appoint Master and/or Chief

**HOWE ROBINSON PARTNERS          1**

### RIDER CLAUSES TO CHARTER PARTY OF
### M.V. "FALCON TRADER"
### DATED BERGEN, 11TH DECEMBER 2020

Engineer as their representative and Owners will not bear any costs in such case and vessel to remain on hire.

**Clause 33 – Additional Insurance Premiums**

Charterers shall reimburse Owners for additional insurance premium on hull and machinery actually paid by them for breaching Institute Warranty Limits, based on the present hull and machinery valuation of the ship.  Such additional premium is not to exceed that for the minimum coverage under the London Underwriters Minimum Scale on conditions no wider than their standard form of Institute Time Clause less usual rebate.  Owners confirm that hull and machinery policies contain waivers of subrogation rights against Charterers for loss of or damage to, the vessel however caused.

Notwithstanding any term, condition or exception of the Charter, Owners to waive all claims against Charterers for damage arising or resulting from vessel navigating outside Institute Warranty Limits and/or to ports, which are reasonably accessible.  Master to exercise due diligence to avoid loss of, or damage to, ship and cargo.

**Clause 34 – Return Insurance**

Charterers to have the full benefit of any lay-up or return of insurance premiums by reason of vessel being in port for a minimum period as provided in her insurance policies.

**Clause 35 – Extra Insurance**

Any additional insurance levied on vessel and/or cargo and any time lost by reason of the vessel's age, flag, ownership, class or condition to be borne by Owners.  Any additional insurance premium levied on cargo by Charterers or their customers to be borne by Charterers.

**Clause 36 – House Flag / Markings / Funnel**

deleted

**Clause 37 – Mast Cropping**

deleted

**Clause 38 – Bunkers on Delivery and Redelivery**

Vessel to be delivered with bunkers as onboard which sufficient to reach nearest main bunkering port.

Bunkers on redelivery to be about the same quantities as bunkers on delivery but always sufficient to reach nearest main bunkering port.

Prices of bunkers at both ends as per Platts bunkerwire price at nearest main bunkering

**RIDER CLAUSES TO CHARTER PARTY OF**
**M.V. "FALCON TRADER"**
**DATED BERGEN, 11TH DECEMBER 2020**

port on the day of vessels delivery/redelivery or first working day thereafter when Platts bunkerwire price is published.

If international fuel regulations have changed during the Charter meaning that the vessel will be required to consume a fuel type different than that on delivery, then the settlement of bunkers remaining on board on redelivery will be done basis Platts price at nearest main bunkering port on day of redelivery for the specific quality and quantity of fuel actually on board the vessel at time of redelivery.

Charterers have the option to supply RMF25 instead of RME25 in South Africa only, provided that no RME25 available.  Owners have no objection Charterers arrange to supply bunker upto 85% of each tank capacity, however mixture of bunkers in tank which may lead engine trouble should be avoided as much as possible.

Charterers allowed to bunker ISO 8217:2005 specifications.

(a)  The Charterers shall supply fuels of the agreed specifications and grades. The fuels shall be of a stable and homogeneous nature and suitable for burning in the Vessel's engines or auxiliaries and, unless otherwise agreed in writing, shall comply with ISO standard 8217:2010 or any subsequent amendments thereof.

(b)  The Charterers shall be liable for any loss or damage to the Owners or the Vessel caused by the supply of unsuitable fuels and/or fuels which do not comply with the specifications and/or grades set out in sub-clause (a) above, including the off-loading of unsuitable fuels and the supply of fresh fuels to the vessel. The Owners shall not be held liable for any reduction in the Vessel's speed performance and/or increased bunker consumption nor for any time lost and any other consequences arising as a result of such supply.

**Clause 39 – Cancellation due to Extended Off-Hire**

If the vessel is off-hire for 45 (forty five) days or more during any 45 (forty five) day period due to any cause(ss) whatsoever, the Charterers shall have the option to cancel this Charter Party, without prejudice to any other rights, remedies or claims which the Charterers may have.  Such option shall be exercised by the Charterers by giving written notice of cancellation to the Owners and the vessel shall be redelivered as soon as practicable once free of cargo properly and duly discharged under any applicable contract of carriage.

**Clause 40 – Trading Limits**

The vessel shall be employed in such lawful trades between safe ports and safe places in any port of the world always within International Navigating Limits/Institute Warranty Limits with harmless/lawful cargoes, excluding Finland, Iran (unless cargoes are UN approved, USA approved and not sanctioned), Iraq (unless cargoes are UN approved or USA approved or approved by the Ministry of Iraq), Israel (but allowed in case vessel can trade to Israel without any risk of being sanctioned in future trading), Lebanon, Nigeria, Syria, Turkish Cyprus, Ethiopia, Somalia, North Korea, Albania,

**RIDER CLAUSES TO CHARTER PARTY OF**
**M.V. "FALCON TRADER"**
**DATED BERGEN, 11TH DECEMBER 2020**

Haiti, Orinoco River, Great Lakes and St. Lawrence River/Seaway west of Montreal, St. Lawrence Seaway east of Montreal between December and March.

Also excluded from trading are Sudan, Libya, Yemen, Angola, Cambodia, Crimea/ Sevastopol, Venezuela, ports excluded/boycotted by UN/NATO resolution.

All war and warlike zones and any countries/areas prohibited by Government of vessel's flag or vessel's underwriters.

Subject to Owners' approval, which is not to be unreasonably withheld, Charterers will have the option of trading the vessel beyond International Navigating Limits/Institute Warranty Limits.  Any additional premium incurred to be for account of Charterers. Sae to be competitively priced in line with Japanese market.

The Charterers have the option to direct the vessel to areas listed by the London Joint War Committee (JWC) compensating the Owners with additional insurance premium at cost if any that charged by Lloyd's Underwriters of London Insurance Market.

It is understood the vessel is not to call Alaska and Finland except Raahe Roads being international waters is ok, if Clause 51 (ITF) is not applicable.

For Benin and Togo calling, the Master has the option to wait berthing schedule at a safe place outside of the HRA.  Kenya and Tanzania are to be excluded.

Cuba allowed provided that cargoes are UN approved, USA approved and not sanctioned.

Vessel not to trade Cuba 180 (one hundred and eighty) days (or more days to be complied with latest regulation/change of circumstance) prior to redelivery.  Should the vessel be boycotted, blockaded, blacklisted, denied or restricted in any port or place because of calling at Cuba, all expenses, delays or other consequences to be for Charterers account.  The vessel shall remain on hire throughout.

War Risks Clause of Gulf of Aden / India

Notwithstanding any other provisions in this Charter Party, passing the High Risk Area (HRA) of Indian Ocean / Arabian Sea /Gulf of Aden / Gulf of Oman / Southern Red Sea (as defined by the Joint War Committee of Lloyds Market Association from time to time) permitted.

All costs for Gulf of Aden passage (AWRP, LoH, K&R, B&T, crew bonus, armed guards, protecting  materials) are for charterers' account at ▮▮▮▮▮▮▮▮▮▮

For trading from South Africa to Persian Gulf / Pakistan / West Coast India and vice versa, and trading from Pakistan / West Coast India to Persian Gulf and vice versa:

In case Vessel transits outside so called HRA 2019 but through HRA defined by JWC, followings to apply.

**HOWE ROBINSON PARTNERS**          **4**

RIDER CLAUSES TO CHARTER PARTY OF
M.V. "FALCON TRADER"
DATED BERGEN, 11TH DECEMBER 2020

- Armed security guards are not required onboard.

If in the event of subsequent changes from the insurance companies and or industry standards then both Owners and charters are to review the above in good faith but always safety lies with Master and his decision to be respected by Charterers.

For trading from South end of Sri Lanka to South Africa and vice versa:

Vessel is allowed to sail most direct route from south end of Sri Lanka to South Africa or vice versa without armed guards provided vessel sails always east of Madagascar without entering HRA.

Owners arrange kidnap & ransom insurance at Charterers costs.

Iran to be discussed when Iran trading is needed or Nigeria piracy threat be improved.

NAABSA Protective Clause

Owners have the right to carry out underwater inspection for suspected damage to underwater parts of the vessel at earliest convenient port at Charterers time/costs including class attendance fee. If any damage is found, Owners have the right to arrange necessary repair at Charterers time/cost and vessel shall remain on-hire.

**Clause 41 – Deviation**

If during the currency of tis Charter there is any deviation during the course of a voyage, or any loss of time whatsoever caused by sickness of, or accident to the Master, or any member of the crew or any person on board the vessel, other than under Charterers' auspices vessel to be considered as off-hire and hire shall not be paid for the time lost, and the cost of extra fuel consumed and any other extra expenses incurred shall be for Owners' account.

**Clause 42 – Stevedore Damage**

All stevedore damage to be settled directly between Owners and stevedores. Charterers will assist Owners to recover eventual stevedore damage. However, in the event that Owners are not able to obtain recovery from the stevedores, Charterers shall nevertheless remain responsible and reimburse Owners for same.

Should any damage be caused to the vessel or her fittings by stevedores, Master shall notify the Charterers or their gents in writing at the time of occurrence of damage or latest within 24 (twenty four) hours thereafter. Master to co-operate with charters and their agents in fiving prompt notice of each claim in writing to the party causing the damage latest before sailing.

Upon each occurrence of serious damage Master to immediately inform Charterers by telex stating exact description and exact extent of such damage, and provided that it is practical a joint survey is to be held, the cost of which is to be shared 50/50 between Charterers and Owners. The Master to use his best efforts to obtain written

**HOWE ROBINSON PARTNERS**      **5**

### RIDER CLAUSES TO CHARTER PARTY OF
### M.V. "FALCON TRADER"
### DATED BERGEN, 11TH DECEMBER 2020

acknowledgement from the responsible party or parties causing the damage(s) unless damage(s) be made good in the meantime by stevedores. Charterers have the privilege of redelivering the vessel without repairing the stevedore damage(s) does/do not affect seaworthiness or class but charters undertake to reimburse the repair cost against the production of repair bills by the repair yard unless otherwise agreed. Such damages to be repaired on Owners' time but at Charterers' expense during vessel's next dry docking.

### Clause 43 – Hold Ladders

Vessel's accommodation and pilot ladders as well as hold ladders and accesses thereto are to be kept in good repair so as to comply with the safety requirements at all ports of call. Any delays to vessel and/or her operations as a result of non-compliance with this Clause to be considered as off-hire and any expenses incurred to be for Owners' account.

### Clause 44 – Quarantine

Owners shall be liable for any delay in quarantine arising from the Master, Officers or crew having communication with the shore at any infected area without the written consent of Charterers or their agents, also for any loss of time through detention by customs or other authorities caused by smuggling or other infractions of local law on the part of the Master, Officers or crew. Any time lost by such causes may be deducted as off-hire.

### Clause 45 – Fumigation

Owners to supply valid fumigation certificate on vessel's delivery and vessel to be in possession of a valid deratisation or exemption certificate throughout the duration of the Charter Party.

### Clause 46 – Safety and Health Regulations

Owners warrant that the vessel shall be in possession of the necessary certificates to comply withy all safety and health regulations and all current requirements at all ports of call during the currency of this Charter, without hindrance or delay.

### Clause 47 – Australian Regulations

Vessel will comply with and be maintained in accordance with the requirements of the Commonwealth of Australia loading and unloading safety measure regulations.

Owners confirm that the vessel is fitted and will be fitted throughout the duration of this Charter, with hold ladders that conform to the regulations of the Waterside Workers Federation of Australia.

## RIDER CLAUSES TO CHARTER PARTY OF
## M.V. "FALCON TRADER"
## DATED BERGEN, 11TH DECEMBER 2020

**Clause 48 – Tonnage Certificate**

Owners will obtain an official Tonnage Certificate prior to delivery and required renewals throughout the Charter period, the current valid certificate being on board the vessel at all times. In the event extra charges are incurred by reason of lack of International Tonnage Certificate, same shall be for Owners' account.

**Clause 49 – Cargo and Equipment**

Owners guarantee that throughout this Charter vessel's equipment shall comply with regulations and/or requirements in effect at all ports of call, canals and countries in which vessel will be employed. Owners also guarantee that vessel shall be at all times in possession of a valid and up-to-date certificate on board to comply with such regulations and/or requirements. If stevedores, longshoremen or other labourers are not permitted to work by reason of any failure of the Captain, Owners and/or their agents to comply with such regulations or by reason that vessel is not in possession of such valid and up-to-date certificate(s), then Owners shall take immediate corrective measures. Charterers may suspend hire for time lost thereby and any extra expense including stevedores' standby time for Owners' account.

**Clause 50 – Canal Transit**

During the full currency of this Charter Party, Owners shall keep the vessel fully capable and equipped to transit the Suez Canal and Panama Canal without delay in accordance with the rules and regulations governing navigation of the Canals mentioned above and promulgated from time to time by the local authorities.

Owners confirm vessel is fitted for transit of New Panama Canal and locks.

**Clause 51 – ITF**

Owners warrant that the vessel's ITF is in order. In the event of the vessel being boycotted by ITF, delayed or rendered inoperative by strikes, labour stoppages or any other difficulties due to vessel's flag, ownership, crew, terms of employment of Officers or crew, or any other vessel under the same ownership, operation or control, all time lost is to be considered off-hire, any expense and liabilities incurred thereby to be for Owners' account. Furthermore, Owners warrant that throughout the duration of this Charter, the vessel's flag and crewing arrangements shall not interfere with or restrict the vessel's trading restrictions of employment.

**Clause 52 – Flag Restrictions**

Owners shall be responsible in the event of loss of time, delay and/or impossibility of, or restrictions on, the full working or employment of the ship, including, but not limited to, any action whatsoever taken by any third parties, as a result of or in connection with the country of registration of the ship, her flag, and/or the terms and conditions upon which the crew of the ship are engaged or employed by Owners. The ship shall be off-hire for any time lost and any and all expenses resulting directly or indirectly to Charterers by reason of or in connection with these causes may be deducted from hire.

**HOWE ROBINSON PARTNERS**        7

RIDER CLAUSES TO CHARTER PARTY OF
M.V. "FALCON TRADER"
DATED BERGEN, 11TH DECEMBER 2020

In the event of a serious problem arising in the future under the abovementioned Charter Party due to Owners' inability to maintain the vessel under her present flag through no fault of the Owners or their managers, Owners will be allowed to request Charterers' permission to change vessel's registry and flag, and Charterers approval thereto will not be unreasonably withheld, provided vessel's trading/cargo exclusions and other material aspects of this Charter are not affected by this new registry. If the proposed new registry would adversely affect vessel's trading/cargo exclusions and other material aspects of the Charter, then Owners and Charterers will work together towards an amicable, mutually acceptable alternative.

**Clause 53 – Third Party Suits**

Should the vessel be delayed, detained or arrested during the currency of this Charter Party at the suit of any party having or purporting to have any claims against or any interest in the vessel, Master, her crew or Owners, hire under this Charter Party shall not be payable in respect of any period during which the vessel is not fully at Charterers' disposal and any consequential time and expenses resulting from same which the Charterers may incur are to be for Owners' account.

**Clause 54 – Inter-Club Agreement**

In the case of damage to and/or loss of cargo carried on the vessel in which Owners liability could be involved under the terms of this Charter Party, all cargo shortages are for charterers' time and account and vessel to remain on hire.

If head owners need to provide Letter of Undertaking to release the vessel, same to be done as soon as practically possible and all time lost and additional expenses are for Charterers' account.

**Clause 55 – P & I Cover**

Vessel shall be entered and will remain entered during the full currency of this Charter with a recognized first class P & I Club member of the international group and shall carry P & I cover including cargo and pollution cover. Such cover shall always be at the sole expense of the Owner.

Charterers to have the benefit of owners P & I Cover insofar as the rules permit. Owners have vessel covered with The Britannia Steam Ship Insurance Association Limited.

**Clause 56 – Financial Responsibility in Respect of Pollution**

Owners warrant that throughout the currency of this Charter they will provide the vessel with the following certificates:

a). Certificates issued pursuant to Section 3 II(p) of the Clean Water Act (also know as the U.S. Federal Water Pollution Control Act), as amended (Title 33 U.S. Code, Section I32l(p) or any other certificates which may be required by United States Federal of State legislation enacted at any time during the currency of this Charter.

**HOWE ROBINSON PARTNERS        8**

RIDER CLAUSES TO CHARTER PARTY OF
M.V. "FALCON TRADER"
DATED BERGEN, 11TH DECEMBER 2020

b). Certificates required by any other national or local Government evidencing financial responsibility in the event of discharge of oil or other hazardous substances.

In no case shall Charterers be liable for any damages resulting from Owners failure to obtain or have on board such certificates of Owners failure to comply in any other way with existing or future laws enacted by any national or local Governments. Any time lost by reason of Owners non-compliance shall be off-hire and Owners shall hold Charterers harmless against any and all consequential loss, damages, expense or claims.

**Clause 57 – Pollution**

Owners warrant that the vessel entered with the protection and indemnity insurer listed in Clause 55 for the full coverage available for marine pollution risk. When an escape of discharge of oil or other hazardous substances occurred from the vessel and causes or threaten to cause pollution damage, or when there is the threat of an escape of discharge of oil or other hazardous substances (i.e. a grave and imminent danger of the escape or discharge which, if it occurred, would create a serious danger of pollution damage), then Owners shall immediately undertake such measures as are reasonably necessary to prevent or minimize such damage or to remove the threat Owners shall keep Charterers advise of the nature and result of any measures taken by them, and, if time permits, the nature of the measures intended *to* be taken by them. In the event Owners fail to undertake such measures, Charterers may, at their option, upon notice to Owners or the Master, do so themselves and any measures taken by Charterers shall be deemed taken on Owners' authority and as Owners' agent and shall be at Owners' expense except to the extent that any such pollution damage or threat was caused or contributed to by Charterers.

**Clause 58 – Bunkering Privileges**

Owners certify that the vessel is and will remain throughout the duration of this Charter, eligible for full bunkering privileges in the United States of America and its territories and possessions, under all present and future United States Laws and/or regulations and is not, nor will be restricted, as to bunkering at any other countries or ports of call during this Charter.

**Clause 59 – Narrowing of Laydays/Cancelling**

Deleted.

**Clause 60 – Ice**

**HOWE ROBINSON PARTNERS          9**

RIDER CLAUSES TO CHARTER PARTY OF
M.V. "FALCON TRADER"
DATED BERGEN, 11TH DECEMBER 2020

Deleted.

## Clause 61 – Hold Cleaning

On arrival at first load port, vessel's holds are to be clean, dry and free from scale and in all respects ready to load any permissible cargo. Any costs, expense or time lost, should local surveyor or authority reject the vessel's load readiness, to be for Owners' account.

## Intermediate Hold Cleaning

Hold cleaning by vessel's crew to be carried out at the rate of US$ ███ (███████████ United States Dollars) per hold provided local regulations permit Cleaning of holds between cargoes, if required by Charterers to be done by vessel's crew in Charterers' time without any responsibility of Owners if vessel fails inspection. However, if vessel fails inspection, crew to continue cleaning holds without additional payment until such time as holds are passed by inspector. The crew will endeavour best in the same efficient manner as if the vessel was trading for Owners' account to clean the holds. If sea conditions permit, cleaning to be done during navigation or in port if local regulations permit.

## Clause 62 – Redelivery without Hold Cleaning

Charterers are to have the option of redelivering the vessel dirty paying Owners lump sum US$ ███ (███████████ United States Dollars) in lieu of cleaning, excluding removal of dunnage and securing materials which to be done for Charterers' time and account.

## Clause 63

Deleted.

## Clause 64 – Lightening and Top-Off

The vessel shall carry out lightening and top-off operations by arriving in the open operational areas with her holds ready to be lightened/topped off, weather permitting, and shall assist by having her crew take and/or pass mooring ropes required by the Master of the lightening/top-off vessel, both for mooring/unmooring of the ocean vessel alongside it. While alongside, the vessel to tend carefully all moorings and verify her draft frequently.

Furthermore, the Master shall at all times operate fully with Charterers and/or their Agents to expedite the transfer of cargo and the vessel shall maintain a draft, when feasible, as requested by the Master of the lightening/top-off vessel, to facilitate the operation. Suitable fenders must be supplied by Charterers during all lightening/top-off operations, however, vessel to provide free of charge any fenders that may be on board. The area used for lightening/top-off operations is to be customary and usual area where such operations normally take place.

HOWE ROBINSON PARTNERS        10

**RIDER CLAUSES TO CHARTER PARTY OF**
**M.V. "FALCON TRADER"**
**DATED BERGEN, 11TH DECEMBER 2020**

**Clause 65 – Ballasting/Deballasting**

Vessel to ballast/deballast clean water ballast tanks only including floodable hold(s), if required by Charterers or their Agents at any time during loading and/or discharging, free of expense to Charterers but in Charterers' time. All ballasting/deballasting shall be at the discretion of Master having due regard to stability and seaworthiness of the vessel. Whenever practicable or required by law at the next port of call, the vessel is to replace ballast taken in port or coastal waters with clean seawater ballast. Owners guarantee that the vessel will always be maintained in a safe condition during ballast operations. If at any time solid ballast is required, all expenses for same, including time used for loading and discharging such ballast, bunkers consumed during such period and time used for cleaning holds after the discharge of such solid ballast, shall be for Charterers' account.

The vessel is capable of ballasting No. 3 hold and indeed the vessel normally proceeds to load ports with No. 3 hold in ballast. In such instances Owners, Master and crew will do their utmost to deballast at dry such hold as quickly as possible.

However, it is understood that time used for such deballasting and drying up of hold No. 3 is not to be considered as off-hire time. Owners and Master will do their utmost throughout the duration of this Charter to minimise the use of hold No. 3 for ballast purpose.

**Clause 66 – Mobile Cranes**

Charterers shall have the option of placing sufficient mobile cranes on vessel's main deck (anticipated to be at least one per cargo hold and/or hatch) to facilitate loading or discharge where same is customary at intended port.

Weight of mobile crane(s) are not exceeding vessel's deck strength. Where necessary, Charterers may weld iron rings to main deck for use in lashing/securing mobile crane(s) and adequate dunnage or other customary protection to be provided and removed at Charterers' time and expense.

**Clause 67**

Deleted (ie no Cavaletto discharge allowed).

**Clause 68 – Inspection Rights**

The Charterers shall have the right and privilege of having their representative visit the vessel while in port or at sea. Charterers' representatives shall access to the entire vessel (excluding accommodation spaces) and the Master, Officers and crew of the vessel shall cooperate with and render any and all reasonable assistance that the Charterers' may require.

**RIDER CLAUSES TO CHARTER PARTY OF**
**M.V. "FALCON TRADER"**
**DATED BERGEN, 11TH DECEMBER 2020**

**Clause 69 – <u>Maintenance</u>**

a) Throughout the Charter period Owners, whenever the passage of time, wear and tear or any event required steps be taken to maintain or restore the conditions stipulated in this Charter, shall exercise due diligence so to maintain or restore the vessel.

b) At any time while on hire under this Charter, the vessel fails to comply with its requirements. If then hire shall be reduced to the extent necessary to indemnify Charterers for such failure. If and to the extent that such failure affects the time taken by the vessel to perform any services under this Charter, hire shall be reduced by any amount equal to the value, calculated at the rate of hire, of the time so lost, and any extra expenses incurred by Charterers (including fuel) shall be for Owners' account. Any reduction of hire under this clause shall be without prejudice to any other remedy available to Charterers.

**Clause 70 – <u>Shipboard Personnel and Their Duties</u>**

a). Upon delivery and throughout the duration of this Charter:

i) Vessel shall have a full and efficient complement of Master, Officers and crew for a vessel of her tonnage and design, who shall in any event not be less than the number required by the laws of the flag state and who shall be trained to operate the vessel and her equipment competently and safely;

ii) all shipboard personnel shall hold valid certificates of competence in accordance with the requirements of the law of the flag state:

iii) all shipboard personnel shall be trained in accordance with the relevant provision of the International Convention on Standards of Training, Certification and Watch Keeping for Seafarers 1978, and/or other rules or regulations that may be promulgated from time to time;

iv) there shall be on board sufficient personnel with a good working knowledge of the English language to enable cargo operations at loading and discharging places to be carried out efficiently and safely and to enable communications between the vessel and those loading the vessel or accepting discharge there from to be carried out quickly and efficiently.

b). Owners guarantee that throughout the Charter period the Master shall, with the vessel's Officers and crew, unless otherwise ordered by Charterers:

i) prosecute all voyages with utmost despatch;

ii) render all customary assistance and;

iii) load and discharge cargo as rapidly as possible when required by Charterers or their Agents to do so, by night or day, but always in accordance with any applicable of the flag state.

**HOWE ROBINSON PARTNERS          12**

**RIDER CLAUSES TO CHARTER PARTY OF**
**M.V. "FALCON TRADER"**
**DATED BERGEN, 11TH DECEMBER 2020**

**Clause 71 – Vessel's Appearance**

Throughout the duration of this Charter, Owners to maintain the vessel's exterior hull, accommodation block, main deck, hatches and hatch covers in a clean and well maintained condition.  Furthermore, all Plimsoll and draft marks are to be clearly marked and readable at all times. On delivery the vessel does not have any outstanding issues with Rightship and Owners will endeavour to maintain same throughout the Charter.

**Clause 72 – Services**

Hire to include but not to be limited to the following services from the vessel's Officers and crew:

1. Docking and undocking
2. Shifting and warping of the ship during loading and/or discharge;
3. Bunkering
4. a). opening and closing of hatches in preparation for, during and after loading and discharging (including times when weather may adversely affect condition of cargo);
   b). the Officers and crew to shape up the vessel's hatches as much as possible as far as weather permits prior to vessel's arrival at loading and/or discharging port of places so as to immediately commence loading or discharging operations;

5. The crew are to sweep and/or wash the holds and any other cargo compartments between voyages to make the vessel ready in every respect for the next cargo acceptable to competent authorities (see Clause 61);

6. Supervision, direction and control of loading and discharging;

7. All overtime of the Master, Officers and crew;

8. When certain of the above services are prohibited by shore labour regulations, the Master shall comply with such regulations but shall use his best endeavours to perform the services at sea whenever possible;

9. Raising and lowering of cranes, gangway or rigging cranes, in preparation for loading and discharging;

10. Removing and stowing away (on deck on shore as instructed by Charterers and replacing of dunnage.

**Clause 73 – Representation**

Charterers will remit to Owners with each hire payment a lump sum equivalent of US$ ▇▇▇ (▇▇▇▇▇▇▇▇▇▇ United State Dollars) per month. This payment shall be in consideration of all victualling as per Line 171: cost of

RIDER CLAUSES TO CHARTER PARTY OF
M.V. "FALCON TRADER"
DATED BERGEN, 11TH DECEMBER 2020

incidentals such as cigarettes, drinks and petty expenses incurred by Master/Officers of the vessel on Charterers' behalf: the cost of radio telegrams, telexes, fax and telephone communications made by the Master/Officers to the Charterers or their Agents or Servants in direct performance of this Charter Party.

**Clause 74 – <u>Smuggling</u>**

It is strictly forbidden for the Master, Officers and crew to have any contraband or illegal merchandise onboard and any such contraband or illegal merchandise found onboard is to be confiscated by the Master. Any fines imposed on the vessel, the Owners, Master, Officers, crew on the Charterers originating from the Master and/or members of the crew by any regulatory body, particularly as regard to smuggling will be for Owners' account and the Charterers are not to be responsible for any consequences resulting from such an offence. The guarantee that bonded stores will only be purchased with permission of the Master.

**Clause 75 – <u>Charterers Equipment</u>**

The Master is to keep a record of all Charterers' gear, equipment, dunnage and/or stores supplied to the vessel and try to maintain same in good condition. Such gear, equipment, dunnage and/or stores to be returned to Charters prior to redelivery of vessel to Owners, or if requested by Charterers at any time during the period of Charter, in like good condition as supplied (fair wear and tear excepted).

Charterers lo redeliver the vessel with lashing material as on board. The vessel's cranes to be suitable for fitting and mounting of grabs for loading and discharging operations and Charterers to have the option of placing their own grabs including possible accessories and spare parts onboard the vessel at their risk and expense. The grabs will remain Charterer's property, and Charterers will remove same from the vessel prior to redelivery at their risk and expense. In case grabs are placed onboard Owners are not responsible for loss/damage to grabs by reason of marine casualty/theft.

**Clause 76 – <u>Reinstatement of Excluded Area</u>**

If circumstances applicable to any of the excluded areas or ports stipulated in Clause 40 should alter in such a manner so as to enable or permit the vessel to trade thereto, Owners and Charterers shall mutually discuss the effect of such changes with a view to reinstatement of the areas or ports concerned for permissible trading under this Charter Party. Permission for reinstatement shall not be unreasonably withheld by Owners and shall not affect the already rate of hire payable by Charterers.

**Clause 77 – <u>Letter of Indemnity</u>**

In the event that the original Bills of Lading are not available at the destination when the vessel is ready to discharge, Owners, at the request of Charterers, agree to release the cargo without presentation of the original Bills of Lading provided that, prior to delivery of cargo, Charterers have arranged to have submitted to the Owners a letter signed by Charterers only, agreeing to fully indemnify and hold Owners and/or the

**HOWE ROBINSON PARTNERS        14**

RIDER CLAUSES TO CHARTER PARTY OF
M.V. "FALCON TRADER"
DATED BERGEN, 11TH DECEMBER 2020

vessel and/or the Master and/or Agents harmless against any consequences resulting from the vessel releasing cargo without presentation of the original Bills of Lading and also to remain fully responsible for all damages and/or consequences that may arise out of the release of the cargo as above stated. Wording of such Letter of Indemnity (LOI) as per International group recommendation.

**Clause 78 – Blacklist**

Owners warrant that the vessel is not blacklisted by any country and they will not during the currency of the Charter cause the vessel to be blacklisted by any country.

Vessel has never called Cuba. Owners warrant that the vessel is not blacklisted by any Arab country nor the International Longshoremen Association or local union due to previous trading.

**Clause 79**

Deleted.

**Clause 80 – U.S.A. Sea Carrier Initiative Agreement (SCIA)**

Owners warrant that they have entered into SCIA with United States Customs either directly or via a collective representative organization recognized by U.S. Customs and they guarantee compliance with the provisions and obligations of United States Anti-Drug Act of 1986 in respect of any voyage(s) to or from and/or between U.S.A. ports during the currency of this Charter Party.

Furthermore, Owners hereby indemnify Charterers and shall hold them harmless in respect of any drug claims and/or penalties imposed by United States Authorities that are related to drags, smuggling or any other illegal activities. Any time lost by reason of any violation of United States Federal, State of local drug laws shall be off-hire.

**Clause 81 – Punctual Payment**

Referring to Lines 122, where there is any failure to make "punctual and regular payment" due to oversight or negligence of error or omission of Charterers employees, bankers or Agents or otherwise for any reason where there is absence of intention to fail to make payment as set out, Charterers shall be given by Owners two (2) banking working days' notice to rectify the failure, where so rectified the payment shall be deemed as punctual and regular payment. In any case while hire remains overdue Owners have right to withhold performance of the vessel at any time and all extra delays and additional expenses are for Charterers' account. Bimco hire non payment clause to apply.

**Clause 82 – Agency**

Charterers' Agents may act Owners' Agents to attend to minimal husbanding matters. Such as handling mail, shore pass, taxi rides and minor stores

**RIDER CLAUSES TO CHARTER PARTY OF**
**M.V. "FALCON TRADER"**
**DATED BERGEN, 11TH DECEMBER 2020**

requirements. Any expenses actually incurred thereby shall be for Owners' account. If Owners' expenses are expected to exceed USD ▆▆▆ and/or Owners require activities such as but not necessarily limited to crew repatriations, hospitalization, General Average, major stores requirements, ship repairs, Owners are either to appoint their own Agents or to pay Charterers' appointed Agents the normal additional agency fee and associated charges for any such husbandry, if so requested.

### Clause 83 – Arbitration/Litigation

Any dispute arising under the Charter shall be referred to arbitration in London by a single arbitrator to be appointed by the parties hereto. If the parties cannot agree upon the appointment of a single arbitrator, the dispute shall be settled by three arbitrators, each party appointing one arbitrator, the third being appointed by the two so chosen or by the London Maritime Arbitrators Association (LMAA) in London in the event of failing an agreement. Their decision or that of any two of them shall be final and binding upon both parties.

If either of the appointed arbitrators refuses to act or is incapable of acting. Or dies, the party who appointed him may appoint a new arbitrator in his place.

If one party fails to appoint an arbitrator, either originally, or by way of substitution as aforesaid, for seven clear days after the other party having appointed his arbitrator, has served the party making default with notice to make the appointment, the party who has appointed an arbitrator may appoint that arbitrator to act as a sole arbitrator in the reference and his award shall be binding on both parties and as if he had been appointed by consent. All arbitrators are to be conversant with shipping matters.

English law to apply.

### Clause 84 – War Cancellation

If war breaks out between any two or more of the following countries:
United Kingdom (U.K.), U.S.A., former U.S.S.R., People's Republic of China, France, Canada, Japan, Germany and Israel, directly affecting the performance of this Charter, either party (Owners/Charterers) shall have the option of cancelling this Charter, whereupon Charterers shall redeliver the vessel to Owners.

### Clause 85 – Titles of Charter Party Clauses

The titles to Clauses and Sub-Clauses of this Charter Party shall not in any way affect the interpretation thereof.

### Clause 86 – Lay-Up

Deleted

### Clause 87 – Bottom Fouling

**HOWE ROBINSON PARTNERS**          **16**

RIDER CLAUSES TO CHARTER PARTY OF
M.V. "FALCON TRADER"
DATED BERGEN, 11TH DECEMBER 2020

If the vessel's speed capacity is reduced as a result of marine growth on the vessel's bottom by reason of the vessel being in a port or at anchorage for a period in excess of fifteen (15) days, the owners are not to be responsible for reduction in speed of the vessel up until such time as her next scheduled dry-dock or in water cleaning by Charterers. Same relates to the sailing distance of less than 24 hours with full speed. Charterers take up to clean the vessel in full in any case prior redelivery at their time and expense.

**Clause 88 – Dry Docking**

The Owners shall have the option to place the vessel in dry dock in Far East (preferable in China) during the currency of this Charter for bottom cleaning and/or painting and/or repairs as required by Class or directed by circumstances.

**Clause 89**

Deleted.

**Clause 90 – Cargo Exclusions**

The vessel shall be employed in carrying lawful merchandise excluding any goods of a dangerous (as per IMO Code), injurious, inflammable or corrosive nature unless carried in accordance with the requirements or recommendations of the competent authorities of the country of the vessel's registry and of ports of shipments and discharge and of any intermediate countries or ports through whose waters the vessel must pass. Without prejudice to the foregoing the following are specifically excluded:

Livestock of any description, arms, ammunition, explosives, radioactive material and wastage, acids, ammonia, asbestos, asphalt, black power, blasting caps, bones, charcoal, naphtha, nuclear fuel, pitch in bulk, resin, motor-blocks and turnings (but scrap allowed - see below), detonator caps, dynamite, fishmeal, any kind of direct reduced iron, leather, logs (Eculogs and sawn timber always to be allowed), sunflower seed expellers, wet hides, calcium carbode, motor spirit, tar and any of it's products, creosoted goods.

Harmless river sand falling outside Group A and B cargoes of IMSBC Code is permitted during the currency of this Charter, with same to be certified so by relevant Shippers, any delay/cost/consequence caused by wet cargo/hold bilge, if any, should be Charterers' account Master/Owners have no responsibility for spillage of fine cargo from the vessel's grabs since the grabs are not designed for fine cargoes.

Salt and sulphur are allowed but sulphur if formed to a specified shape such as prills, granules, pellets, pastills or flakes can be loaded in accordance with local regulations and IMO recommendations, and maximum two shipments of salt per annum are allowed. Any expenses for lime coating to be for Charterers' account

**RIDER CLAUSES TO CHARTER PARTY OF**
**M.V. "FALCON TRADER"**
**DATED BERGEN, 11TH DECEMBER 2020**

and Charterers' responsibility. Charterers to pay crew US$ ▮ (
United States Dollars) per cargo hold for lime applying and US$ ▮ (
United States Dollars) per cargo hold as lime removing allowance. Petcoke, Salt
and Sulphur not to be loaded for last cargo.

In case of loading silica sand/alumina/borax/soda ash then it is understood that
owners are not responsible for cleanliness of vessel and vessel not to be off-hired
in case of failure to pass hold inspection however owners/crew always to
endeavour cleaning best possible between cargoes.

It is understood that petroleum coke is included and if petroleum coke is loaded
Charterers thoroughly clean the vessel's holds to Master's satisfaction at
Charterers' time and expense.

It is understood that concentrates are included provided same are carried according to
appropriate local regulations and IMO Regulations.

In the case that Charterers load nickel ore, Charterers guarantee that nickel ore is
harmless non dangerous and loaded/carried/stowed/discharged in accordance with
IMO regulations and IMSBC code,

Charterers/Shipper to provide moisture certificate and relevant proper certificate/
document to owners/master within reasonable time prior to commencement of
loading operations and during loading cargo in accordance with IMSBC Code,
during the voyage, owners have option to arrange Owners' P and I surveyor on
board to ensure safe loading of the cargo.

P and I surveyor will not disrupt loading operation unless cargo is unsuitable for
loading. If the Master feels that the appearance of the cargo (including visible signs
of moisture/water) indicates that it is not suitable for carriage, then the master to
have the option of carrying out "can test". If the result of the "can test" is not
satisfactory then the Master has the right to reject the cargo and Shippers/
Charterers shall tender suitable replacement for such rejected cargo.

Any delays due to such valid rejection will be for Charterers' time and
expense.

Charterers may load non-oily steel scrap cargoes including HMS (Heavy
Melting Scrap) 1+2 or shredded scraps but always excluding Motor Blocks
and Turnings and agree to the following conditions:

1. Charterers undertake that the loading of first layer of scrap in each bold not to
be released until touching tank top, or as close as possible thereto, and not to be
dumped and dropped during loading. Thereafter sufficient loads of scrap to be
lowered as close as possible to the bottom of each hold, so as to provide a proper
flooring and cushion to master's satisfaction, which shall not be unreasonably
withheld.

2. Plates and structures, if any, always to be lowered into vessel's holds.

**HOWE ROBINSON PARTNERS**        **18**

RIDER CLAUSES TO CHARTER PARTY OF
M.V. "FALCON TRADER"
DATED BERGEN, 11TH DECEMBER 2020

3. Charterers endeavour to arrange cushion mats on deck to provide safe protection of vessel from damage by loading/discharging scrap. Charterers and/or their servants to show due diligence when loading and discharging in order to prevent pieces of scrap from falling on vessel/vessel's deck.

4. Such cargo not to be last cargo prior to redelivery.

Charterers have option to co-stow various cargo(es) and/or grades of cargo (including Minerals) by erecting artificial separations in holds at Charterers' time/ risk and cost, and same to be removed prior redelivery also at Charterers' time/risk and cost.

Allowed to carry following cargoes:
Aluminium Nitrate - Class 5.1 UN No: 1438
Ammonium Nitrate - Class 5.1 UN No: 1942
Ammonium nitrate based fertilizer - Class 5.1 UN No: 2067
Ammonium nitrate based fertilizer - Class 9 UN No: 2071

Please see the attached Statement of Compliance for carriage in bulk issued for sister vessel. Charterers will note that Ammonium Nitrate - Class 5.1 UN No: 1942 is prohibited from loading into Cargo Holds No.4 and 5. We may allow Charterers to load the listed cargoes as per the Statement, provided that the applicable requirement stipulated therein is followed by Charterers.

Cement Loading Protective Clause

-   Charterers to supply all necessary cleaning tools, equipment and chemical (e.g. high pressure cleaner / watertobey / pneumatic sump pumps / man-lift / etc.) requested by Master and thoroughly clean including but not limited to the cargo holds/decks/superstructure/etc. to the Master's satisfaction at Charterers' risk/time/expense. Vessel's crews to perform cleaning work, if so required by Charterers, at Charterers risk/time/expense, for which Charterers to pay crew US$ ██████ (████████████ United States Dollars) per cargo hold as additional cleaning allowance.

-   Bilge water not to be discharged through ship's bilge lines but to be pumped overboard by submerge pump to be supplied by Charterers at their account and in addition if possible/if required man lift to be supplied by Charterers at their account.

-   Charterers have the option to arrange for cement feeder holes in vessel's hatchways and same to be restored at Charterers' risk/time/expense and always subject to Class surveyor's approval / Master's satisfaction.

**Clause 91**

Deleted.

## RIDER CLAUSES TO CHARTER PARTY OF
## M.V. "FALCON TRADER"
## DATED BERGEN, 11TH DECEMBER 2020

**Clause 92 – ISM Code**

Owners guarantee that the vessel complies fully with the ISM Code and is in possession of a valid Safety Management Certificate and will remain so for the entirety of her employment under the Charter Party. The Owners to provide Charterers with satisfactory evidence of compliance if required to do so and to remain fully responsible for any and all consequences arising directly or indirectly from any matters arising in connection with the vessel and the ISM Code.

**Clause 93 – Double Banking Clause as BIMCO recommended**

1. The Charterers shall have the right, where and when it is customary and safe for vessels of similar size and type to do so, to order the vessel to go, lie or remain alongside another vessel or vessels of any size or description whatsoever or to order such vessels to come and remain alongside at such safe dock, wharf, anchorage or other place for transhipment, loading or discharging of cargo and/or bunkering.

2. The Charterers shall pay for and provide such assistance and equipment as may be required to enable any of the operations mentioned in this Clause safely to be completed and shall give the Owners such advance notice as they reasonably can of the details of any such operations.

**Clause 93 – Off-Hire Adding Clause**

The Charterers have their option, at any time, add to the Time Charter period, partly or wholly, any off hire including dry-dock period(s). The rate of hire for any such added period(s) shall be calculated and paid at the same rate as that applicable during the off hire including dry dock period.

**Clause 94**

Deleted.

**Clause 95 – Seaway Bill Clause**

Charterers and/or their agents and/or their nominees have the right to issue and sign seaway bills in lieu of bills of lading, cargo to be released without charterers' presentation of this seaway bills to the master. In which case charterers shall indemnify and keep owners and the vessel harmless from all consequences arising from doing so.

Charterers are allowed to switch Bills of Lading at Shipper's convenient place at Charterers' time and cost. Before 2nd set is released, full first (1st) set duly marked Null and Void will be surrendered to Owners/ Owners' Agent and draft of 2nd set Bills of Lading will be sent to Owners for approval. Charterers are allowed to split Bills of Lading but total quantity always to remain same as per Originals Bills of Lading.

RIDER CLAUSES TO CHARTER PARTY OF
M.V. "FALCON TRADER"
DATED BERGEN, 11TH DECEMBER 2020

**Clause 96 – Grab Fitting/Operation**

Deleted.

**Clause 97 – Padeye Clause**

deleted.

**Clause 98 – Hatch Covers**

Owners allow Charterers to perform hose testing/watertight and silver nitrate testing and Ultra Sonic test of hatches during this Charter.

**Clause 99 – Steel Cargoes to the U.S.A.**

Deleted.

**Clause 100 – ISPS/MTSA Clause for Time Charter Parties 2005**

(a)  (i)   The Owners shall comply with the requirements of the International Code for the Security of Ships and of Port Facilities and the relevant amendments to Chapter XI of SOLAS (ISPS Code) relating to the Vessel and "the Company" (as defined by the ISPS Code). If trading to or from the United States or passing through United States waters, the Owners shall also comply with the requirements of the US Maritime Transportation Security Act 2002 (MTSA) relating to the Vessel and the "Owner" (as defined by the MTSA).

   (ii)   Upon request the Owners shall provide the Charterers with a copy of the relevant International Ship Security Certificate (or the Interim International Ship Security Certificate) and the full style contact details of the Company Security Officer (CSO).

   (iii)  Loss, damages, expense or delay (excluding consequential loss, damages, expense or delay) caused by failure on the part of the Owners or "the Company"/"Owner" to comply with the requirements of the ISPS Code/MTSA or this Clause shall be for the Owners' account, except as otherwise provided in this Charter Party.

(b)  (i)   The Charterers shall provide the Owners and the Master with their full style contact details and, upon request, any other information the Owners require to comply with the ISPS Code/MTSA. Where sub-letting is permitted under the terms of this Charter Party, the Charterers shall ensure that the contact details of all sub-charterers are likewise provided to the Owners and the Master. Furthermore, the Charterers shall ensure that all sub-charter parties they enter into during the period of this Charter Party contain the following provision:

### RIDER CLAUSES TO CHARTER PARTY OF
### M.V. "FALCON TRADER"
### DATED BERGEN, 11TH DECEMBER 2020

> *"The Charterers shall provide the Owners with their full style contact details and, where sub-letting is permitted under the terms of the charter party, shall ensure that the contact details of all sub-charterers are likewise provided to the Owners".*

(ii)   Loss, damages, expense or delay (excluding consequential loss, damages, expense or delay) caused by failure on the part of the Charterers to comply with this Clause shall be for the Charterers' account, except as otherwise provided in this Charter Party.

(c)   Notwithstanding anything else contained in this Charter Party all delay, costs or expenses whatsoever arising out of or related to security regulations or measures required by the port facility or any relevant authority in accordance with the ISPS Code/MTSA including, but not limited to, security guards, launch services, vessel escorts, security fees or taxes and inspections, shall be for the Charterers' account, unless such costs or expenses result solely from the negligence of the Owners, Master or crew. All measures required by the Owners to comply with the Ship Security Plan shall be for the Owners' account.

(d)   If either party makes any payment which is for the other party's account according to this Clause, the other party shall indemnify the paying party.

### Clause 101 – AMS Clause

(a). If the vessel loads or carries cargo destined for the US or passing through US ports in transit, the Charterers shall comply with the current US Customs regulations (19 CFR 4.7) or any subsequent amendments thereto and shall undertake the role of carrier for the purposes of such regulations and shall, in their own name, time and expense:

i). Have in place a SCAC (Standard Carrier Alpha Code);
ii). Have in place an ICB (International Carrier Bond);
iii). Provide the Owners with a timely confirmation of i) and ii) above; and
iv). Submit a cargo declaration by AMS (Automated Manifest System) to the US Customs and provide the Owners at the same time with a copy thereof.

(b). The Charterers assume liability for and shall indemnify, defend and bold harmless the Owners against any loss and/or damage whatsoever (including consequential Joss and/or damage) and/or any expenses, fines, penalties and all other claims of whatsoever nature, including but not limited to legal costs, arising from the Charterers' failure to comply with any of the provisions of sub-clause (a). Should such failure result in any delay then, notwithstanding any provision in this Charter Party to tbe contrary, the Vessel shall remain on hire.

(c). If the Charterers' ICB is used to meet any penalties, duties, taxes or other charges which are solely the responsibility of the Owners. the Owners shall promptly reimburse the Charterers for those amounts.

## RIDER CLAUSES TO CHARTER PARTY OF
## M.V. "FALCON TRADER"
## DATED BERGEN, 11TH DECEMBER 2020

(d). The assumption of the role of carrier by the Charterers pursuant to this Clause and for the purpose of the US Customs Regulations (19 CFR 4.7) shall be without prejudice to the identity of carrier under any bill of lading, other contract, law or regulation.

**Clause 102 – BIMCO War Risks Clause for Time Charters, 2013 (Code Name: CONWARTIME 2013).**

(a)  For the purpose of this Clause, the words:
   (i)  "Owners" shall include the shipowners, bareboat charterers, disponent owners, managers or other operators who are charged with the management of the Vessel, and the Master; and

   (ii)  "War Risks" shall include any actual, threatened or reported:

   war, act of war, civil war or hostilities; revolution; rebellion; civil commotion; warlike operations; laying of mines; acts of piracy and/or violent robbery and/or capture/seizure (hereinafter "Piracy"); acts of terrorists; acts of hostility or malicious damage; blockades (whether imposed against all vessels or imposed selectively against vessels of certain flags or ownership, or against certain cargoes or crews or otherwise howsoever), by any person, body, terrorist or political group, or the government of any state or territory whether recognised or not, which, in the reasonable judgement of the Master and/or the Owners, may be dangerous or may become dangerous to the Vessel, cargo, crew or other persons on board the Vessel.

(b)  The Vessel shall not be obliged to proceed or required to continue to or through, any port, place, area or zone, or any waterway or canal (hereinafter "Area"), where it appears that the Vessel, cargo, crew or other persons on board the Vessel, in the reasonable judgement of the Master and/or the Owners, may be exposed to War Risks whether such risk existed at the time of entering into this Charter Party or occurred thereafter. Should the Vessel be within any such place as aforesaid, which only becomes dangerous, or may become dangerous, after entry into it, the Vessel shall be at liberty to leave it.

(c)  The Vessel shall not be required to load contraband cargo, or to pass through any blockade as set out in Sub-clause (a), or to proceed to an Area where it may be subject to search and/or confiscation by a belligerent.

(d)  If the Vessel proceeds to or through an Area exposed to War Risks, the Charterers shall reimburse to the Owners any additional premiums required by the Owners' insurers and the costs of any additional insurances that the Owners reasonably require in connection with War Risks.

(e)  All payments arising under Sub-clause (d) shall be settled within fifteen (15) days of receipt of Owners' supported invoices or on redelivery, whichever occurs first.

(f)  If the Owners become liable under the terms of employment to pay to the crew any bonus or additional wages in respect of sailing into an Area which is dangerous in

**HOWE ROBINSON PARTNERS**          **23**

RIDER CLAUSES TO CHARTER PARTY OF
M.V. "FALCON TRADER"
DATED BERGEN, 11TH DECEMBER 2020

the manner defined by the said terms, then the actual bonus or additional wages paid shall be reimbursed to the Owners by the Charterers at the same time as the next payment of hire is due, or upon redelivery, whichever occurs first.

(g)  The Vessel shall have liberty:

    (i)  to comply with all orders, directions, recommendations or advice as to departure, arrival, routes, sailing in convoy, ports of call, stoppages, destinations, discharge of cargo, delivery, or in any other way whatsoever, which are given by the government of the nation under whose flag the Vessel sails, or other government to whose laws the Owners are subject, or any other government of any state or territory whether recognised or not, body or group whatsoever acting with the power to compel compliance with their orders or directions;

    (ii)  to comply with the requirements of the Owners' insurers under the terms of the Vessel's insurance(s);

    (iii) to comply with the terms of any resolution of the Security Council of the United Nations, the effective orders of any other Supranational body which has the right to issue and give the same, and with national laws aimed at enforcing the same to which the Owners are subject, and to obey the orders and directions of those who are charged with their enforcement;

    (iv) to discharge at any alternative port any cargo or part thereof which may expose the Vessel to being held liable as a contraband carrier;

    (v)  to call at any alternative port to change the crew or any part thereof or other persons on board the Vessel when there is reason to believe that they may be subject to internment, imprisonment, detention or similar measures.

(h)  If in accordance with their rights under the foregoing provisions of this Clause, the Owners shall refuse to proceed to the loading or discharging ports, or any one or more of them, they shall immediately inform the Charterers. No cargo shall be discharged at any alternative port without first giving the Charterers notice of the Owners' intention to do so and requesting them to nominate a safe port for such discharge. Failing such nomination by the Charterers within 48 hours of the receipt of such notice and request, the Owners may discharge the cargo at any safe port of their own choice. All costs, risk and expenses for the alternative discharge shall be for the Charterers' account.

(i)  The Charterers shall indemnify the Owners for claims arising out of the Vessel proceeding in accordance with any of the provisions of Sub-clauses (b) to (h) which are made under any bills of lading, waybills or other documents evidencing contracts of carriage.

(j)  When acting in accordance with any of the provisions of Sub-clauses (b) to (h) of this Clause anything is done or not done, such shall not be deemed a deviation, but shall be considered as due fulfilment of this Charter Party.

**HOWE ROBINSON PARTNERS**          24

**RIDER CLAUSES TO CHARTER PARTY OF**
**M.V. "FALCON TRADER"**
**DATED BERGEN, 11TH DECEMBER 2020**

**Clause 103 – <u>Asian Gypsy Moth (AGM) Clause</u>**

Calling at Gypsy Moth high risk port in Russia (Pacific)/Japan/South Korea/China during the high risk season is permitted provided;

- Charterers should arrange the exemption certificate of Gypsy Moth (also known as phytosanitary certificate), which to satisfy the plant protection organizations of including but not limited to New Zealand, Australia, U.S.A. and Canada before vessels departure from the port at charters' time and costs.

- Any costs/delay/consequence due to the vessel not being able to enter any port or not being passed for loading/discharge cargo by port authority on account of Gypsy Moth infestation to be for Charterers' account**.**

**Clause 104 – <u>Naming Ship</u>**

Deleted.


**Clause 105 – <u>BIMCO Electronic Bills of Lading Clause</u>**

(a) At the Charterers' option, Bills of Lading, Waybills and delivery orders referred to in this Charter Party shall be issued, signed and transmitted in electronic form with the same effect as their paper equivalent.

(b) For the purpose of Sub-clause (a) the Owners shall subscribe to Electronic (Paperless) Trading Systems and Charterers, at Owners choice, may use such system (including but not limited to confirmation of draft EBL and it's issuance) without Owners' involvement at Charterers' sole and full responsibility/time/expenses, provided such systems are approved by the International Group of P&I Clubs. Any fees incurred in subscribing to or for using such systems shall be for the Charterers'
account.

(c) The Charterers agree to hold the Owner harmless in respect of any additional liability arising from the use of the systems referred to in Sub-clause (b), to the extent that such liability does not arise from Owners' negligence.

(d) Deleted.

**Clause 106 – <u>BIMCO Sanctions Clause for Time Charter Parties 2020*</u>**

(a) For the purposes of this Clause:
"Sanctioned Activity" means any activity, service, carriage, trade or voyage subject to sanctions imposed by a Sanctioning Authority.
"Sanctioning Authority" means the United Nations, European Union, United Kingdom, United States of America or any other applicable competent authority or government.

**HOWE ROBINSON PARTNERS          25**

RIDER CLAUSES TO CHARTER PARTY OF
M.V. "FALCON TRADER"
DATED BERGEN, 11TH DECEMBER 2020

"Sanctioned Party" means any persons, entities, bodies, or vessels designated by a
Sanctioning Authority.

(b) Owners warrant that at the date of this Charter Party and throughout its duration
they, the registered owners, bareboat charterers, intermediate disponent owners,
managers, the Vessel and any substitute are not a Sanctioned Party.

(c) Charterers warrant that at the date of this Charter Party and throughout its duration
they and any Sub-charterers, shippers, receivers and cargo interests are not a
Sanctioned Party.

(d) If at any time either party is in breach of subclause (b) or (c) above then the party
not in breach may terminate and/or claim damages resulting from the breach.

(e) Charterers shall not give any orders for the employment of the Vessel which
involves a Sanctioned Party or a Sanctioned Activity.

**Clause 106 – continued**

(f) If the Vessel is already performing an employment which involves a Sanctioned
Party or is a Sanctioned Activity, without prejudice to any other rights that may be
available in subclause (d) above, Owners shall have the right to refuse to proceed with
the employment and Charterers shall be obliged to issue alternative voyage orders
within forty-eight (48) hours of receipt of Owners' notification of their refusal to
proceed. If Charterers do not issue such alternative voyage orders Owners may
discharge any cargo already loaded at any safe port or place (including the port or
place of loading). The Vessel shall remain on hire throughout and Charterers shall be
responsible for all additional costs and expenses.

(g) If in compliance with subclause (f) above anything is done or not done, such shall
not be deemed a deviation, but shall be considered due fulfilment of this Charter
Party.

(h) Charterers shall indemnify Owners against any and all claims brought by the
owners of the cargo and/or the holders of bills of lading, waybills or other documents
evidencing contracts of carriage and/or Sub-charterers against Owners by reason of
Owners' compliance with such alternative voyage orders or discharge of the cargo in
accordance with Sub-clause (f) above.

(i) Charterers shall procure that this Clause shall be incorporated into all Sub-charters
and bills of lading, waybills or other documents evidencing contracts of carriage
issued pursuant to this Charter Party.

**Clause 107 – BIMCO Cargo Fumigation Clause for Charter Parties**

a)   The Charterers shall have the option to fumigate the cargo in the Vessel's holds in
port and/or at anchorage and/or in transit. Such fumigation shall be performed
always in accordance with IMO Recommendations on the Safe Use of Pesticides

RIDER CLAUSES TO CHARTER PARTY OF
M.V. "FALCON TRADER"
DATED BERGEN, 11TH DECEMBER 2020

in Ships applicable to the Fumigation of Cargo Holds, MSC.1/Circ.1264 (IMO Recommendations) and any subsequent revisions.

b) Fumigation shall be at the Charterers' risk and responsibility. Any costs and expenses incurred in connection with or as a result of such fumigation, including but not limited to gas detection equipment, respiratory protective equipment and crew training, shall be for the Charterers' account. The Charterers shall indemnify the Owners for any liabilities, losses or costs arising out of or resulting from cargo fumigation.

c) If local authorities or IMO Recommendations require the crew to be accommodated ashore as a result of fumigation ordered by the Charterers, all costs and expenses reasonably incurred in connection thereto including, but not limited to, transportation, accommodation and victualling shall be for Charterers' account.

Clause 107 – continued

d) At the discharging port or place all fumigant remains, residues and fumigation equipment shall be removed from the vessel as soon as possible and disposed by the Charterers or their servants at Charterers' risk, responsibility, cost and expense in accordance with MARPOL Annex V or any other applicable rules relating to the disposal of such materials.

e) *i) All time lost to the Owners in connection with or as a result of fumigation performed in accordance with sub-clause (a) shall be for Charterers' account and the vessel shall not be off-hire.

   *ii) All time lost to the Owners in connection with or as a result of fumigation performed in accordance with sub-clause (a) prior to commencement of laytime and/or after cessation of laytime or time on demurrage shall be considered as detention and shall be compensated by Charterers at the demurrage rate stipulated in the Charter Party. Any unused laytime shall be deducted from such detention, in which case any despatch payable shall be reduced accordingly.

   *Sub-clauses i) and ii) shall apply to time charter parties and voyage charter parties, respectively.

f) The exercise by the Charterers of the option to fumigate the cargo under this Clause shall not be construed as evidence as to the condition of the cargo at the time of shipment, and the Master or the Owners are not to clause bills of lading by reason of fumigation only.

g) In the event of a conflict between the provisions of this Clause and any implied or express provision of the Charter Party, this Clause shall prevail to the extent of such conflict, but no further.

HOWE ROBINSON PARTNERS        27

## RIDER CLAUSES TO CHARTER PARTY OF
## M.V. "FALCON TRADER"
## DATED BERGEN, 11TH DECEMBER 2020

**Clause 108 – Global Sulphur Cap Regulations 2020**

Notwithstanding the foregoing, the Charterers and the Owner shall discuss in good faith how to comply_ with the new regulation of 0.5% global sulphur cap, which shall come into force from January 1st 2020, until delivery of the vessel.

The Charterers shall supply fuels of such specifications and grades to permit the vessel, at all times, to comply with the said regulation and the Owner shall not be required to modify the vessel for applying to that regulation. In addition, if the fuel requires additional treatment for the Owners, including but not limited to putting additives, the Owner and the Charterers shall discuss the operation of burning those fuel in good faith.

If there is a contradiction between this Clause and Charter Party including description, this Clause shall supersede.

**Clause 109 – Deck Cargo Clause**

Not permitted .

**Clause 110 - BIMCO Piracy Clause for Time Charter Parties 2013 (amended)**

(a) Deleted

(b) Deleted

(c) If the Owners consent or if the Vessel proceeds to or through an Area exposed to the risk of Piracy the Owners shall have the liberty:

(i) to take reasonable preventative measures to protect the Vessel, crew and cargo including but not limited to re-routeing within the Area, proceeding in convoy, using escorts, avoiding day or night navigation, adjusting speed or course, or engaging security personnel and/or deploying equipment on or about the Vessel (including embarkation/disembarkation).

(ii) to comply with the requirements of the Owners' insurers under the terms of the Vessel's insurance(s);

(iii) to comply with all orders, directions, recommendations or advice given by the Government of the Nation under whose flag the Vessel sails, or other Government to whose laws the Owners are subject, or any other Government, body or group (including military authorities) whatsoever acting with the power to compel compliance with their orders or directions; and

(iv) to comply with the terms of any resolution of the Security Council of the United Nations, the effective orders of any other Supranational body which has the right to issue and give the same, and with national laws aimed at enforcing the same to which

## RIDER CLAUSES TO CHARTER PARTY OF
## M.V. "FALCON TRADER"
## DATED BERGEN, 11TH DECEMBER 2020

the Owners are subject, and to obey the orders and directions of those who are charged with their enforcement;

and the Charterers shall indemnify the Owners for any claims from holders of Bills of Lading or third parties caused by the Vessel proceeding as aforesaid, save to the extent that such claims are covered by additional insurance as provided in sub-clause (d)(iii).

(d) Costs
(i) If the Vessel proceeds to or through an Area where due to risk of Piracy additional costs will be incurred including but not limited to additional personnel and preventative measures to avoid Piracy, such reasonable costs shall be for the Charterers' account. Any time lost waiting for convoys, following recommended routeing, timing, or reducing speed or taking measures to minimise risk, shall be for the Charterers' account and the Vessel shall remain on hire;

**Clause 110 – continued**

(ii) If the Owners become liable under the terms of employment to pay to the crew any bonus or additional wages in respect of sailing into an area which is dangerous in the manner defined by the said terms, then the actual bonus or additional wages paid shall be reimbursed to the Owners by the Charterers;

(iii) If the Vessel proceeds to or through an Area exposed to the risk of Piracy, the Charterers shall reimburse to the Owners any additional premiums required by the Owners' insurers and the costs of any additional insurances that the Owners reasonably require in connection with Piracy risks which may include but not be limited to War Loss of Hire and/or maritime K&R.

(iv) All payments arising under Sub-clause (d) shall be settled within fifteen (15) days of receipt of Owners' supported invoices or on redelivery, whichever occurs first.

(e) If the Vessel is attacked by pirates any time lost shall be for the account of the Charterers and the Vessel shall remain on hire.

(f) If the Vessel is seized by pirates the Owners shall keep the Charterers closely informed of the efforts made to have the Vessel released. The Vessel shall remain on hire throughout the seizure and the Charterers' obligations shall remain unaffected, except that hire payments shall cease as of the ninety-first (91st) day after the seizure until release. The Charterers shall pay hire, or if the Vessel has been redelivered, the equivalent of Charter Party hire, for any time lost in making good any damage and deterioration resulting from the seizure. The Charterers shall not be liable for late redelivery under this Charter Party resulting from the seizure of the Vessel.

(g) If in compliance with this Clause anything is done or not done, such shall not be deemed a deviation, but shall be considered as due fulfilment of this Charter Party. In the event of a conflict between the provisions of this Clause and any implied or express provision of the Charter Party, this Clause shall prevail.

**HOWE ROBINSON PARTNERS**          29

**RIDER CLAUSES TO CHARTER PARTY OF**
**M.V. "FALCON TRADER"**
**DATED BERGEN, 11TH DECEMBER 2020**

*\*\*END\*\**

From: "Oino Shipbrokers Co. Ltd." <oino@kakoulidis.gr>
To: "Oino Shipbrokers Co. Ltd." <oino@kakoulidis.gr>
Subject: TAC IMOLA / HANWIN SHIPPING - CLEAN RECAP
Date: Tue, 02 Nov 2021 20:47:48 +0200
X-Mailer: ThinkCompass ORCA Dispatcher v2

OINO SHIPBROKERS CO.LTD.
ATHENS - SINGAPORE - SEOUL - MELBOURNE
14, Kifisias Av. & Halepa 151 25 Marousi, Greece - Tel +30-210 4290610
E-Mail oino@kakoulidis.gr | www.oinoshipbrokers.com


Date: 2/11/2021 8:47:43 ?? GMT+02:00   Our Ref: 23566185-GK


dmytryi/george

Pls find herebelow the clean recap

c/p dated 03/11/21

kindly check and confirm all is as per yr notes   and thanks for yr efforts leading to this new fixture !

/////

Performing vsl:


MV TAC IMOLA
PANAMA FLAG, BUILT 2021, JIANGMEN NANYANG SHIP ENGINEERING CO., LTD./CHINA,
BV CLASS FUEL EFFICIENT,SHALLOW DRAFT, OPEN HATCH BULK CARRIER
ABT. 40,261 MT DEADWEIGHT ON 10.8 M SSW
L.O.A. / BEAM 179.9/30.0 METERS 5 HOLDS/HATCHES -
4 X 30.5 METRIC TONNES CRANES
4 X 12CBM CAP GRABS GUVEN
GRAIN/BALE 50317/49126CBM

AT SEA - SPEED AND CONSUMPTION:

SERVICE SPEED:
LADEN    : ABOUT 13.50 KTS ON ABOUT 20.50 MT/DAY IFO
BALLAST : ABOUT 14.00 KTS ON ABOUT 21.50MT/DAY IFO

ECO SPEED:
LADEN     : ABOUT 12.00 KTS ON ABOUT 15 MT/DAY IFO
BALLAST   : ABOUT 12.50 KTS ON ABOUT 15 MT/DAY IFO

AT PORT:
WORKING / IDLE: ABT 5.2/2.5 MTS IFO

SPEED AND CONSUMPTION ARE GIVEN BASIS UP TO BEAUFORT 4, NO ADVERSE CURRENT AND DOUGLAS
SEA STATE 3.

VESSEL HAS LIBERTY TO USE MDO FOR MANOEUVRING IN NARROW WATERS, CANALS, RIVERS, STARTING
ENGINES AND ON ENTERING/LEAVING PORTS AND ADVERSE WEATHER OR WHEN THE GENERATOR IS ON
LOW LOAD. VESSEL ALSO HAS LIBERTY TO USE MDO/MGO IN HER MAIN, AUXILIARY ENGINES & BOILER
WHEN REQUIRED BYLOCAL REGULATIONS.

ADA

pls adv full tc particular AS ABV
inclu baltic 99 questionnaire SENT ELIER BQNAIRE OF SISTER VSL

Pls provide G.A plan,Mid Ship Section, Capacity Plan,TANKTOP STRENGTH,FLOOR TANKTOP MEASUREMENT
: ALL SENT ELIER (FOR SISTER VSL)

for
- Owrs:
Disponent owner/hire beneficiary/Charterers' counter-party:
Transatlantica Commodities Pte Ltd
10 Anson Road No 13-11
International Plaza
Singapore 079903
Company Registration No. 201725180D

HEAD OWS : WILL BE AVAIL once registry cert available

- Chtrs: Hanwin Shipping limited
Registered Company Address:DEPT 906, 196 HIGH ROAD, WOOD GREEN, LONDON, UNITED KINGDOM N22
8HH Trading Address:ROOM 802, MAGNOLIA PLAZA, NO.777 HONGQIAO ROAD, SHANGHAI, CHINA
Telephone:+86-21-65223326
Fax:+86-21-65222092
email:pubilc@hanwinshipping.com

PART I:
1.vsl's present position, itinerary, name/full style of current agents
EXPECTED TO BE LAUNCHED 11/13 NOV AGW/WP/UCE

2.last ten cgo NIL (VSL NB)

3.last ten ports of call    (NIL (VSL NB)

PART II:

1. head owners: full style/tel/fax/e-mail/pic : AS ABV
2. managers: full style/tel/fax/e-mail/pic : AS ABV
3. disp owners(fm 1st to current): AS ABV
4. h.owners p&i club, TO BE ADVISED ONCE KNOWN
disp owners p&i club: LONDON PANDI

5. master's name/crew no. & nationality : REV (BTW FR GUIDANCE ONLY INT CREW WILL BE CHINESE)

PART III:

-- p&i club: owners g'tee that vsl is covered (including oil pollution & wreck removal) by a p&i club which is a full member of the international group of p&i clubs association and will remain so throughout the duration of this c/p.

-- class: owners g'tee that vsl is classed lloyds 100a1 lmc or equivalent and will remain so throughout the duration of this c/p.

-- owners gtee vsl will not to be sold/scraped before or during this c/p time, also no dry docking during this c/p duration.

-- owners gtee vsl not black listed by c/p trading countries due to vsl's age/flag/ownership/manager/operators whatsoever and with ahl/wwf/itf in order.

-- owners gtee that vsl's hatch covers are to be watertight all throughout this charter period and if any hatch cover found defective,same to be rectified at owners'time and exps to independent surveyor's satisfaction.
    chtrs hv rights to carry out hose test to all hatches at any time during the c/p duration.

-- owners gtee vsl's holds on dely to be clean swept and washed down by fresh water and dried up so as to receive chtrs intended cgos in all respects, free of salt, loose rust scale and previous cgo residue to surveyor's satisfaction.
    if the vsl fails to pass any hold inspection,the whole vsl shud be placed off-hire from the time of rejection until the vsl passes the same inspection again and any exps/damages incurred thereby to be for owners'acct.

-- owners gtee vsl's all certificates and all equipments shall comply with the law and regulations of all the calling ports/countries and remain valid/efficient during this c/p,failure of which due to vessels/owners reason,all loss or damage(including delay) resulting therefrom shall be for owners acct.

-- owners gtee vsl's cranes/derricks/gears/grabs all in good working condition and suitable fr loadg/dischg chtrs intention cgo during this cp .
    In the event of breakdown of a crane or cranes by reason of disablement or insufficient power, the hire to be reduced pro-rata for the period of such inefficiency in relation to the number of cranes available. However, should a breakdown of a crane or cranes result in Charterers being unable to work at a particular hatch, then hire is to be reduced pro-rata in relation to the number of hatches workable.

Owners are to pay, in addition the cost of labour affected by the breakdown, either stood off or additionally engaged. If required by the Charterers, the Owners are to bear the cost of hiring shore gear in lieu thereof . but the vessel is to be on-hire whilst such shore appliances are available.

-- owners gtee that vsl's holds are to be clear of any fitting/super structures such as car deck,curtain plates,containerr fittings whatsoever,and it is suitable in every respect for chtrs to load intention cgo and vsl is suitable for grab/bulldozer dischg and dischg at anchorage.

-- owners allow chtrs to disch/release cgo w/o presentation of original bs/l against chtrs single loi in owners p&i club wording with chtrs endorsement only.
ADD: LOI TO BE SIGNED BY DIRECTOR AND STAMPED BY OFF COLORED COMPANY STAMP, OR SIGNED BY AUTH PERSON WITH POA

-- owners allow chtrs to change dischg port against chtrs single loi in owners p&i club wording with chtrs endorsement only.
ADD: LOI TO BE SIGNED BY DIRECTOR AND STAMPED BY OFF COLORED COMPANY STAMP, OR SIGNED BY AUTH PERSON WITH POA

-- owners allow chtrs a/o their agent to sign/release bs/l on behalf of master in accordance with mates receipt.

-- owners gtee to give 15(IF APPLICABLE)/10/7/5 days approximate delivery notice flwd by 3/2/1 days definite delivery notice chtrs gtee to give 20/15/10/7/5 days approximate redelivery notice flwd by 3/2/1 days definite redelivery notice

-- time of dely/rdly to be based on gmt.hire calculation to be also based on gmt.lycn to be based on local time

--Chrts has the option to stow 3 tiers of coils with unit weight of 10 mt OR 2 tiers of coils with unit weight 15mt but always upto vsl tanktop strength.
  AS PER STEEL LOADING MANUAL (PLS SEE ATTACHED)

--owners/master cfm chtrs lashing/dunnage plan - confirm lashing plan and owners shall confirm dunnage size of 100*100 mm
--owners/master cfm chtrs pre-stowage plan.- confirm

--owners allow chtrs to loading and discharging during rain against chtrs loi
SUB HEAD OWS APPROVAL - OWS TO ENDEAVOUR TO OBTAIN HEAD OWS APPROVAL ASAP

--owners gtee all crew members are covid-19 free before arrival 1st loading port.
In case any crew is tested positive of covid-19 upon vessel arrival 1st loading port,whatsoever lost and related expenses/cost incurred in connection to the same shall be for owners acct and vessel shall be off-hire.

PART IV:

1. dely:dlosp Hongkong, atdnshinc

2. lay/can:14-18 Nov 2021

3.    1 tct via sas,sbs,sps,aaaa,awinl with lawful & harmless cgo,dur abt 65 days wog
Pls adv cgo/trading exclusions,tbma
AS PER BTB CGO TRADING EXCLUSION,

it's expressly agreed by owrs that vsl is allowed to call China,Korea,Japan,USA
OK

Clause 97 – Padeye Clause
Charterers have the option to weld pad-eyes on deck/hatch cover/in holds (except FO tank-top) at
Charterers' time/expense and same to be removed prior to redelivery.
however charterers can remain all pad-eyes on board with 30 usd per unit and to be paid with 3rd hire

4. redely:    dlosp 1sp    Baltimore - Savannah range ,PICO atdnshinc

5. hire: usd          pdpr diot for first 65 days, thereafter usd          pdpr

6. hire payment :
1st hire 20days no bunkers in three bd on delivery + ilohc.
Hire THEREAFTER to be paid 15 days in advance, or up to est redelivery as per latest available prospects.
Ows settle directly all ows expenses, no deductions from hire.
Brob on redly abt same QTY/GRADES as on dely (abt = +/-5 pct)

7.    ilohc:usd      lumpsum EXCL removal/disposal all dunnage/lashing materials/debris/etc
c/e/v: chtrs to pay usd      per 30 DYS PR    for covering all cable, communications, victualling,
representation and entertainment

8. bunker cls:
bod: Abt 400 mt vlsfo PLUS abt 150 mt lsmgo
bor abt same quantity and GRADES as exactly bod (abt = +/-5 pct)

Bunker prices:    $    vlsfo / $    lsmgo

chtrs have option to bunker iso 8217 2010
ADD: But ALWAYS complying with latest sulphur requirements

9. arbitration if any in london with english law to apply.

10. 3.75pct add comm to chtrs + 1.25% to oino shipbrokers (pble by ows)

11. other terms/conditions as per owners btb cp attached with logical alterations in line with mainterms
except:-

Rider

Clause 38 – Bunkers on Delivery and Redelivery
Delete"but always sufficient to reach nearest main bunkering port."

Clause 39 – Cancellation due to Extended Off-Hire
Replace 45 (forty five) days by 30(thirty) days

Clause 54 – Inter-Club Agreement
Delete in full and replaced by Interclub agreement 1996 or subsequent amendments

Clause 87 – Bottom Fouling
Replace fifteen(15) days by twenty-two(22)days
Add"Chtrs have option to redeliver the vessel at lumpsum usd 65,000 without cleaning the vessel bottom which to be advised 7 days prior redelivery."

Add"Owners gtee vessel is equipped with water-ballast system"

12. ALL SUBJ LIFTED

end

BEST REGARDS,
*******************

DISCLAIMER :
This e-mail message and its attachments are for the sole use of the intended recipients and may contain information subject to legal restrictions. If you are not the intended recipient you are hereby notified that any unauthorized reading, use, distribution, printing, copying or taking any action in regard of the contents of this e-mail message and/or attachments to it are strictly prohibited. Please notify the sender immediately and destroy all copies of this message and any attachments.