**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Northern Division*

| | | |
|---|---|---|
| HAWTHORNE INDUSTRIAL PRODUCTS INC. for its own account as consignee of certain cargo and as agent for GENESIS PRODUCTS INC., GREAT LAKES LAMINATION, GREAT LAKES FOREST PRODUCTS, and FUSION WOOD PRODUCTS, | § § § § § § § § | CIVIL NO. 1:22-cv-01376-RDB |
| Plaintiffs | § § | |
| v. | § § | |
| M/V TAC IMOLA, IMO No. 9932103 her engines, boilers, tackle, etc., *in rem*, RATU SHIPPING CO. SA, NISSHIN SHIPPING CO LTD, FLEET MANAGEMENT LTD-HKG, TRANSATLANTICA COMMODITIES PTE. LTD., and HANWIN SHIPPING LIMITED, *in personam*, | § § § § § § § § § § § § | |
| Defendants | § | |

## REPLY IN SUPPORT OF CARGO INTERESTS' MOTION FOR LEAVE TO FILE A SURREPLY

Plaintiffs Hawthorne Industrial Products, Inc. ("Hawthorne"), for its own account as consignee of certain cargo and as authorized agent for Genesis Products Inc. ("Genesis"), Great Lakes Lamination ("GLL"), Great Lakes Forest Products ("GLFP"), and Fusion Wood Products ("Fusion" and, all together, the "Cargo Interests"), hereby file their Reply in Support of Their Motion for Leave to File a Surreply (ECF No. 57).

Ratu Shipping Co., SA's ("Ratu" or "Owner") Opposition fails to address the factors affecting the Court's discretion regarding allowance of a surreply, and instead immediately launches into an attempted rebuttal on the merits of the positions Hawthorne has advocated on

the basis of new evidence in support of its application for leave to file a surreply. Owner has thereby implicitly conceded that a surreply is appropriate.

## ARGUMENT

I. **Standard for Surreply**

Owner has made no real effort to argue that Cargo Interests have not met the standards this Court has set for allowance of surreplies, instead attacking the substance of Cargo Interests' new arguments that are based on evidence not available to them at the time they were obligated to file their Opposition to the Motion to Stay.

The standard for surreply in the District of Maryland is well understood. "Surreplies may be permitted when the moving party would be unable to contest matters presented to the court for the first time in the opposing party's reply." *Khoury v. Meserve*, 268 F. Supp. 2d 600, 605 (D. Md. 2003) *aff'd*, 85 F. App'x 960 (4th Cir. 2004). Courts look to whether fairness and "the efficient administration of justice" support the request for permission to file a surreply. *Love v. Smith*, 2005 WL 1163143, at *4 (D. Md. May 17, 2005). Additionally, courts look to whether the proposed surreply "provides context for [other] evidence that will aid the Court in reaching a just decision." *Minter v. Wells Fargo Bank, N.A..*, 283 F.R.D. 268, 270 n.3 (D. Md. 2012).

Here, the relevant charter party agreements, which Cargo Interests have contended from the outset were critical to the analysis of Owner's application for a stay, were not produced until after the close of briefing. Additionally, in its reply to the Opposition to the Motion to Stay, Owner for the first time contends that it does not need to prove the booking note is authentic, when its earlier efforts were directed to authentication by counsel.

Likewise, Owner's response to Cargo Interests' position on the role of the New York Convention should allow a surreply on the basis that Owner, in its opening papers, did not

address the issue; had it done so, Cargo Interests could have put forward the position it now seeks to argue in its Opposition and a surreply on this issue would not be necessary.

As to discovery, as discussed below, Owner has taken a new position, finally recognizing that incorporation of the booking note into the bills of lading does indeed turn on the intent of the parties – a position not previously taken.

Cargo Interests submit that the conditions for allowance of a surreply have been met.

II.    **As to the Argument that the Charters are Irrelevant** (ECF No. 68 at 4-9)

Owner premises this argument on the proposition that (a) only the vessel *in rem* is bound by the bills of lading and, therefore, (b) the activity and intent of Ratu as owner *in personam* in fixing the Headcharter is not relevant. Owner then continues the effort to persuade the Court that the booking note with its arbitration clause is incorporated into the bill of lading contract by the mere reference to that document on the face of the bill, notwithstanding whether the parties intended such a result. This is the very point at issue on the Motion to Stay. Simply put, Owner's position would preclude the Court from pursing the fundamental inquiry – the intent of the parties.

Owner's position wrongly ignores the basic principle that contracts reflect the intent of the parties.

First, let us dispose of a preliminary point. With respect to issuance of bills of lading, review of clause 8 in both the Headcharter (ECF No. 68-1) and Subcharter (ECF No. 68-2) disclose that the terms for issuance of the bills are "back to back."  Each authorizes the respective charterer to issue bills of lading.  So it appears that co-defendant Hanwin Shipping Limited ("Hanwin"), as subcharterer, had issued the bills **pursuant to the authority granted in**

**the chain of charters.**[1] Owners would overlook the origin of the bills, notwithstanding that it is the bills upon which the *in rem* movant relies in its Motion to Stay.

Since the vessel *in rem* is relying on the bills, and the vessel can act only through its owners and operators, the distinction Owner wants to draw between the vessel *in rem* and the owner *in personam* cannot withstand even the slightest scrutiny.

Now to the construction of the contracts. Bills of lading are maritime contracts and these contracts are to be construed like any other contract.  Indeed, the Supreme Court recently reiterated this fundamental rule in *Citgo Asphalt Refining Co v. Frescati Shipping Co. Ltd,* 140 S. Ct. 1081, 206 L. Ed. 2d 391 (2020), stating:

> "Maritime contracts "must be construed like any other contracts: by their terms and consistent with the intent of the parties." *Norfolk Southern R. Co. v. James N. Kirby, Pty Ltd.*, 543 U.S. 14, 31, 125 S.Ct. 385, 160 L.Ed.2d 283 (2004); see also 2 T. Schoenbaum, Admiralty & Maritime Law § 11:2, p. 7 (6th ed. 2018) ("[F]ederal maritime law includes general principles of contract law"). "'Where the words of a contract in writing are clear and unambiguous, its meaning is to be ascertained in accordance with its plainly expressed

---

[1] As an aside, it should be noted that Ratu as well as co-defendants Transatlantica Commodities Pte Ltd ("Transatlantica") and Hanwin have all expressly denied issuing the bills of lading, notwithstanding the clear requirements of their back-to-back charters, thereby making the origin, authenticity, and intent of the bills of lading questionable at best.  For example: Ratu denies having authorized Zhenhua to issue the bills of lading as agent for and on behalf of the Vessel [ECF No. 34, ¶ 16], effectively so that it cannot be bound by their terms *in personam* [ECF No. 51].  Yet, here, in its restricted capacity as owner of the Vessel, Ratu simultaneously relies on the terms of the same bills of lading that it claims were unauthorized when trying to divert *in rem* claims against the vessel to foreign arbitration [ECF No. 22].

Transatlantica has also denied having issued the bills of lading [ECF No. 46, ¶ 16].  And, subcharterer Hanwin says that it did not issue the bills of lading either [ECF No. 40-1].  In fact, Hanwin, has made representations that "that the carrier under the B/Ls, and party to the aforementioned contract of carriage, is the Owners of the Vessel." [ECF No. 40-1, ¶ 4].  These inconsistent and/or conflicting representations directly undermines the entire factual basis for the Vessel's motion to stay in favor of arbitration.  How can a foreign arbitration clause allegedly incorporated into an agreement that all defendants deny having authorized and/or issued be enforceable?

intent.' " *M&G Polymers USA, LLC v. Tackett*, 574 U.S. 427, 435, 135 S.Ct. 926, 190 L.Ed.2d 809 (2015) (quoting 11 R. Lord, Williston on Contracts § 30:6, p. 108 (4th ed. 2012) (Williston)). In such circumstances, the parties' intent "can be determined from the face of the agreement" and "the language that they used to memorialize [that] agreement." 11 Williston § 30:6, at 97–98, 112–113. But "[w]hen a written contract is ambiguous, its meaning is a question of fact, requiring a determination of the intent of [the] parties in entering the contract"; that may involve examining "relevant extrinsic evidence of the parties' intent and the meaning of the words that they used." *Id.*, § 30:7, at 116–119, 124 (footnote omitted).

Nowhere in any of its briefing does Owner accept that it is the intent of the parties that governs. The only nod in this direction is the statement at p. 4 of its Opposition to Motion for Leave to File Surreply [ECF No. 68] that the booking note is "clearly and unambiguously" incorporated into the bills.  As demonstrated in Hawthorne's brief in Opposition to Vessel Interests' Motion to Stay in Favor of Arbitration [ECF No. 40], the bills are adhesion contracts and the language of both the bills regarding incorporation and the booking note itself are anything but "clear and unambiguous."

Hawthorne's Brief in Opposition to Vessel Interests' Motion to Stay in Favor of Arbitration demonstrates, even without the benefit of the charters, that none of the parties involved intended the booking note be incorporated into the bills.

But now that the charters are finally available, this lack of intent is even more clear. Both charters provide that the bills are to be "without prejudice" to the charters. Only by incorporating the charters, and not the booking note, into the bills can compliance be had with this contractual commitment. This was the intent of Ratu in its Headcharter with Transatlantica, and Transatlantica was thus obligated to pass that commitment on. To do so, it used the same wording in the Subcharter with Hanwin. Put another way, Ratu intended under its charter that bills be issued, and that contract contained the terms to be included in the bills – "without

prejudice to this charter." Hanwin and Transatlantica in their charter also intended that bills be issued, and they likewise agreed that the bills would be "without prejudice to this charter."[2]

Owner's reliance on *Cactus Pipe & Supply Co. v. M/V Montmartre,* 756 F.2d 1103,1113 (5th Cir. 1985), is entirely misplaced.  For purposes of this motion, the lack of authority underlying issuance of the bill is completely irrelevant.  Owners agree that the ship is bound by the bills *in rem.*  These are the ship's contract and Owner has happily embraced those clauses of the contract which it thinks aid its cause.  But, as we have already shown, the bill is a contract and subject to all the rules of contract interpretation. Ratu's remedy for issuing an unauthorized bill lies with charterers alone. As between Ratu as claimant to the vessel and Hawthorne the bills with whatever warts they may have, is the relevant document and subject to all the rules of construction.[3]

The Court should find that in all the circumstances, the booking note and its arbitration clause were not incorporated into the bills of lading, Plaintiffs are not bound by the booking note, and the motion should be denied.

---

[2] These two charters leave open the question as to which charter was to be incorporated, but fortunately, for purposes of the pending motion, this question need not be answered. The only relevant point is that the respective charters' bill of lading clauses demonstrate that Ratu, Transatlantica, and Hanwin all intended that a charter, and emphatically not the booking note, be incorporated.

[3] In fact, the statement from *Cactus* quoted at p. 8 of the Opposition to Motion for Leave to File Surreply that ratification makes "any question of the authority of the issuer of the bills of lading immaterial" emphasizes the point – the ship is bound by the bill, however the terms of that contract may be interpreted.

III.     **As to the Admissibility of the Booking Note**

Hawthorne stands on its proposed  submission in the surreply regarding this issue except to emphasize, yet again, that counsel does not authenticate documents.  It is not counsel's testimony which is competent to authenticate third-party documents.

IV.     **As to the Bills of Lading and the Allegedly Incorporated Booking Note Comprising the Integrated Contract of Carriage.** (ECF No. 68 at 10-11)

Owner's criticism that Hawthorne wrongly characterized Owner's position that the booking note was the contract of carriage is again misplaced.  In Owner's own words, "The Booking Note is clearly the applicable contract of carriage and the fact that Hawthorne does not like its contents cannot change this point."  (Owners' Reply Memorandum of Law in Support of Motion to Stay in Favor of Arbitration, ECF No. 50 at 14).  Nothing more need be said.

V.     **As to the Supreme Court of the United States' Decision in *GE Energy Power Conversion France SAS Corp. v. Outokumpu Stainless USA, LLC,* 1405 S. Ct. 1637 (2020)** (ECF No. 68 at 12-13)

Hawthorne stands by all distinctions as set out in the proposed surreply and notes that Owner has not addressed the distinction based on the fact, that unlike the circumstances in *GE Energy Power*, where the opponent of the arbitration was simultaneously relying on other clauses in the contract containing the arbitration clause, Hawthorne here is not in any way using the booking note.

Owner also glosses over the distinction between "holding' and "dicta." In *GE Energy Power,* the Court's statement about incorporation by reference was dicta, not a holding; the holding addressed estoppel.

VI.    **Discovery** (ECF No 68 at 13)

Here Owner posits a most interesting position, contradicting all it has said before in this and earlier briefing; it has now effectively admitted that intent of the party controls. After making this admission, Owner makes the expected argument – the contract language is clear and no extrinsic evidence is required. Cargo Interests stand on previous arguments about the bills as adhesion contracts, ambiguity, and the effect of such a finding leading to the conclusion that the Motion to Stay should be denied.  If the Court believes that the motion cannot be decided on the record before it and that further extrinsic evidence beyond the two charters is required, then limited discovery should be allowed addressing the relevant issues, remembering always that the burden to prove the terms of the contract remain on the Owner.

<u>**CONCLUSION**</u>

The motion for leave to file a surreply should be granted. Owner's Opposition to the Motion for Leave should be treated as a response on the merits to the substance of the surreply and the briefing on the Motion to Stay deemed completed.

Respectfully submitted,

Dated: October 24, 2022
Baltimore, Maryland

_/s/ Imran O. Shaukat_
James W. Bartlett, III, Esquire
Federal Bar Number 00017
Imran O. Shaukat, Esquire
Federal Bar Number 30134
Semmes, Bowen & Semmes
25 S. Charles Street, Suite 1400
Baltimore, Maryland 21201
Phone: (410) 539-5040
Facsimile: (410) 539-5223
jbartlett@semmes.com
ishaukat@semmes.com

_Attorneys for Plaintiffs Cargo Interests_

Of Counsel:
Robert E. O'Connor
Vincent M. DeOrchis
Alfred Kuffler
Wook Chung
Montgomery McCracken Walker & Rhoads LLP
437 Madison Avenue
New York, NY 10022
Tel: 212-867-9500
Fax: 212-201-1939

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY on this 24th day of October, 2022, that the foregoing Reply was

served on all counsel of record via this Court's ECF/CM system.


_/s/ Imran O. Shaukat_
Attorney for Plaintiffs


B2908039.DOCX