**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Northern Division*

| | | |
|---|---|---|
| HAWTHORNE INDUSTRIAL PRODUCTS INC. for its own account as consignee of certain cargo and as agent for GENESIS PRODUCTS INC., GREAT LAKES LAMINATION, GREAT LAKES FOREST PRODUCTS, and FUSION WOOD PRODUCTS, | § § § § § § § § § | CIVIL NO. 1:22-cv-01376-RDB |
| Plaintiffs | § § § | |
| v. | § § | |
| M/V TAC IMOLA, IMO No. 9932103 her engines, boilers, tackle, etc., *in rem*, RATU SHIPPING CO. SA, NISSHIN SHIPPING CO LTD, FLEET MANAGEMENT LTD-HKG, TRANSATLANTICA COMMODITIES PTE. LTD., and HANWIN SHIPPING LIMITED, *in personam*, | § § § § § § § § § § § | |
| Defendants | § | |

<u>**CARGO INTERESTS' MEMORANDUM IN OPPOSITION**</u>
<u>**TO THE VESSEL DEFENDANTS' MOTION TO DISMISS**</u>

Plaintiff Hawthorne Industrial Products, Inc. ("Hawthorne"), for its own account as consignee of certain cargo and as authorized agent for plaintiffs Genesis Products Inc. ("Genesis"), Great Lakes Lamination ("GLL"), Great Lakes Forest Products ("GLFP"), and Fusion Wood Products ("Fusion" and, all together, the "Cargo Interests"), hereby files this memorandum in opposition to the *Vessel Defendants' Motion to Dismiss* [ECF No. 51], and respectfully argue as follows:

## STATEMENT OF FACTS

This dispute concerns liability in contract and/or tort for an estimated $28 million of losses and damages suffered by the Cargo Interests as a consequence of defendants Ratu Shipping Co SA ("Ratu"), Nisshin Shipping Co Ltd ("Nisshin"), Fleet Management Ltd-Hkg ("Fleet Management" and, together, the "Vessel Defendants") failure to properly stow and secure cargo on M/V TAC IMOLA (the "Vessel") during a dreadful voyage from Qingdao, China to Baltimore, Maryland [ECF No. 29].

## I.       The Vessel Defendants

Each of the Vessel Defendants has already conceded, at least in part, that they have connections with Maryland and the United States, having purposefully availed themselves of the privilege of doing business here and by allowing and directing their Vessel to carry cargo here.[1]

Ratu, as the Vessel's registered owner, admits that it allowed the Vessel to trade within Maryland and the United States, which Ratu itself considered a "privilege" [ECF No. 51-8 at ¶ 19 and ECF No. 51-10 at Clause 58 ("Owners certify that the vessel is and will remain throughout the duration of this Charter, eligible for full bunkering privileges in the United States of America and its territories and possessions, under all present and future United States Laws and/or regulations")].  Ratu also admits that during the period of 2020-2022, the vessels in its fleet made 23 port calls within Maryland and approximately **235** port calls within the United States [ECF No. 51-8 at ¶ 16].[2]  Given that dry bulk and dry break bulk carriers, like the Vessel,

---

[1] To the extent that the existing record is incomplete, the Cargo Interests have already filed a *Motion for Limited Discovery on Personal Jurisdiction* [ECF No. 74] and reserve their rights to amend their pleadings to conform to the facts as they are discovered.

[2] If 23 port calls equates to 0.49% of worldwide ports calls, then Ratu's vessels made a total of 4,694 worldwide port calls, and Ratu admits that 5% – or approximately **235** – of those port calls were within the United States.

spend about 1-2 days in port conducting cargo operations, in addition to other days, weeks, and months spent at anchor awaiting orders, it is highly likely that a Ratu-owned vessel was within the United States **nearly every single day** during the last two years.[3]

For example, during the disastrous voyage at issue here, M/V TAC IMOLA spent about **four months** within the United States and **two months** within Maryland, presumably earning daily charter hire throughout, all paid in "United States Currency". [ECF No. 29 at ¶¶ 37-46 (describing when the Vessel arrived within the United States) and ECF No. 51-10 at Clauses 4 and 5 (describing charter hire payments)]; *see also* Motion to Intervene, *Transatlantica Commodities Pte Ltd v. Hanwin Shipping Limited*, Case No. 22 Civ. 1275, Docket No. 21 (D. Md. filed July 5, 2022) (seeking this Court's intervention as the Vessel continued to sit at anchor within Maryland). Ratu, in fact, concedes that it received copies of the bills of lading for the voyage [ECF No. 51-8 at ¶ 20], which clearly identify "**BALTIMORE, MD**" as the Vessel's discharge port [ECF No. 29-1], and that it actively participated in planning part of the Vessel's voyage [ECF No. 51-8 at ¶ 21].

Nisshin, as the Vessel's commercial manager, manages "business opportunities" for the Vessel [ECF No. 51-4 at ¶ 13], including for this voyage to Baltimore, Maryland. But, Nisshin is not just a commercial manager, it also owns a large fleet that it charters to "leading western dry bulk operators such as Cargill, Western Bulk and Ultra Bulk" for international voyages including, presumably, hundreds or thousands of voyages to and from the United States.[4] Here, like Ratu, Nisshin concedes that it received copies of the bills of lading [ECF No. 51-4 at ¶ 16]

---

[3] *See* Review of Maritime Transport 2021, United Nations Conference on Trade and Development, at Table 4.1 (https://unctad.org/system/files/official-document/rmt2021_en_0.pdf).

[4] *See* How Nisshin Broke the Japanese Mould, Tradewinds, September 13, 2018 (O'Connor Decl. at Exhibit A).

which clearly identify Baltimore, Maryland as the Vessel's discharge port.  Here, Nisshin also concedes that it was not only aware, but that it actively participated in planning part of the Vessel's voyage [ECF No. 51-4 at ¶ 17].  However, Nisshin did not disclose a copy of its commercial management contract with Ratu, and so the scope of its responsibility for the cargo loss and damage at issue is not yet fully known.

Fleet Management "is the second-largest shipmanagement company in the world, managing more than 600 vessels", probably including hundreds that carry cargo to and from the United States.[5]  It provides "technical management services" to the M/V TAC IMOLA [ECF No. 51-6 at ¶ 13].  These technical management services purportedly include employing the Vessel's crew— who by contract were expressly responsible for cargo loading, stowing, lashing, trimming, and discharging the cargo [ECF No. 51-10 at Clause 8]—as well as managing the Vessel's maintenance and repairs and implementing the Vessel's safety programs [ECF No. 51-6 at ¶ 13].  Although Fleet Management alleges that it had no notice that the Vessel would be calling in Maryland or the United States [ECF No. 51-6 at ¶ 15], it is highly probable that part of the technical management services that Fleet Management provided to the Vessel included monitoring the Vessel's voyages and ensuring that it complies with all local regulations— including many United States regulations that are specifically referenced within the head charter party [ECF No. 51-10 at Clauses 56, 58, 80, 100, and 108].  But, like Nisshin, Fleet Management has not disclosed a copy of its technical management contract with Ratu.

---

[5] *See* Fleet Management Opens Shipmanagement Company in Singapore, Tradewinds, July 7, 2022 (O'Connor Decl. at Exhibit B).

**II.     Activity Within Maryland and the United States**

Ratu, Nisshin, and Fleet Management, individually and collectively, allowed and participated in the Vessel's cargo-carrying voyage to the United States.  Moreover, after the Vessel arrived within the United States, their actions and inactions caused losses and damages to the Cargo Interests.  As set forth in the contemporaneously filed *Declaration of Russell Stadelman* (the "Stadelman Decl."), the Vessel Defendants committed tortious actions and inactions and caused harm and are continuing to cause harm within Maryland and the United States by, among other things, their: (1) unilateral decision to deviate to Albany, New York, where there was no protected storage, thereby depriving the Cargo Interests of salvage revenue (2) failure to pay for discharge and disposal at Albany, New York, thereby compelling Hawthorne to pay even though it was not contractually obligated to do so (3) unilateral decision, after significant delay, to deviate back upriver to Coeymans, New York, which again was not the intended discharge port, (4) failure to pay for discharge and disposal at Coeymans, New York, and (5) additional delays before finally delivering the cargo to Baltimore, Maryland.  (Stadelman Decl. at ¶¶ 12-20).  The Cargo Interests have, in fact, been compelled to pay more than $1 million for discharge and disposal, even though it was not their responsibility, and they have been presented with more claims for discharge and disposal costs.  (Stadelman Decl. at ¶¶ 14 and 16).  Lastly, the Cargo Interests are now unable to use the cargo at all because the Vessel Defendants' failure to promptly deliver in Baltimore, Maryland caused the cargo to badly warp, decay, decompose, and smell.  (Stadelman Decl. at ¶ 21).

**LEGAL STANDARD**

In the absence of any discovery and a hearing, plaintiffs need only establish a *prima facie* case for personal jurisdiction. *See*, *e.g.*, S*ynthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com de Equip. Medico*, 563 F.3d 1285, 1296 (Fed. Cir. 2009) ("Because the district court resolved the personal jurisdictional question based on the submission of papers, [plaintiff] bore the burden of making a *prima facie* showing that the court had personal jurisdiction over [defendant]."); *Coastal Laboratories, Inc. v. Jolly*, 502 F. Supp. 3d 1003, 1016 (D. Md. 2020); *Tulkoff Food Prod., Inc. v. Wm. E. Martin and Sons Co., Inc.*, Case No. 17 Civ. 350, 2017 WL 2909250 at *3 (D. Md. July 7, 2017); *Under Armour, Inc. v. Battle Fashions, Inc.*, 294 F. Supp. 3d 428, 432 (D. Md. 2018) ("If a court does not hold an evidentiary hearing or permit discovery, a plaintiff need only make 'a *prima facie* showing of a sufficient jurisdictional basis to survive the jurisdictional challenge.'") (citation omitted). Additionally, when considering a defendant's motion to dismiss, a court should not give any credit to conclusory or far-fetched allegations and must decide all disputed facts and reasonable inferences in favor of the plaintiff. *Tharp v. Colao*, Case No. 11 Civ. 3202, 2012 WL 1999484 at *1 (D. Md. June 1, 2012).

**ARGUMENT**

**I.      The Vessel Defendants are Subject to this Court's Personal Jurisdiction Under Maryland's Long-Arm Statute**

This Court should deny the Vessel Defendants' Rule 12(b)(2) Motion because this Court has specific personal jurisdiction over the Vessel Defendants pursuant to Maryland's long-arm statute. Maryland courts exercise specific personal jurisdiction over non-resident defendants when two conditions are satisfied: (1) jurisdiction is authorized under Maryland's long-arm statute; and (2) jurisdiction comports with the due process clause of the Fourteenth Amendment. *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003).

The Maryland long-arm statute, Md. Code Ann, Cts. & Jud. Proc. §6-103(b), provides in pertinent part that a court sitting in Maryland may exercise personal jurisdiction over a defendant if the defendant:

> (1) Transacts any business or performs any character of work or service in the state.
>
> (2) Contracts to supply goods … services in the State;
>
> (3) Causes tortious injury in the state by an act or omission in the State;
>
> (4) Causes tortious injury in the state … by an act or omission outside the state if he regularly … engages in any other persistent course of conduct in the state ….

The "Maryland Court of Appeals has 'consistently held that the reach of the long arm statute is coextensive with the limits of personal jurisdiction delineated under the due process clause of the Federal Constitution' and that the 'statutory inquiry merges with [the] constitutional examination.'" *Tulkoff Food Prod., Inc.*, 2017 WL 2909250, at *4 (citation omitted).  Due process is satisfied by allegations that the defendant maintained "minimum contacts" with the state justifying jurisdiction, and that the plaintiff's injury arose from those contacts. *Tulkoff*, 2017 WL 2909250, at *6 (citations omitted).

For non-resident defendants like the Vessel Defendants, "due process requires only that … a defendant … have certain minimum contacts … such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Under Armour, Inc.*, 294 F. Supp. 3d at 433 (citation omitted).  "A 'minimum contacts' determination rests on the number and relationship of a defendant's contacts to the forum state, as well as whether the present cause of action stems from the defendant's alleged acts or omissions in the forum state." *Id.*

This Court explained in *Windsor v. Spinner Industry Co., Ltd.*, 825 F. Supp. 2d 632 (D. Md. 2011) that specific personal jurisdiction arises where a defendant has "purposefully avail[ed] itself of the privilege of conducting activities within the forum State" and thereby "invoke[d] the benefits and protections of its laws." *Id.* at 635 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).  The United States Court of Appeals for the Fourth Circuit has stated that "a court may find specific jurisdiction 'based on conduct connected to the suit ….'" *Tire Eng'g and Distribution, LLC v. Shandong Linglong Rubber Co., Ltd.*, 682 F.3d 292, 301 (4th Cir. 2012) (emphasis added) (citation omitted).

As addressed more fully below, the Vessel Defendants' conduct falls within the scope of the Maryland long-arm statute and, therefore, the exercise of personal jurisdiction over them is appropriate.

### A.    The Vessel Defendants Transacted Business and Supplied Services Within Maryland

Here, the Cargo Interests' causes of action arise from the Vessel Defendants' business activity in Maryland.  For example, section 6-103(b)(1) of the long-arm statute authorizes specific personal jurisdiction over a person who "[t]ransacts any business or performs any character of work or service in the State."  This prong "does not require the defendant to have been present physically in Maryland"; it only "requires 'actions [that] culminate in purposeful activity within the State.'" *Capital Source Fin., LLC v. Delco Oil, Inc.*, 520 F. Supp. 2d 684, 689 (D. Md. 2007) (quoting *Bahn v. Chicago Motor Club Ins. Co.*, 98 Md. App. 559, 568 (1993)). Section 6–103(b)(1) "is not a demanding standard," and a "nonresident company or individual who has never entered the state, either personally or through an agent, may nevertheless be deemed to have transacted business in Maryland." *Id*.

Here, the Vessel Defendants transacted business and engaged in purposeful activity in Maryland, such activity giving rise to the Cargo Interests' claims when they (1) knowingly transported cargo that was foreseeably bound for and shipped to Maryland (*i.e.*, as clearly stated on the bills of lading) and (2) knowingly derived substantial revenue from the carriage of goods to the Maryland market (*e.g.*, charter hire).

### B.     The Vessel Defendants' Actions and Inactions Caused Tortious Injury Within Maryland

Additionally, the Vessel Defendants caused tortious injury inside Maryland when they failed to promptly deliver the cargo in Baltimore as required by the bills of lading.  (Stadelman Decl. at ¶¶ 12-20).  Due to the continuing inaction of the Vessel Defendants and others in refusing to discharge the cargo once M/V TAC IMOLA arrived in Maryland, the Cargo Interests suffered new damages including, but not limited to, extra charges for handling and destroying distressed cargo.  (Stadelman Decl. at ¶¶ 12-20).  As a direct consequence of the Vessel Defendants tortious actions, the Cargo Interests have also suffered injury within Maryland because they are now unable to use the badly warped, decayed, decomposed, and odorous cargo (Stadelman Decl. at ¶ 21).  Therefore, pursuant to Maryland's long-arm statute, this Honorable Court possesses specific personal jurisdiction over the Vessel Defendants.

### II.     The Vessel Defendants are Subject to this Court's Personal Jurisdiction Under the Federal Long-Arm Statute

Alternatively, the motion to dismiss should be denied because the Vessel Defendants are subject to this Court's personal jurisdiction pursuant to Federal Rule of Civil Procedure 4(k)(2), sometimes called the "federal long-arm statute."  *See*, *e.g.*, *Compania de Inversiones Mercantiles, S.A. v. Grupo Cementos de Chihuahua S.A.B. de C.V.*, 970 F.3d 1269, 1282 (10th Cir. 2020), cert. denied, 210 L. Ed. 2d 927, 141 S. Ct. 2793 (2021).

In the Fourth Circuit, the federal log-arm statute is applied only when there is no jurisdiction under the state's long-arm statute. *CFA Inst. v. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285, 292 (4th Cir. 2009). Rule 4(k)(2) is, in fact, expressly intended to close a loophole whereby a defendant may be shielded from a state court's jurisdiction because it does not have sufficient contacts with the state, but it nonetheless has sufficient contacts with the United States as a whole to justify the application of federal law and the jurisdiction of federal courts. *See* Fed. R. Civ. P. 4(k)(2) advisory committee notes to 1993 amendment ("This paragraph corrects a gap in the enforcement of federal law"); *World Tanker Carriers Corp. v. M/V Ya Mawlaya*, 99 F.3d 717, 720-23 (5th Cir. 1996) (citing *Pacific Employers Ins. Co. v. M/T Iver Champion*, Case No. 91 Civ. 911, 1995 WL 295293, at *5 (E.D. La. May 11, 1995)); *Sys. Pipe & Supply, Inc. v. M/V VIKTOR KURNATOVSKIY*, 242 F.3d 322 (5th Cir. 2001); *Mylonakis v. M/T GEORGIOS M.*, 909 F. Supp. 2d 691, 704–05 (S.D. Tex. 2012).

Rule 4(k)(2) provides in pertinent part:

> (k) Territorial Limits of Effective Service.
> …
> (2) Federal Claim Outside State-Court Jurisdiction. For a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if:
>> (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and
>> (B) exercising jurisdiction is consistent with the United States Constitution and laws.

In other words, a federal court may apply the federal long-arm statute and exercise personal jurisdiction over a defendant when "(1) the plaintiff's claim arises under federal law, (2) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction, and (3) the exercise of jurisdiction comports with due process." *Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com de Equip. Medico*, 563 F.3d 1285, 1293–94 (Fed. Cir. 2009).

Here, because the Vessel Defendants have been served with process[6], the federal long-arm statute provides an independent basis for this Court to exercise specific personal jurisdiction over the Vessel Defendants.

First, this dispute concerns federal claims; specifically, admiralty and maritime claims. The Cargo Interests alleged in their amended complaint causes of action for breach of maritime contracts and maritime torts [ECF No. 29 at ¶¶ 49-51 and 52-54]. The federal long arm statute is frequently applied in similar admiralty and maritime contexts. In *World Tanker Carriers Corp. v. M/V Ya Mawlaya*, 99 F.3d 717, 722-23 (5th Cir. 1996), for example, the Fifth Circuit held that causes of action arising under the general maritime law and the Carriage of Goods by Sea Act, 46 U.S.C. § 30701 (notes) were "federal claims" such that a foreign vessel owner and a foreign vessel manager may be subject to personal jurisdiction pursuant to the federal long-arm statute.

Second, the Vessel Defendants are not subject to general jurisdiction in any state. They have effectively conceded as much in their declarations when they stated that they have: never been incorporated or registered to do business within the United States; never had a principal place of business or headquarters within the United States; do not have employees or agents for service of process within the United States (or, for Fleet Management, within Maryland); do not

---

[6] Here, the Vessel Defendants were properly served on July 12, 2022, when a private process server hand-delivered the summonses together with the complaint and the amended complaint to the Vessel's Master [ECF No. 69]. As explained in the Cargo Interests' motion for alternate service, a Vessel's Master is the managing agent of its owners and managers [ECF No. 73-1 at pp. 6-8]. Moreover, by not specifically requesting dismissal of the amended complaint due to insufficient service of process, and instead merely raising the issue in a footnote without requesting relief, the Vessel Defendants waived insufficient service of process as a defense [ECF No. 73-1 at n. 1]. Furthermore, following the filing of the Cargo Interests' motion for alternate service, which was filed without prejudice to prior service on the Vessel's Master being deemed sufficient, the Vessel Defendants agreed to waive service of process [ECF No. 77]. There is no doubt that the Vessel Defendants, who have now appeared, answered, and filed a motion for relief, have notice of this action.

own or lease property within the United States; do not have bank accounts within the United States; are not involved in lawsuits within the United States; and do not advertise or solicit business in Maryland [ECF No. 54-1 at ¶¶ 4-5, 7, and 9-12 (Nisshin); ECF No. 56-1 at ¶¶ 4-5, 7, and 9-12 and 14 (Fleet Management); ECF No. 58-1 at ¶¶ 4-5, 7 and 9-14 (Ratu)]. These are key admissions regardless of whether the burden of proving jurisdiction rests with the Cargo Interests or the burden of disproving it is on the Vessel Defendants. *Base Metal Trading, Ltd. v. OJSC Novokuznetsky Aluminum Factory*, 283 F.3d 208, 215 (4th Cir. 2002) (appearing to place the burden of proof on plaintiffs); *but see Compania de Inversiones Mercantiles, S.A. v. Grupo Cementos de Chihuahua S.A.B. de C.V.*, 970 F.3d 1269, 1283 (10th Cir. 2020), cert. denied, 210 L. Ed. 2d 927, 141 S. Ct. 2793 (2021) ("Every other circuit court [*i.e.*, other than the First and Fourth Circuits] to consider the issue has placed the initial burden on the defendant to identify a state in which the lawsuit could proceed"). On the present record here, the Vessel Defendants are not subject to general jurisdiction in any state and, therefore, are subject to this Court's specific personal jurisdiction under Rule 4(k)(2).

Third, exercising jurisdiction over the Vessel Defendants here would be consistent with the United States Constitution. Due process is generally satisfied if a defendant has minimum contacts with the forum and the exercise of personal jurisdiction is fair and justified. *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

The minimum contacts test generally means that a defendant must have conducted activity within a forum and, for specific personal jurisdiction, that the plaintiff's claim relates to the defendant's activity within that forum. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474–78 (1985); *Crescent Towing & Salvage Co. v. M/V JALMA TOPIC*, Case No. 21 Civ. 1331, 2022 WL 7539743, at *3 (E.D. La. Oct. 13, 2022). Notably, "even a single act can support

jurisdiction." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 n. 18 (1985).  In *Sys. Pipe & Supply, Inc. v. M/V VIKTOR KURNATOVSKIY*, 242 F.3d 322, 324 (5th Cir. 2001), for example, the Fifth Circuit noted that a vessel owner whose only contact with a forum was a single port call by its vessel may nonetheless have sufficient contacts with the forum for the exercise of personal jurisdiction.  Here, of course, the bills of lading, which operated as a receipt for the cargo and upon which Ratu relies for its motion to send *in rem* claims against the Vessel to foreign arbitration, clearly identifies Baltimore, Maryland as the discharge port [ECF No. 22-4].  Additionally, the Vessel Defendants' actions and inaction as the Vessel slowly discharged throughout the United States East Coast caused harms to the Cargo Interests (Stadelman Decl. at ¶¶ 12-20).

Moreover, the Vessel Defendants' contacts with the United States as a whole are already apparent (despite not yet being subject to full discovery).  Ratu has conceded in its declaration that it did not prohibit its vessel from trading within the United States and, through warranted compliance with various United States regulations, purposefully availed itself of the "privilege" of doing business within the United States [ECF No. 51-8 at ¶ 19 and ECF No. 51-10 at Clauses 56, 80, 100, and 108].  Vessel Defendants have gone even further by "certify[ing]" for the duration of the charter that the Vessel "is and will remain . . . eligible for full bunkering privileges in the United States and its territories and possessions…"  [ECF No. 50-10 at Clause 58].

Of course, Ratu's representation that it did not stop its vessel from trading within the United States might be an intentional understatement because Ratu's vessels apparently made about **235** port call within the United States since 2020 [ECF No. 51-8 at ¶ 16].  Nisshin, who is the Vessel's commercial manager [ECF No. 51-4 at ¶ 13], and Fleet Management, who is the

Vessel's technical manager [ECF No. 51-6 at ¶ 13], must therefore ensure that Ratu's vessels, are authorized to sail within United States waters. Here, the Cargo Interests' claims arise out of these purposeful contacts—*i.e.*, the carriage of cargo to the United States. The Cargo Interests have at least alleged sufficient contacts, subsequently corroborated in part by the Vessel Defendants' own admissions, to make a *prima facie* case for this Court to exercise personal jurisdiction over the Vessel Defendants.

As to fair play and substantial justice, a federal court may consider five factors: "(1) the burden on the defendant, (2) the forum's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the states in furthering fundamental substantive social policies." *Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com de Equip. Medico*, 563 F.3d 1285, 1299 (Fed. Cir. 2009) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985) (quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292, (1980))). Moreover, "[t]hese factors may serve to "establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than otherwise would be required …." *Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com de Equip. Medico*, 563 F.3d 1285, 1299 (Fed. Cir. 2009). Here, the Vessel Defendants are not burdened by appearing and defending claims in this forum. They concede that their business is global, with vessels under their ownership and/or management having made hundreds or thousands of port calls within the United States. Additionally, regardless of the outcome of the Vessel Defendants' motion to dismiss, *in personam*, Ratu is obligated by the letter of undertaking [ECF No. 22-7] to remain heavily involved in this dispute as owner of the Vessel, *in rem*, anyway. *See also Pac. Emps. Ins. Co. v. M/T Iver Champion*, Case No. 91 Civ. 911, 1995 WL 295293, at *3 (E.D. La. May 11,

1995) (insurer who issued letters of undertaking in forum is subject to personal jurisdiction in forum).

Whatever minor burden might be suffered by the Vessel Defendants here is outweighed by the interests of the United States in adjudicating the dispute and the objectives of the Cargo Interests in obtaining a fair and efficient resolution to the dispute.  The United States has an interest in adjudicating this dispute because the lost cargo was supposed to be delivered in the United States, some of the cargo was damaged or destroyed by activity in the within the United States, the Cargo Interests who suffered losses and damages are within the United States, and the laws of the United States apply (*e.g.*, the Carriage of Goods by Sea Act) and/or common law (*e.g.*, the general maritime law).  There are now at least **nine** federal actions pending in various United States district courts relating to the same facts and occurrences, including three within this District.[7]  If this Court were to grant the Vessel Defendants' motion, then the Cargo Interests (as well as *Argo Fine Imports LLC* in the newly filed, closely related action) would be compelled to pursue their claims against Ratu in Panama and/or Japan, Nisshin in Japan, and Fleet Management in Home Kong (or Singapore)—which would be grossly inconvenient and

---

[7] The universe of closely related actions within the United States includes: *Transatlantica Commodities Pte Ltd v. Hanwin Shipping Limited*, Case No. 22 Civ. 1275 (D. Md. filed May 27, 2022); *Transatlantica Commodities Pte Ltd v. Hanwin Shipping Limited*, Case No. 22 civ. 3348 (D.N.J. filed June 1, 2022); *Hawthorne Industrial Products Inc v. M/V TAC IMOLA*, Case No. 22 Civ. 1376 (D. Md. filed June 6, 2022); *Transatlantica Commodities Pte Ltd v. Hanwin Shipping Limited*, Case No. 22 Civ. 1983 (S.D. Tex. filed June 17, 2022); *Hanwin Shipping Limited v. Transatlantica Commodities Pte Ltd*, Case No. 22 Civ. 11182 (D. Mass. filed July 22, 2022); *Transatlantica Commodities Pte Ltd v. Hanwin Shipping Limited*, Case No. 22 Civ. 2454 (E.D. La. filed August 8, 2022); *Hawthorne Industrial Products Inc v. Hanwin Shipping Limited*, Case No. 22 Civ. 2724 (E.D. La. filed August 18, 2022); *Argo Fine Imports LLC v. M/V TAC IMOLS*, Case No. 22 Civ. 2990 (D. Md. filed November 17, 2022) .  There could in the future be more closely related actions within the United States; for example, a declaratory judgment action concerning insurance coverage.

15

inefficient.  On the other hand, it would be fair and justified for this Court to exercise personal jurisdiction over the Vessel Defendants here.

### III.   This Court Should Order Limited Discovery Concerning Personal Jurisdiction

If there is any remaining doubt concerning whether this Court should exercise personal jurisdiction over the Vessel Defendants, then this Court should allow limited discovery on the issue.  The Cargo Interests have already requested targeted discovery for this very purpose [ECF No. 74].  The Vessel Defendants' declarations in support of their motion to dismiss have not yet been subject to any examination, and the Cargo Interests, who do not possess or control facts relevant to those declarations, should at least be entitled to an opportunity to scrutinize the Vessel Defendants' self-serving and conclusory representations.  *See*, *e.g.*, *Crescent Towing & Salvage Co. v. M/V JALMA TOPIC*, Case No. 21 Civ. 1331, 2022 WL 7539743, at *8 (E.D. La. Oct. 13, 2022) ("Courts have found jurisdictional discovery especially appropriate when, as in this case, the opposing party relies on declarations, because declarations are generally untested by cross-examination and uncorroborated by document product.") (Internal quotation omitted); *World Tanker Carriers Corp. v. M/V Ya Mawlaya*, 99 F.3d 717, 724 (5th Cir. 1996) (remanding for discovery on personal jurisdiction); *see also Mylan Laboratories, Inc. v. Akzo, N.V.,* 2 F.3d 56, 64 (4th Cir. 1993) ("Discovery under the Federal Rules of Civil Procedure is, of course, broad in scope and freely permitted ... [and] ... limited discovery may be warranted to explore jurisdictional facts").  Therefore, this Court should deny the Vessel Defendants' motion to dismiss and authorize limited discovery so that it may analyze whether the Vessel Defendants are

subject to specific personal jurisdiction under the Maryland or federal long-arm statutes with the benefit of a complete factual record.[8]

## **CONCLUSION**

This Court should deny the Vessel Defendants' Motion to Dismiss [ECF No. 51] or, in the alternative, grant the *Cargo Interests' Motion for Limited Discovery on Personal Jurisdiction* [ECF No. 74].

Dated:  November 22, 2022
         Baltimore, Maryland

/s/ James W. Bartlett, III
James W. Bartlett, III, Esquire
Federal Bar Number 00017
Imran O. Shaukat, Esquire
Federal Bar Number 30134
Semmes, Bowen & Semmes
25 S. Charles Street, Suite 1400
Baltimore, Maryland 21201
Phone:       (410) 539-5040
Facsimile:  (410) 539-5223
Email:        jbartlett@semmes.com
                 ishaukat@semmes.com

and

Robert E. O'Connor
Vincent M. DeOrchis
Alfred Kuffler
Wook Chung
Montgomery McCracken Walker & Rhoads LLP
437 Madison Avenue
New York, NY 10022
Tel: (212) 867-9500
Fax: (212) 599-5085

*Attorneys for Plaintiffs Hawthorne Industrial Products Inc., Genesis Products Inc., Great Lakes Lamination, Great Lakes Forest Products, and Fusion Wood Products*

---

[8] As stated above, n. 1, the Cargo Interests reserve their rights to amend their pleadings to conform to the facts as they are discovered.

17

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 22nd day of November 2022 this pleading was served on all counsel of record via this Court's CM/ECF System.

*/s/ Imran O. Shaukat*
Imran O. Shaukat, Esquire