IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| HAWTHORNE INDUSTRIAL PRODUCTS INC. *et al*, | * | |
| Plaintiffs, | * | |
| v. | * | CIVIL NO. RDB-22-1376 |
| M/V TAC IMOLA *et al* | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

<u>MEMORANDUM OPINION</u>

This Court conducted a hearing on February 2, 2023, for arguments concerning Defendants M/V Tac Imola and Ratu Shipping Co. SA's Motion to Stay in Favor of Arbitration. (ECF No. 22). In brief, Defendants argued that Plaintiffs are bound by an arbitration clause contained in a Booking Note that was purportedly incorporated into the operable Bills of Lading. *Id.* Plaintiffs argued that the Booking Note was not validly incorporated and therefore they are not bound by the arbitration clause therein. (ECF No. 40.) For the reasons stated on the record, on February 2, 2023, the Court has DENIED Defendants' Motion. (ECF No. 101.) This Memorandum Opinion supplements the basis of that ruling.

BACKGROUND

This admiralty dispute concerns damage to cargo onboard vessel-Defendant M/V Tac Imola (or the "Vessel") during a voyage from China to the United States. (Amended Complaint, ECF No. 29.) Plaintiff Hawthorne Industrial Products, Inc. ("Hawthorne") imports wood products from overseas and is consignee for Plaintiffs Genesis Products Inc.,

Great Lakes Lamination, Great Lakes Forest Products, and Fusion Wood Products, which are the beneficial owners of the damaged cargo at issue. *Id.* Defendants Ratu Shipping Co. SA ("Ratu"), Nisshin Shipping Co LTD ("Nisshin"), Fleet Management LTD-HKG ("Fleet Management"), Transatlantica Commodities Pte Ltd. ("Transatlantica"), and Hanwin Shipping Limited ("Hanwin") either own, charter, or sub-charter the Vessel. (ECF No. 29 at 4.)

Defendants M/V Tac Imola and Ratu filed a Motion to Stay in Favor of Arbitration (ECF No. 22) based on an arbitration clause allegedly incorporated into the Bills of Lading. Nine Bills of Lading were issued for this voyage, each with the phrase "code name: 'CONGENBILL' Edition 1994" notated in the upper left corner. (ECF No. 22-4.) The Bills list Lianyungang Yuantai International Trade Co., Ltd. ("LYIT") as the shipper, and Hawthorne Industrial Products, Inc. as the consignee. *Id.* The vessel is listed as Tac Imola H2201, with a port of loading in Qingdao, China, and port of discharge in Baltimore, Maryland. *Id.* Beneath this information, the Bills contain numbers to identify the shipper's description, gross weight, measurement, and price of the goods. *Id.*

Below the description of the goods is a space to list the charterparty and date, as well as the time used for loading and freight advance notice; none of which are populated and are left blank. *Id.* To the right is a text box that says the cargo was shipped in good condition, and "FOR CONDITIONS OF CARRIAGE SEE OVERLEAF." *Id.* Below this text box, the place and date of issue is listed as Qingdao on November 25, 2021,[1] and a signature "as agent for and on behalf of the master: Li Song of M/V Tac Imola" is included, as well as a stamp

---

[1] Three of the nine Bills of Lading list the date of issue as November 24, 2021. (ECF No. 22-4 at 4, 7, 9.)

for the "agent for the carrier of b/l title". (ECF No. 22-4.) In the top right corner, there is language stating "TO BE USED WITH CHARTER-PARTIES." *Id.* Directly beneath this statement is a dated reference number – "Reference No. HWS20211013J DATED 13TH OCT 2021." *Id.*

Defendants assert that a "Booking Note" that includes a dated reference number was the intended charterparty to be incorporated into the Bills of Lading. (ECF No. 22-6.) The Booking Note begins with a clause stating that the document is an agreement dated October 13, 2021, between LYIT as the charterer and Hanwin as the owner. *Id.* The Note includes a "Fixture Note No." with the identifier "HWS20211013J" – the same reference number in the top right corner of the Bills of Lading. *Id.* The Booking Note contains twenty-three numbered provisions. *Id.* Among those twenty-three provisions, provision twenty simply states "Arbitration in Hongkong, with English law to be applied." *Id.* The remaining provisions include agreements concerning loading and discharging ports and cargo disposition, among other topics. *Id.*

Defendants' Motion to Stay argues that Hawthorne's *in rem* claims are bound by the arbitration clause in the Booking Note by its incorporation to the Bills of Lading. (ECF No. 22.) Plaintiffs have argued that the arbitration clause was not validly incorporated into the Bills of Lading for a myriad of reasons, particularly because the Booking Note was not the intended charterparty. (ECF No. 40.) The Court heard oral arguments on February 2, 2023, and has DENIED Defendants' Motion to Stay. (ECF Nos. 98, 101).

3

**STANDARD OF REVIEW**

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 2, provides that "[a] written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract … shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." The FAA instructs that courts "shall" stay a case on application by one of the parties where there is an agreement in writing for arbitration and the suit or issue is "referable to arbitration under such an agreement…." 9 U.S.C. § 3. "[A] district court must grant a party's motion to stay further proceedings if (1) the court is 'satisfied that the issue . . . is referable to arbitration pursuant to 'an agreement in writing for such arbitration,' and (2) the 'applicant for the stay is not in default in proceeding with such arbitration.'" *Noe v. City Nat'l Bank*, 828 F. App'x 163, 165 (4th Cir. 2020).

**ANALYSIS**

The Court finds at this pre-discovery stage of the case and in the principles of equity, that the evidence available shows the Bills of Lading did not bind Hawthorne, as consignee, to the Booking Note's arbitration clause. *See Smith v. Seaport Marine, Inc.*, 981 F. Supp. 2d 1188, 1202 (S.D. Ala. 2013), *aff'd sub nom.*, *Jurich v. Compass Marine, Inc.*, 764 F.3d 1302 (11th Cir. 2014) ("Admiralty jurisdiction and maritime law are firmly grounded in principles of equity."). "The bill of lading is a contract between the shipper and the carrier and 'continues to govern the rights and obligations of the parties until delivery.'" *Wemhoener Pressen v. Ceres Marine Terminals, Inc.*, 5 F.3d 734, 738 (4th Cir. 1993) (quoting *B. Elliott (Canada) Ltd. v. John T. Clark & Son*, 704 F.2d 1305, 1307 (4th Cir. 1983)). "When cargo has been stowed on board the vessel and bills

of lading are issued, the bills of lading become binding contracts of the vessel *in rem* upon the sailing of the vessel with the cargo. The sailing of the vessel constitutes a ratification of the bills of lading." *Cactus Pipe & Supply Co. v. M/V Montmartre*, 756 F.2d 1103, 1113 (5th Cir. 1985).

At issue in this case is whether an arbitration clause contained in a "Booking Note", which Defendants categorize as a "charterparty", was validly incorporated into the Bills of Lading and binding on Plaintiff Hawthorne as consignee. A charterparty "is simply a contract for the hire of a ship." *Hawkspere Shipping Co. v. Intamex, S.A.*, 330 F.3d 225, 228 (4th Cir. 2003) (citing William Tetley, *Marine Cargo Claims* 10 (3d ed. 1988)). A charterparty is incorporated into a bill of lading when the charterparty is "identified in the bill of lading, at the least, by date." *Hawkspere Shipping Co. v. Intamex, S.A.*, 330 F.3d 225, 234 (4th Cir. 2003). "Whether or not the incorporation clause is sufficiently specific to mandate inclusion is a factual matter to be determined on a case by case basis." *Nat'l Material Trading v. M/V Kaptan Cebi*, No. C.A. 2:95-3673-23, 1997 WL 915000, at *4 (D.S.C. Mar. 13, 1997). "[I]n order to enforce a charterparty arbitration clause against a third-party holder of a bill of lading, the bill must 'specifically refer' to the charterparty and incorporate the arbitration provision 'in unmistakable language.'" *Cont'l Ins. Co. v. M/V "OCEAN JADE"*, 269 F. Supp. 2d 348, 354 (S.D.N.Y. 2003) (quoting *Associated Metals & Minerals Corp. v. M/V ARKTIS SKY*, No. 90 Civ. 4562, 1991 WL 51087, at *1 (S.D.N.Y. Apr. 3, 1991)); *Import Export Steel Corp. v. Miss. Valley Barge Line Co.*, 351 F.2d 503, 506 (2d Cir. 1965)).

"In addition, the holder of the bill must have actual or constructive knowledge of the incorporation." *Cont'l Ins. Co.*, 269 F. Supp. 2d at 354 (citing *Associated Metals & Minerals Corp.*

*v. M/V ARKTIS SKY*, No. 90 Civ. 4562, 1991 WL 51087, at *1 (S.D.N.Y. Apr. 3, 1991)). "The reason for these specificity and notice requirements is that 'it is unfair to bind a holder of a bill of lading to additional terms he cannot locate.'" *Cont'l Ins. Co. v. M/V ""OCEAN JADE"*, 269 F. Supp. 2d 348, 354 (S.D.N.Y. 2003) (quoting *New York Marine Managers, Inc. v. Ektrans Int'l Transp. & Trade, Inc.*, No. 88 Civ. 3682, 1989 WL 4030, at *5 (S.D.N.Y. Jan. 17, 1989)).

With the evidence available at this pre-discovery stage, the Court finds two deficiencies that preclude Defendants from directing Hawthorne to arbitrate its *in rem* claims in Hong Kong. First, it is unclear whether the Booking Note is the intended charterparty for incorporation. Second, the arbitration clause is not expressly referenced in the Bills of Lading, and therefore Hawthorne was not sufficiently put on notice. Both of those points, and Plaintiffs' additional, but meritless, evidentiary and procedural arguments, are explained below.

### I. Booking Note as Charterparty

There is uncertainty whether the "Booking Note" *is* the charterparty to be incorporated into the Bills of Lading. Language adopting the provisions in a charterparty may "effect incorporation where the bills of lading are in the hands of the charterer and where there is no confusion concerning who was the charterer or which charter party the bills of lading sought to incorporate." *Cargill Ferrous Int'l v. SEA PHOENIX MV*, 325 F.3d 695, 698–99 (5th Cir. 2003) (citing *State Trading Corp. of India v. Grunstad Shipping*, 582 F.Supp. 1524 (S.D.N.Y. 1984*), aff'd without opinion*, 751 F.2d 371 (2d Cir.1984)).

On the Bills of Lading, there is a text box which provides space for a dated charterparty that has been left blank. (ECF No. 22-4.) Conversely, there is what appears to be a stamp

affixed to the Bills of Lading in the top right corner which states "TO BE USED WITH CHARTER-PARTIES Reference No. HWS20211013J DATED 13TH OCT 2021". *Id.* This reference number and date corresponds with the "fixture number" and date included on the Booking Note. (ECF No. 22-6.) This discrepancy has caused confusion about which charterparty the Bills of Lading sought to incorporate.

Plaintiffs contend that the Booking Note "is a preliminary agreement for a shipper to reserve space on board a carrier's vessel" and is not a final and binding agreement. (ECF No. 40 at 20.) Plaintiffs differentiate between a booking note and a charterparty, arguing that the former is merely a reservation for space on a vessel, whereas the latter is where the charterer hires a vessel. *Id.* at 23. In highlighting this difference, Plaintiffs question the parties' intentions, particularly arguing that the Booking Note is not the intended charterparty and that the Booking Note itself was not even incorporated because the language included on the Bills of Lading reference "CHARTER PARTIES" and not a Booking Note. *Id.* at 24. Defendants classify Plaintiffs' argument as "form over substance", asserting that the unique reference number included in both the Bills of Lading and the Booking Note is a clear indication "that the parties anticipated it would be the governing contract of carriage." (ECF No. 50 at 12.) Defendants also point to the substance of the Booking Note as evidence that it was the intended contract of carriage. *Id.* at 13.

At this early stage of the proceedings, and with the limited evidence presented, there is confusion concerning what, or which, charterparty the Bills of Lading sought to incorporate. *Cargill Ferrous Int'l*, 325 F.3d at 698–99. As expressed on the record, the Court's conclusion is merely based on the available evidence, and discovery may provide more context and clarity

7

to the full scope of the agreements amongst the various chartering parties. However, at this stage, it would be inequitable to bind Hawthorne to an arbitration clause buried within various documents, the significance of which are in doubt. Therefore, the Booking Note is not proven the intended charterparty to the Bills of Lading and has not been validly incorporated as such.

## II.  Notice of Arbitration Clause

Additionally, the arbitration clause is not clearly mentioned to give Hawthorne sufficient notice. The Bills of Lading are comprised of nine single pages, each directing the holder "FOR CONDITIONS OF CARRIAGE SEE OVERLEAF." (ECF No. 22-4.) Defendants state, and Plaintiffs apparently agree, that the Bills of Lading are drafted on the standard and generic form "CONGENBILL 94" ("Congenbill"). (ECF No. 22-5.) The Congenbill contains two pages: the first page holds space for the name of the shipper, consignee, the charterparty, the date, and includes an incorporation clause; the second page contains "Conditions of Carriage." *Id.* The first page of the Congenbill is substantially similar to the Bills of Lading at issue here, and the Defendants assert that the Bills also included that same "Conditions of Carriage" from the Congenbill.[2] In other words, the "overleaf" referenced on the first page of the Bills of Lading is the second page of the Congenbill which contains the "Conditions of Carriage." On the generic Congenbill, the "Conditions of Carriage" includes a provision stating, "All terms and conditions, liberties and exceptions of the Charter Party, dated as overleaf, including the Law and Arbitration Clause, are herewith incorporated." (ECF No. 22-5 at 2.)

---

[2] The parties did not argue about whether the second page of the Congenbill was actually attached to the Bills of Lading, but the Court notes that only the generic sample form, and not the original copy used in the Bills of Lading, has been provided.

The Court reiterates that the Booking Note is not accepted as the charterparty, so even if this page was part of the original Bills of Lading, there is no charterparty upon which to cross-reference, and the "Conditions of Carriage" do not expressly state the arbitration clause to be incorporated. Without the provision explicitly mentioning the arbitration clause in the "Conditions of Carriage", the Bills of Lading do not expressly incorporate the Booking Note or mention the arbitration clause. It is inequitable to require Hawthorne as consignee to wade through various documents and contracts to decipher the applicable and governing terms. Therefore, it is inequitable to bind Hawthorne to the Hong Kong arbitration clause when there is uncertainty whether the Booking Note is the intended charterparty and where the "Conditions of Carriage" do not expressly state the specific arbitration clause.

### III.   Additional Meritless Arguments

Plaintiffs asserted additional, unsuccessful arguments in their memoranda and on the record, which are briefly addressed here. First, Plaintiffs argued that the Booking Note is inadmissible under Federal Rule of Evidence 901 because it is unauthenticated due to the unavailability of Defendants Hanwin and Transatlantica to verify its authenticity. This argument ignores the Note's admissibility under the business record exception to hearsay in Federal Rule of Evidence 803(6). Therefore, there is no issue with the Booking Note's admissibility. Second, Plaintiffs argue that their signature must be included on an arbitration agreement to be enforceable under the New York Convention. (ECF No. 40 at 21.) This assertion belies that non-signatories may be bound by arbitration clauses under the FAA, and the more general principle that non-signatories may be bound by terms in bills of lading. *See*

*GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC*, 140 S. Ct. 1637, 1645 (2020) ("The Convention is simply silent on the issue of nonsignatory enforcement.").

Third, as previously noted, there is no issue with the "authorization" of the Bills of Lading because "the bills of lading become binding contracts of the vessel *in rem* upon the sailing of the vessel with the cargo." *Cactus Pipe & Supply Co.*, 756 F.2d at 1113. Finally, Plaintiffs' argument that the Booking Note was not a final and binding agreement may be true as to its enforceability against Plaintiffs, but there is no indication that the Booking Note was not a final and binding agreement between LYIT and Hanwin. Discovery may paint a different picture, but at this juncture nothing discredits the Booking Note's enforceability between LYIT and Hanwin. In sum, Plaintiffs' alternative arguments are unfounded and have had no bearing on the Court's decision to deny Defendants' Motion to Stay.

## CONCLUSION

For the reasons stated on the record and explained above, Defendants' Motion to Stay in Favor of Arbitration (ECF No. 22) is DENIED WITHOUT PREJUDICE. Upon conclusion of discovery as to the *in rem* claims, the question of the applicability of an arbitration clause may be more specifically addressed. This Opinion is preceded by the Court's Order of February 2, 2023 (ECF No. 101).


Dated: February 16, 2023                             _____/s/_____
                                                     Richard D. Bennett
                                                     United States District Judge