IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| HAWTHORNE INDUSTRIAL PRODUCTS INC., *et al.,* <br><br> Plaintiffs, <br><br> v. <br><br> PICC PROPERTY AND CASUALTY COMPANY LIMITED <br><br> Defendant. | Civil Action No. RDB-23-03248 |
| HAWTHORNE INDUSTRIAL PRODUCTS INC., *et al.,* <br><br> Plaintiffs, <br><br> v. <br><br> M/V TAC IMOLA et. al, <br><br> Defendants. | Civil Action No. RDB-22-01376 |

**MEMORANDUM IN SUPPORT OF**
**MOTION TO ENFORCE THE MARCH 31, 2025 SETTLEMENT**

Plaintiffs Hawthorne Industrial Products Inc. ("Hawthorne"), Genesis Products Inc. ("Genesis"), Great Lakes Lamination ("GLL"), Great Lakes Forest Products ("GLFP"), and Fusion Wood Products ("Fusion") (all together, the "Cargo Interests") hereby file this memorandum in support of their *Motion to Enforce the March 31, 2025 Settlement.*

**SUMMARY**

On March 31, 2025, with the able assistance of The Honorable Erin Aslan, the parties in *Hawthorne Industrial Products, Inc., et al. v. PICC Property and Casualty Company Limited,* Case No. 1:23-cv-03248-RDB (the "Insurance Action") and *Hawthorne Industrial Products, Inc., et al. v. M/V Tac Imola, et al.*, Case No. 1:22-cv-01376-RDB (the "In Rem Action") reached a global settlement. Under the settlement, Plaintiffs were to receive monies within an

agreed timeframe from both PICC as cargo insurer in the Insurance Action and the Vessel Interests in the In Rem Action.  All parties agreed to general mutual releases, and PICC as the insurer relinquished its rights of subrogation against the vessel interests in recognition of those defendants contributing payment to the Plaintiffs in both actions.

Judge Aslan memorialized the material terms of the agreement,  and all parties assented to the wording of the terms.

Included in the agreed-upon terms, PICC explicitly agreed that it would make payment to Plaintiffs within 15 days of "execution" of the formalized settlement agreement.  Negotiation of the precise terms of the formalized agreement dragged on and it was not until mid-June of this year that PICC first contended that its commitment to pay within 15 days meant not that Plaintiffs would have the funds in hand within that time period, but merely that PICC would provide payment instructions to its bank within 15 days. Thereafter, Plaintiffs would be at the tender mercies of the bank with respect to when payment might be received.  Plaintiffs' counsel was informally advised that payment could take as much as two months.

In an effort to bring the matter to a conclusion, Plaintiffs offered a compromise on the payment date allowing for the vagaries of the banking system to which they had been alerted: that PICC pay interest at the current prime rate of 7.5 percent from the March 31 settlement date. As of the date this motion is being filed, PICC has rejected this proposal and put forward no counteroffer.

With the parties at this impasse, Plaintiffs bring this motion to enforce the March 31 settlement based on the material terms Judge Aslan summarized at the conclusion of the negotiations, which all parties accepted.

Case 1:22-cv-01376-RDB     Document 130-1     Filed 08/29/25     Page 3 of 10
**ARGUMENT**

I.     **The March 31 Settlement Agreement Should be Enforced Against PICC because it had Agreed to All Material Terms and Cannot Now Unilaterally Change Any of those Terms**

Because the parties agreed to all material terms of the settlement on March 31, the agreement is enforceable, and the Court should enter an order requiring PICC to perform as agreed.[1]

At the conclusion of the settlement negotiations Judge Aslan sent the parties an email summarizing the agreed material terms.

As Judge Aslan explained the purpose of the email was "to memorialize the material terms of the settlement agreement the parties reached…." *See* Declaration of Alfred Kuffler, attached hereto as **Exhibit A**, at ¶4.  Because this memorialization included all the material terms, it is enforceable in its own right. The "formalization" contemplated that some additional terms might be added, but since they were not raised in the settlement conference, such clauses could not be considered as "material."

At its heart this dispute presents a very straightforward issue.

The March 31 agreement provided without limitation as a material term that PICC would make payment "within 15 days of the date of the date that the formal settlement agreement is executed." **Exhibit A** at ¶4.

But when it came time to put the settlement terms in a formal agreement, PICC has attempted to make two drastic changes to the agreement. First, it proposed that payment would not be within the agreed 15 days, but rather the later of the execution of the agreement by all

---

[1] The defendants in the In Rem Action stand ready to perform, pending only execution of the settlement agreement involving plaintiffs, those defendants and PICC.  *See* **Exhibit A** at ¶7.

parties or the date on which the Cargo Claimants completed PICC's claim payment verification process which in turn would start from the time Cargo Claimants provided PICC with the claim payment materials PICC requires. Subsequently, PICC proposed that the 15-day period covered only its obligation to provide its bank with the materials it needed to make payment, in an effort to avoid any liability for the bank's delay in payment. **Exhibit A** at ¶¶8-11.[2]

At the time of the conference with Judge Aslan which produced the March 31 settlement, plaintiffs regarded a date certain for payment as critical to their acceptance of all defendants' offer to settle. Given the inordinate nearly five-month delay in documenting the agreement, such a provision becomes even more significant.

Plaintiffs eventually made the following proposal regarding modification of the 15-day payment term:

> Based on your advices that (1)PICC can have the payment instructions to the Bank within 15 days of your receipt of the signed settlement agreement, and (2) the Bank can take up to two months to actually make the payment, claimants are prepared to extend the time for payment to October 31, 2025, provided: PICC pays interest at the Prime rate of 7.5 percent from March 31, 2025, the date of the settlement through the October 31 payment date. The interest adds $249,375 to the settlement principal of $5,700,000, or a total payment of $5,949,375.00. If payment is made sooner than October 31, the interest payment will NOT be proportionately reduced.

*See* **Exhibit A** at ¶14.

PICC has declined this proposal as well, but has also declined to offer a counterproposal. *Id.* at ¶15.

There is no doubt that marine insurance disputes, like those at issue in this litigation, are within the Court's admiralty and maritime jurisdiction. *New England Mut. Marine Ins. Co. v.*

---

[2] The payment documentation issues have been resolved and the only outstanding issue is the time for payment.

*Dunham*, 78 U.S. 1, 29–36, 20 L. Ed. 90 (1870); *Great Lakes Ins. SE v. Raiders Retreat Realty Co., LLC*, 601 U.S. 65, 144 S. Ct. 637, 217 L. Ed. 2d 401 (2024).  It is also well settled that district courts have inherent equitable authority to enforce agreements to settle litigation pending before them.  *Smith-Phifer v. City of Charlotte*, 118 F. 4th 598, 610 (4th Cir. 2024); *Hensley v. Alcon Lab'ys, Inc.*, 277 F. 3d 535, 540 (4th Cir. 2002); *see also Mungin v. Calmar S.S. Corp.*, 342 F. Supp. 484, 485 (D. Md. 1972) ("it is well established that this Court has inherent power to summarily enforce settlement agreements entered into in an action pending before it.").  In fact, "[a]s a general principle, the settlement of disputes is favored by the courts.  *Mungin v. Calmar S.S.Corp.*, 342 F. Supp. 484, 485 (D. Md. 1972).

In addition to the foregoing case law, the March 31 settlement explicitly provided that the court retain jurisdiction "…to resolve any dispute related to the settlement agreement and/or enforcement of the settlement agreement."  *See* **Exhibit A** at ¶4.

The district courts have considerable discretion when determining the appropriate procedures for addressing motions to enforce settlement agreements.  *Barry v. Barry*, 172 F.3d 1011, 1013 (8th Cir. 1999).  "[O]ne who attacks a settlement must bear the burden of showing that the contract he has made is tainted with invalidity, either by fraud practiced upon him or by a mutual mistake under which both parties acted."  *Mungin v. Calmar S.S. Corp.*, 342 F. Supp. 484, 485 (D. Md. 1972) (citations omitted).  A hearing is required only if there are substantial questions of fact, *Smith-Phifer v. City of Charlotte*, 118 F.4th 598, 603 (4th Cir. 2024). The record here presents no contested issues of fact nor the elements of invalidity suggested in *Mangin, supra.*

PICC entered into a contract; it now is trying to avoid terms to which it has agreed

without offering any legally sufficient basis for doing so. The settlement agreement should be

enforced.

**II.    Because of PICC's Unreasonable Delay in Consummating the Settlement The Court Should Exercise its Discretion and Award Plaintiffs Interest from March 31, 2025 to the Date Of Payment at the Prime Rate of 7.5 Percent**

   **A.  PICC's Now Nearly Five Month Delay in Consummating the Settlement is Unreasonable.**

PICC's unreasonable delay in bringing this settlement to fruition allows the Court sitting in

admiralty to exercise its discretion and award interest in favor of plaintiffs.

The delay may be summarized as follows:

- **March 31**-Settlement reached before Judge Aslam contemplating a formalized agreement;
- **May 2-**Plaintiffs' counsel receives first draft of agreement after calling Tac Imola's counsel in mid-April inquiring as to the whereabouts of the draft;
- **May 9-** Plaintiffs' counsel returns draft to all defendants with comments;
- **May 28-** Tac Imola's counsel returns draft and minor differences are resolved, leaving PICC to respond to plaintiffs;
- **June 18**-first response from PICC's counsel (2 ½ months aft the settlement) which raises the first attempt to modify the payment date;
- **June 24**-Plaintiffs' counsel ends markup of PICC's June 18 draft objecting to the proposed changes to the payment terms;
- **July 9**-PICC responds adding further provisions to the changes it wants with respect to the payment terms;
- **July 9**-Plaintiffs' counsel responds rejecting the changes and emphasizing the need for a date certain for payment;
- **August 1**-PICC reiterates its position;
- **August 4**-Plaintiffs' counsel proposes an October 31 payment date but conditions the offer on payment of interest.

*See* **Exhibit A** at ¶¶ 7-15.

The lapse of now nearly five months in concluding the matter is unreasonable.  This

unreasonable delay is especially egregious in light of the court's original Local Rule 111 order

allowing 90 days from March 31 before the conditional dismissal would become final.

**B. In the Face of This Unreasonable Delay, This Court Has and should Exercise its Discretion and Award Plaintiffs Interest From the March 31 Date of the Settlement to the Date Of Payment**

In admiralty, both the award and rate of interest are discretionary. *City of Milwaukee v. Cement Div. National Gypsum Inc.,* 515 U. S. 189 (1995); *Ameejee Valleejee & Sons v. M/V Victoria U,* 661 F.2d 310, 313 (4th Cir. 1981); *McAllister Towing of Va. LC v. U.S..,* 2012 WL 1438770, \*10-11, \*28 (E.D. Va. April 25, 2012). In order to make the claimant whole, interest is awarded in the absence of special circumstances. *City of Milwaukee, supra.*

Case law speaks to "commercial rates" as necessary to make the injured party whole. And when the question of rate comes to the fore, "commercial rates" include the "prime rate." See *Ameejee Valleejee & Sons, supra.* Courts in this circuit have indeed awarded interest at the prime rate. *Norfolk & Portsmouth Beltline RR Co. v. M/V Marlin,* 2009 WL 3363983 \*14-5 (E. D. Va. Oct. 9, 2009) ("Setting the prejudgment interest rate at the 'average prime rate,' compounded over the period of the loss, is both reasonable and appropriate and is the prevailing view for just compensation of a damaged plaintiff.'"); *Norfolk Southern Ry. V. Moran Towing Corp.,* 718 F. Supp. 2d 658 (E.D. Va. 2012). Indeed, use of the U.S. Prime Rate enjoys wide acceptance in admiralty cases. *In re Amoco Cadiz*, 954 F.2d 1279, 1332 (7th Cir. 1992); *BP Exploration & Oil, Inc. v. Moran Mid-Atl. Corp*., 147 F. Supp. 2d 333, 347 (D.N.J. 2001); *Cement Div., Nat'l Gypsum Co. v. City of Milwauke*e, 950 F. Supp. 904, 909 (E.D. Wis. 1996) ("[U]nless a court engages in refined rate-setting, tailored specifically to the facts of the case at hand, the prime rate . . . should be used because it is most nearly reflective of the market rate."). The court in the *Amoco Cadiz* case noted that a district court could look to the rates of the publicly traded notes and debentures obtained by the entity during the prejudgment period, but still held that it could also apply the prime rate, "the rate banks charge for short-term unsecured

loans to creditworthy customers," in order to avoid engaging in "such refined rate-setting." *Amoco Cadiz*, 954 F.2d at 1332; *see also Indep. Bulk Transp., Inc. v. Vessel Morania Abaco*, 676 F.2d 23, 27 (2d Cir. 1982) ("Plaintiff's position that prejudgment interest should be determined through proof of what the particular plaintiff actually paid to borrow money during the relevant period is in error. Consideration of the precise credit circumstances of the victim would inject a needless variable into these cases. Plaintiff is entitled to the income which the monetary damages would have earned, and that should be measured by interest on short-term, risk-free obligations.").

Further, the U.S. Prime Rate of interest is a "tried and true" approach with the fewest variables. *See Indep. Bulk Transp., Inc.*, 676 F.2d at 27 (counseling against needlessly complicating the interest rate calculation); *Chicago v. M/V Morgan*, 248 F. Supp. 2d 759, 779 (N.D. Ill. 2003) (employing the prime rate for calculating prejudgment interest); *Nat'l Shipping Co. of Saudi Arabia v. Moran Mid-Atl. Corp.*, 924 F. Supp. 1436, 1455 n.13 (E.D. Va. 1996) (setting the rate of prejudgment interest at the prime rate, the prevailing commercial rate on loans to businesses).

The current prime rate is 7.5 percent.as reported by the Wall Street Journal (www.wsj.com > market-data > bonds) (Last checked 8/15/25 at 3:43 pm EDT)

Plaintiffs ask that the Court impose interest at 7.5 percent from March 31, 2025 to the date of payment. Further, although PICC's share of the $9.8 million settlement is $5.7 million, because PICC has delayed collection of the Vessel Interests' $4.1 million portion of the settlement, Plaintiffs ask that interest be imposed as against PICC on the whole of the $9.8 million settlement.

## CONCLUSION

Plaintiffs respectfully request that the Court grant their Motion to Enforce the March 31, 2025 Settlement. PICC expressly agreed to all material terms of the settlement, including the requirement to make payment within fifteen (15) days of execution, and it cannot now unilaterally alter those obligations. PICC's tactics have caused nearly five months of unnecessary delay, undermined the certainty of the March 31, 2025 settlement, and prejudiced Plaintiffs who relied on the agreed-upon timeline in resolving these disputes. PICC's refusal to comply with the agreed terms has caused significant and unreasonable delay, to the detriment of Plaintiffs who relied on the certainty of a timely resolution.

WHEREFORE, Plaintiffs ask this Court to:

1.  Enforce the March 31, 2025 settlement according to the terms agreed to before Judge Aslan;

2.  Order PICC to remit full payment in accordance with those terms; and

3.  Award Plaintiffs prejudgment interest at the prevailing U.S. Prime Rate of 7.5% from March 31, 2025 until the date payment is made, in order to make Plaintiffs whole and deter further delay.

Respectfully submitted,

*/s/ Imran O. Shaukat*
Imran O. Shaukat, Esq.
Federal Bar No. 30134
MILLS BLACK LLP
1215 19th Street NW
Washington, DC 20035
Phone:    (202) 967-4105
Email:     ishaukat@millsblack.com

and

Alfred Kuffler
MONTGOMERY MCCRACKEN
WALKER & RHOADS LLP
1735 Market Street
Philadelphia, Pennsylvania 19103
Phone:      (215) 772-7454
Email:      akuffler@mmwr.com